IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM DRUMMOND, GPGC LLC, and SECOND AMENDMENT FOUNDATION, INC., ) ) ) | Civil Action No. |
| Plaintiffs, ) ) | **VERIFIED COMPLAINT** |
| v. ) ) | |
| ROBINSON TOWNSHIP and MARK DORSEY, Robinson Township Zoning Officer, in his official and individual capacities, ) ) ) ) | |
| Defendants. ) _____ ) | |

**VERIFIED COMPLAINT**

INTRODUCTION

For most of the past fifty years, a gun club on William Drummond family's property has provided people a safe location to learn and maintain proficiency in the use of firearms. But not everyone appreciates the club. Having twice lost court battles seeking to declare the club a nuisance and restrict its operation, Robinson Township took advantage of a change in the club's management to launch yet a third legal attack on the club. Informed that the club's ownership had passed, the Township and its Zoning Officer deliberately stalled the club's operation and refused to grant it the approval to which it was entitled, buying time in which to zone the club out of existence. The Township now restricts the club's operation to non-profit organizations, and contrary to decades of safe experience, forbids the use of nearly all rifles on the club's property.

By subverting the club's operation, the Township violates the Second Amendment right to keep and bear arms and the Fourteenth Amendment rights to equal protection, property, and livelihood. This latest attack on the club should meet the same fate as the previous two.

THE PARTIES

1.      Plaintiff William Drummond is a natural person and a citizen of North Carolina. Drummond is a professional shooter and firearms instructor. He has been active in the shooting sports and the firearms industry for 20 years. Drummond represents several companies in the firearms industry. An NRA-certified shooting instructor, Drummond has won multiple shooting championships throughout the world, and teaches competitive shooting and firearm safety. Drummond brings this action on his own behalf and on behalf of his customers and clients.

2.      Plaintiff GPGC LLC is a limited liability company organized under Pennsylvania law by William Drummond, who retains complete ownership of it. GPGC LLC brings his action on its own behalf and on behalf of its customers and clients.

3.      Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including Pennsylvania. The purposes of SAF include promoting the exercise of the right to keep and bear arms; and education, research, publishing and legal action focusing on the constitutional right to privately own and possess firearms, and the consequences of gun control. SAF brings this action on behalf of its members. Plaintiff Drummond is a SAF member.

4.      Defendant Robinson Township is a municipal entity organized under Pennsylvania law.

5.      Defendant Mark Dorsey is, and was at all times, the Zoning Officer for Robinson Township. He is sued in his official and individual capacities.

2

JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201, 2202 and 42 U.S.C. § 1983.

7.     Venue lies in this Court pursuant to 28 U.S.C. § 1391.

STATEMENT OF FACTS

8.     Familiarity with firearms, and proficiency in their use, promotes public safety. Gun owners trained in and familiar with the operation of their guns are less likely to be involved in accidental shootings, and are more likely to successfully use their firearms in self-defense in case of need.

9.     Recreational shooting is a traditional lawful use of firearms in the United States.

10     The promotion of civilian marksmanship has been a priority of the federal government throughout American history, beginning with the Second Militia Act of 1792 and continuing through today with the modern implementation of the Civilian Marksmanship Program through the federally-chartered Corporation for the Promotion of Rifle Practice and Firearms Safety, 36 U.S.C. §§ 40701, et seq.

*The Historic King Road Gun Club*

11.     William Drummond's grandfather, Joseph Donald Freund, Sr., incorporated Greater Pittsburgh Trap & Skeet Club, Inc., a for-profit Pennsylvania corporation. In 1967, through this corporation, Freund Sr. began operating a shooting range known as the Greater Pittsburgh Trap & Skeet Club, alternatively Greater Pittsburgh Gun Club, on approximately 265 acres he owned at 920 King Road, Bulger, Pennsylvania 15019 ("Gun Club"). When the Gun Club first opened, it had been zoned as "A-1."

3

12.     The Gun Club property is currently zoned as an "Interchange Business Development District" (IBD). The IBD District "is established to provide for businesses and high-impact land uses that require significant infrastructure." Prior to April 9, 2018, Robinson Township's zoning ordinance specified that "Sportsman's Clubs" were a permitted principal use within IBD districts, but did not define a "Sportsman's Club."

13.     The area in which the Gun Club is located is substantially rural in nature, and several of the range's immediate neighbors have long fired guns on their properties.

14.     The Gun Club operated as much as any ordinary commercial shooting range. It consisted of a clubhouse and restaurant, as well as the living quarters of its manager and the manager's family, four trap ranges, three skeet ranges, a 25-yard pistol range, a 100-yard rifle-sighting range, and a 400-yard rifle range.

15.     The Gun Club sold memberships, range time, firearms, ammunition, targets, food and beverage, and other ordinary goods that might be found at any gun range, as well as shooting training and safety courses, to the public. The Club had as many as 800 members at any one time, but did not require membership to shoot on its property. Patrons who did not own their own guns, or who wished to try out different guns, could also rent guns from the range. In addition to such ordinary civilian use, the range was also used by police and military personnel for training.

16.     The Gun Club allowed the use of ordinary firearms of the kind in common use for traditional lawful purposes, including pistols, shotguns, and center-fire rifles up to .50 caliber. Until 1994, the Gun Club allowed the use of machine guns by 911th Infantry and the National Guard from Oakdale, Pennsylvania.

17.     In 1972, Freund Sr. passed away and his wife, Margaret Freund, inherited the property and the Gun Club. In 1990, Margaret Freund sold the Gun Club property to Joseph Donald

Freund, Jr., William Drummond's uncle, who resided on the property and managed the Gun Club. Margaret Freund retained ownership of the Gun Club.

*Robinson Township's First Failed Legal Attack on the Gun Club*

18.     In 1993, Robinson Township brought a nuisance action against the Greater Pittsburgh Trap and Skeet Club. In both the initial and amended complaints, the Township admitted that the Gun Club was lawfully operating its business under the Township's zoning ordinance. The Township, however, complained about three matters: the discharge of automatic weapons, which would cease the following year; the club's hours of operation; and projectiles leaving the premises and striking nearby properties.

19.     On May 9, 1997, the Gun Club prevailed. *Robinson Township* v. *Greater Pittsburgh Trap and Skeet Club*, Court of Common Pleas, Washington County, Pennsylvania, Civil Division No. 93-4400. The Court of Common Pleas found that the Gun Club did not constitute a nuisance and dismissed the action. Adopting the Gun Club's proposed findings of fact and law, the court determined that the range was safe, that an alleged bullet strike on a neighboring property did not come from the club, and that the nuisance action was largely motivated by the personal animus that the Township's then-Zoning Officer and range neighbor Mark Kramer harbored against Freund, Jr. The Court also found that the Second Amendment barred the Township's regulation of the Gun Club. That judgment, including the findings of fact and law, are attached hereto as Exhibit A.

*Iron City, and Robinson Township's Second Failed Legal Attack on the Gun Club*

20.     In 2008, Freund, Jr. became ineligible to possess firearms owing to a criminal conviction unrelated to the Gun Club, and the Gun Club ceased operation.

21.     In 2016, Iron City Armory LLC, a for-profit Pennsylvania limited liability company, leased the Gun Club property in order to revive the Gun Club, which it renamed Iron City Armory.

5

22.     On April 18, 2016, Robinson Township approved Iron City's zoning application, and authorized Iron City to operate the property as a club for the exclusive use of its members and guests. However, the permit provided that "no other commercial operations are allowed on site under this permit, including but not limited to sales, gun testing, rentals, or other commercial endeavors. No activities related to any Federal Firearms License are allowed at this location."

23.     Some of the Gun Club's neighbors, including Mark and Judy Kramer, sought to block its operation by appealing Iron City's permit to the Zoning Hearing Board. On August 29, 2016, the Zoning Hearing Board granted the appeal, on grounds that "shooting ranges" and "shooting range facilities" are not allowed within IBD districts.

24.     Meanwhile, on June 2, 2016, Robinson Township served Iron City with a "Notice of Violation/Cease and Desist Order," based on complaints that the Club was engaging in forbidden commercial activity by selling bottled water, targets, and ammunition to its members. Another cease and desist order issued against Iron City when a July 17, 2016, undercover police operation confirmed that Iron City was selling ammunition and targets at the range.

25.     On July 19, 2016, the Zoning Hearing Board revoked Iron City's permit to operate the Gun Club. Iron City appealed, but on October 20, 2016, the Zoning Hearing Board denied its appeal. Specifically, the Board found that Iron City violated the Zoning Permit's terms by failing to operate as a "club," "engaging in commercial operations, including but not limited to the sale of ammunition, gun testing, gun rentals, or other endeavors," and "engaging in impermissible activities related to Federal Firearm's [sic] Licenses."

26.     Iron City appealed the Zoning Hearing Board's adverse decisions to the Court of Common Pleas of Washington County, Pennsylvania. On April 21, 2017, Iron City prevailed. *Iron City LLC d/b/a Iron City Gun Club* v. *Robinson Township*, et al., Court of Common Pleas,

Washington County, Civil Div. Nos. 2016-5682, 2016-7073. That opinion and judgment is attached hereto as Exhibit B.

27.     As the Zoning Hearing Board had changed its position, and admitted that the Zoning Ordinance could be read to permit non-commercial gun clubs and shooting rangers in IBD districts, the Court reversed the Zoning Board's decision that had deemed the permit's issuance unauthorized.

28.     With respect to the permit's revocation, the Court found that Iron City had not, in fact, rented, tested, or sold guns. Moreover, as the Court found, Iron City did not possess a FFL. The Court further found that the sale of bottled water and targets "falls into permissible commercial operations of a gun club and do not violate the restriction," and that in any event, such sales were de minimus. The Court found that Iron City's ammunition sales were also de minimis, but cautioned Iron City to cease all future ammunition sales as those might violate the permit restriction.

*Drummond's Revival of the Gun Club, and Robinson Township's Third Legal Attack*

29.     In December 2017, Iron City informed Freund, Jr. that it would cease operating the Gun Club and default on its lease.

30.     Accordingly, on December 15, 2017, William Drummond leased the range property from Freund, Jr. for the purposes of operating a gun club, the retail sale of firearms, and operating a shooting range. The lease term is for ten years, with an option for ten additional years.

31.     Drummond plans to have his limited liability company, GPGC LLC, operate the shooting range much as his grandfather and, to some extent, Iron City, had operated it since 1967. Under new management, by GPGC LLC, the gun range will sell memberships, range time, firearms, ammunition, targets, food and beverage, and other ordinary goods that might be found at any gun range, as well as shooting training and safety courses to the public. It will permit patrons to shoot

ordinary firearms of the kind in common use for traditional lawful purposes, including pistols, shotguns, and center-fire rifles up to .50 caliber.

32.     In January, 2018, Iron City ceased operating the Gun Club.

33.     On January 19, 2018, Drummond spoke to Defendant Dorsey, the Zoning Officer for Robinson Township and who was then also the Chief of Police for McDonald, PA, the police department that is contracted to provide police services to Robinson Township. Drummond advised Dorsey of his intentions to continue the club's operation, and asked Dorsey what was required of him to take over the Club's operation, and remodel and improve the club. Dorsey advised Drummond to write him a detailed description of his plans.

34.     On January 20, 2018, Drummond wrote Dorsey a detailed description of his plans and intent with respect to the range. Dorsey never responded, nor did he return Drummond's numerous follow-up phone calls.

35.     However, the subject of the historic Gun Club came up at the Robinson Township Board of Supervisors' meeting on February 12, 2018, where one of the plaintiffs from the unsuccessful nuisance lawsuit, Judy Kramer, sought expedited action on restrictive zoning amendments targeting the Gun Club. Neither Dorsey, nor anyone else, advised Drummond that this topic would be discussed at the meeting. Dorsey, and Township Manager Crystal Brown, both attended this meeting.

36.     On February 16, 2018, Drummond reached Dorsey, who advised him that additional information was required, and that they would have to meet. When Drummond advised Dorsey that all the information had already been detailed in his earlier correspondence, Dorsey stated for the first time that a zoning application would have to be filed. But he advised that one need not be filed immediately, and that this could be done at their meeting. Later that day, Drummond emailed

8

Dorsey zoning application photographs, asking him which was the correct form, but Dorsey did not respond to this communication.

37.     On February 19, 2018—the Presidents' Day holiday—and only one week after the Township's previous, regularly scheduled Board of Supervisors Meeting, the Robinson Township Board of Supervisors convened a Special Meeting for the apparent purpose of considering restrictive zoning to preclude the Gun Club's operation. The Kramers spoke at that meeting as well, demanding restrictive zoning targeting the Gun Club. Again, neither Dorsey, nor anyone else, advised Drummond of this meeting. Dorsey and Brown attended this meeting.

38.     Also on February 19, 2018, Drummond wrote Dorsey that he was available to meet on February 22, 2018, and submit the necessary paperwork without further delay. Dorsey did not respond.

39.     On March 1, 2019, Drummond finally reached Dorsey by telephone, and Dorsey then arranged for Drummond to meet with him and Township Manager Crystal Brown on March 15, 2018. Dorsey advised that he required additional information about the range, so on March 7, 2018, Drummond expanded upon his earlier submission in another email to Dorsey. Dorsey did not respond to this email.

40.     On March 15, 2018, Drummond, Dorsey, and Brown met to discuss Drummond's plan for the Gun Club. Dorsey and Brown said little, and directed Drummond to fill out a Zoning Application, which he did—and which they accepted without mentioning that a zoning ordinance was pending which would preclude Drummond's application. Drummond remained in Robinson Township following the March 15 meeting with Dorsey and Brown in order to work on the Gun Club property. He began driving home to North Carolina on March 19, 2018.

41.     During that March 19, 2018 drive home, Drummond received a text message from one of his Pennsylvania neighbors, with a picture of a notice posted on King Road advising of a Special Meeting of the Board of Supervisors, to be held March 22, 2018, for the purpose of discussing a zoning measure targeting the Gun Club. Drummond believes he was already in West Virginia when this news arrived. This was the first time that Drummond had learned of the Township's plan to put the Gun Club out of business.

42.     Neither Dorsey nor Brown had advised Drummond of the March 22 Special Meeting when the three had met on March 15, ostensibly to consider Drummond's application. The March 15 meeting was a sham—Dorsey and Brown knew, but chose to conceal from Drummond, that the Township was plotting to adopt a zoning measure that would preclude Drummond's operation of the Gun Club, as early as within a week of their meeting with Drummond, and that Drummond's efforts were being "slow-rolled" so that he would be kept in the dark until the law had been changed.

43.     Drummond returned to Robinson Township for the March 22, 2018 meeting, at which he spoke in opposition to the proposed zoning ordinance. At the meeting's conclusion, the proposal was tabled.

44.     Believing that the matter was over, Drummond reached out to Mark Kramer the following day, March 23, 2018, to try to assuage any concerns he might have about the Gun Club and pledge to work together. The two spoke by phone for 11 minutes, during which time Kramer offered he was too busy to meet Drummond. Also that day, Drummond emailed Dorsey to update him of his efforts to address Kramer's concerns, and to ask that the Township move forward with his paperwork. Dorsey acknowledged this email.

45.     Drummond wrote Dorsey back that night, asked for confirmation as to when his paperwork would be formally received by the Township and its Solicitor, and again offered to meet

10

with Dorsey and the Township's Commissioners if they had any concerns. Drummond also emailed

each commissioner seeking to discuss any questions or concerns. The emails to Dorsey and the

commissioners were not acknowledged, and neither were repeated phone calls in the ensuing days

and weeks inquiring as to the status of Drummond's application.

46.     On April 6, 2018, Drummond again wrote Dorsey, demanding to know the status of

his application. Drummond noted that he had submitted his paperwork thirty days earlier (without

mentioning that this occurred after he had been dissuaded from making that effort for some time),

that he had met Dorsey and Brown three weeks earlier, that two weeks had passed since the Special

Meeting at which the zoning amendment was tabled, that the Township was familiar with his plans,

and that he was in full compliance with the zoning requirements. Neither this email, nor many

subsequent phone calls by Drummond asking about his application, were returned, as Dorsey and

Robinson Township were intentionally failing to disclose to Drummond that the zoning ordinance

targeting the Gun Club was back on the agenda for the April 9, 2018 Board of Supervisors meeting.

47.     On April 9, 2018, Robinson Township enacted Ordinance No. 1-2018, which

amended the Township's zoning ordinance in three respects:

a.      A new definition of "Sportsman's Club" was added to Section 601 of the

Zoning Ordinance, providing that a "Sportsman's Club" is "[a] nonprofit

entity formed for conservation of wildlife or game, and to provide members

with opportunities for hunting, fishing or shooting."

b.      Paragraph D was added to Section 311 of the Zoning Ordinance, regulating

"Sportsman's Clubs," providing that "[o]utdoor shooting activities shall be

limited to pistol range, skeet shoot, trap and skeet, and rim-fire rifles"; and

      c.     "Section 208, Table 208(A) IBD Interchange Business Development District Table of Allowed Uses shall be amended to reflect the zoning change set forth herein. Specifically, a Sportsman's Club shall no longer be allowed as a Permitted Use in an IBD Interchange Business Development District, and shall instead only be allowed as a Conditional Use in an IBD Interchange Business Development District."

48.     The Robinson Township Zoning Ordinance otherwise defines commercial outdoor shooting ranges as a "recreational use, intensive," which is neither a permitted principal nor conditional use within IBD districts.

49.     There exists no variance, exemption, or other administrative or judicial process by which anyone might be allowed to operate a for-profit gun club or shooting range within an IBD district, or shoot center-fire rifles at a "Sportsman's Club."

50.     By defining "Sportsman's Clubs" as non-profit uses, and by narrowly prescribing the activities now permitted at "Sportsman's Clubs," Robinson Township has barred Drummond and GPGC LLC's operation of the historic Gun Club, and effectively barred any use of the historic King Road Gun Club property as a gun club or shooting range.

51.     By prohibiting the use of center-fire rifles at "Sportsman's Clubs," Robinson Township has significantly frustrated if not effectively barred the use of the historic King Road Gun Club property as a gun club or shooting range.

52.     On April 16, 2018, still in the dark about the Township's real intentions with respect to the Gun Club, Drummond visited the Robinson Township Municipal Building, where he was advised for the first time that a new zoning ordinance had been enacted. Drummond immediately wrote Dorsey, asking what had been enacted and inquiring as to the status of his application.

12

53.     Dorsey then, finally, responded. Although he wrote that he had "just returned" from being "out of town," he attached copies of a letter he had signed and sent Drummond by certified return-receipt mail on April 13, 2018, advising that his application was being rejected:

> Your enclosed application for a Sportsman's Club is being rejected at this time as it does not comply with Robinson Township's pending Zoning Ordinance at the time of the application. You may resubmit your application with evidence that the club is organized as a not-for-profit entity as set forth in the *Definitions* section of Robinson Township's Zoning Ordinance.

> Dorsey had also enclosed Drummond's application, marked "Denied" with the "reason" being: "Does not comply with Robinson Township's pending zoning ordinance. Refer to certified letter." Dorsey's letter, and the rejected application, are attached hereto as Exhibit C.

54.     On April 17, 2018, Drummond spoke with Dorsey regarding the denial, and asked Dorsey if there was any way he could still obtain permission to operate the Gun Club. Dorsey did not respond.

### The Impact of Robinson Township's Deceitful Conduct and Unconstitutional Zoning Ordinance on Plaintiffs

55.     But for the Defendants' deceitful course of conduct, and intentional stonewalling of Drummond's efforts to revive the Gun Club, Drummond's operation of the Gun Club would have received pro forma approval in January, 2018 under then-existing law. The Defendants acted in bad faith, purposely misled Drummond, concealed crucial information from him under circumstances where that information would have been disclosed by any good faith actor, and simply refused to timely approve his plans so that they would have an opportunity to throw up a legal roadblock in the form of Ordinance 1-2018.

56.     Per Section 703 of the Robinson Township Zoning Ordinance, zoning violations are punishable by up to $500 per day plus enforcement costs.

13

57.     Drummond and GPGC LLC reasonably fear Defendants' enforcement of Ordinance 1-2018 and consequent imposition of severe financial penalties and injunctive action should they operate the historic King Road Gun Club in violation of Ordinance 1-2018. But for Defendants' enforcement of Ordinance 1-2018, Drummond and his limited liability company, GPGC LLC, would operate the Gun Club as they intend and as it has historically operated, for the benefit and enjoyment of Drummond and members of the general public, including other SAF members.

58.     The enforcement of Ordinance 1-2018 has injured Drummond, GPGC LLC, and SAF's membership, in that it has directly impeded their ability to operate and access the historic King Road Gun Club.

## COUNT ONE
## RIGHT TO KEEP AND BEAR ARMS, U.S. CONST., AMEND. II, 42 U.S.C. § 1983
### Robinson Township Zoning Ordinance Section 601

59.     The Second Amendment, which applies against defendant Robinson Township by operation of the Fourteenth Amendment, secures the right to operate firearms at a range, for purposes of learning about firearms, gaining proficiency with firearms, obtaining any training required as a condition of firearms ownership or usage, recreation, and competition; and the right to own and operate a range for these purposes, including the sale and rental of firearms and the sale of all ancillary and ordinary products and services that are traditionally offered at shooting ranges and gun clubs.

60.     In the United States, access to constitutional rights, including the right to keep and bear arms, is typically provided by the free market. It cannot be expected that constitutionally-protected goods and services would be provided on an exclusively non-profit basis. The government impedes access to constitutional rights when it restricts or prohibits a market for constitutionally-protected goods and services.

14

61.     On its face, and as-applied against Plaintiffs, their members and their customers, Section 601 of Robinson Township's definition of a "Sportsman's Club," restricting the operation of so-called "Sportsman's Clubs" to non-profit entities, infringes the right to keep and bear arms. By enforcing this provision, Defendants, under color of law, deprive Plaintiffs, their members, and their customers, of their right to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983, and are therefore entitled to actual compensatory damages; as well declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

**COUNT TWO**
**RIGHT TO KEEP AND BEAR ARMS, U.S. CONST., AMEND. II, 42 U.S.C. § 1983**
**Robinson Township Zoning Ordinance Section 311(D)**

62.     Center-fire rifles have historically been arms of the kind in common use for traditional lawful purposes throughout the United States. Accordingly, without more, the Second Amendment secures the right of the people to keep and bear center-fire rifles for traditional lawful purposes, including their use at shooting ranges and gun clubs. A blanket prohibition on the use of center-fire rifles, without sufficient regard to their suitability at a particular location, violates the right to keep and bear arms.

63.     The historic King Road Gun Club property is well-suited for the safe operation of center-fire rifles, and such rifles have, in fact, been safely used on that property for decades.

64.     The safety of center-fire rifles has been litigated by Robinson Township and Plaintiffs' predecessors, and conclusively established as a matter of fact and law in favor of the usage of center-fire rifles and against Robinson Township's contrary claims.

15

65.     On its face, and as-applied against Plaintiffs, their members, and their customers, Section 311(D) of Robinson Township's Zoning Ordinance, barring the operation of center-fire rifles at so-called "Sportsman's Clubs," infringes the right to keep and bear arms. By enforcing this provision, Defendants, under color of law, deprive Plaintiffs, their members, and their customers, of their right to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983, and are therefore entitled to actual compensatory damages; as well declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

## COUNT THREE
### RIGHT TO KEEP AND BEAR ARMS, U.S. CONST., AMEND. II, 42 U.S.C. § 1983
### Robinson Township Zoning Ordinance Table 208A

66.     The historic King Road Gun Club had safely operated for decades. Robinson Township's efforts to declare the club a nuisance had conclusively failed.

67.     At the time that possession and control of the historic King Road Gun Club passed to Drummond and GPGC LLC, the Gun Club was permitted to operate as of right in the IBD District per Table 208A of the Robinson Township Zoning Ordinance.

68.     Robinson Township's amendment of Table 208A, to render "Sportsmen's Clubs" a conditional rather than principal permitted use in IBD Districts, was undertaken in reaction to the Gun Club's change of control, in a transparent attempt to opportunistically use the Gun Club's change of control to do what the courts had not allowed Robinson Township to do: shut the club down.

69.     Whatever the merits of zoning future gun clubs as conditional uses in IBD Districts, the re-classification of the historic King Road Gun Club as a conditional rather than principal permitted use violates Plaintiffs' Second Amendment rights, and those of their members and customers, by having the purpose and effect of barring their operation and use of the historic King Road Gun Club.

70.     Defendants' enforcement of Table 208A of its Zoning Ordinance, defining "Sportsmen's Clubs" as a conditional rather than principal permitted use, as-applied against Plaintiffs, their members, and their customers, infringes the right to keep and bear arms. By enforcing this provision against Plaintiffs, their members and their customers, Defendants, under color of law, deprive Plaintiffs, their members, and their customers, of their right to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983, and are therefore entitled to actual compensatory damages; as well declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

**COUNT FOUR**
**RIGHT TO EQUAL PROTECTION, U.S. CONST., AMEND. XIV, 42 U.S.C. § 1983**
**Robinson Township Zoning Ordinance Section 601**

71.     The Fourteenth Amendment guarantees the right to equal protection of law.

72.     Robinson Township permits numerous for-profit activities in IBD Districts. But by operation of Robinson Township Zoning Ordinance Section 601, Defendants single out "Sportsman's Clubs," a usage that has historically been conducted by Plaintiffs' Gun Club as a for-profit enterprise, as an activity that can only be carried out without a profit interest.

17

73.     By treating "Sportsman's Clubs" differently from other businesses, solely on account of activity secured by the Second Amendment, Robinson Township Zoning Ordinance Section 601 violates the right to equal protection in the exercise of a fundamental right, on its face and as applied to Plaintiffs Drummond and GPGC LLC. By enforcing this provision against Plaintiffs, Defendants, under color of law, deprive Plaintiffs of equal protection of the law, in violation of the Fourteenth Amendment to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983, and are therefore entitled to actual compensatory damages; as well declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

## COUNT FIVE
## DEPRIVATION OF PROPERTY INTEREST, SUBSTANTIVE DUE PROCESS
## U.S. CONST., AMEND. XIV, 42 U.S.C. § 1983

74.     William Drummond has a substantive property interest in his leasehold of the historic King Road Gun Club.

75.     Defendants deprived Drummond of his property interest by frustrating and delaying his application to operate the Gun Club, all the while they changed the zoning law so as to render Drummond's application invalid, and then denying his application under the new zoning law. Defendants' conduct shocks the conscience in that they acted in derogation of the considered judgment of the Court of Common Pleas in the previous nuisance action, and with the purpose and effect of frustrating the exercise of fundamental Second Amendment rights.

76.     Defendants, under color of law, deprived Drummond of his property interest, in violation of substantive aspects the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983, and are therefore

18

entitled to actual compensatory damages; as well declaratory and preliminary and permanent

injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional

customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

**COUNT SIX**
**RIGHT TO LIVELIHOOD, U.S. CONST., AMEND. XIV, 42 U.S.C. § 1983**
**Robinson Township Zoning Ordinance Section 601**

77.    The right to pursue a livelihood is a privilege or immunity of federal citizenship that

cannot be abridged by state actors, per the Fourteenth Amendment's Privileges or Immunities

Clause.

78.    The right to pursue a livelihood is secured against infringement by state action, as a

substantive aspect of the Fourteenth Amendment's Due Process Clause.

79.    However else Robinson Township might regulate a gun club's operation, Robinson

Township Zoning Ordinance Section 601, barring a profit interest in the operation of a gun club,

violates the right to pursue a livelihood on its face and as applied to Plaintiffs Drummond and

GPGC LLC. By enforcing this provision against Plaintiffs, Defendants, under color of law, deprive

Plaintiffs of their livelihood right, in violation of the Fourteenth Amendment to the United States

Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983, and are therefore entitled

to actual compensatory damages; as well declaratory and preliminary and permanent injunctive

relief against continued enforcement and maintenance of Defendants' unconstitutional customs,

policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against

Defendants as follows:

1.      An order permanently enjoining defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Robinson Township Zoning Ordinance Sections 601 and 311(D), and Table 208A, against Plaintiffs' operation and use of the property located at 920 King Road, Bulger, Pennsylvania, as a gun club. Said operation and use of the property as a gun club would include the use of the property as a shooting range for firearms of the kind in common use for traditional lawful purposes, including center-fire rifles; the sale and rental of firearms; the sale of memberships, range time, firearms, ammunition, targets, food and beverage, and other ordinary goods that might be found at any gun range, as well as shooting training and safety courses to the public.

2.      An order permanently enjoining defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Robinson Township Zoning Ordinance Sections 601 to prohibit a profit interest in the operation of any "Sportsman's Club;" and to enforce Robinson Township Zoning Ordinance Section 311(D);

3.      An order commanding Defendants to issue William Drummond all permits with respect to the gun club's operation to which he was entitled under the status quo ante introduction of Robinson Township Ordinance 1-2018;

4.      An award of compensatory damages to William Drummond and GPGC LLC for economic losses sustained owing to Defendants' prohibition of the Gun Club's operation, in an amount according to proof at trial;

5.      Declaratory relief consistent with the injunction;

6.      Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988; and

7.      Any other further relief as the Court deems just and appropriate.

Dated:  August 24, 2018                    Respectfully submitted,

                                           /s/ James H. McCune
Alan Gura (VA Bar No. 68842)               James H. McCune (PA Bar No. 19852)
Gura PLLC                                  K. Bradley Mellor (PA Bar No. 61363)
916 Prince Street, Suite 107               Bowles Rice
Alexandria, VA 22314                       1800 Main Street, Suite 200
703.835.9085/Fax 703.997.7665              Cannonsburg, PA 15317
*Admission pro hac vice pending*           724.514.8938/Fax 724.514.8954

                                           Attorneys for Plaintiffs

## VERIFICATION

I, William Drummond, hereby verify that the facts set forth in this foregoing Verified

Complaint are true and correct to the best of my knowledge, information and belief. I understand

that the statements in this Verification are made subject to the penalties of 18 Pa. C.S. § 4904

relating to unsworn falsification to authorities.

_____
William Drummond