IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM DRUMMOND, GPGC LLC, and SECOND AMENDMENT FOUNDATION, INC., | ) Civil Action No. 18-1127-MRH ) |
| | ) **MEMORANDUM OF POINTS** |
| Plaintiffs, | ) **AND AUTHORITIES IN** |
| | ) **SUPPORT OF PLAINTIFFS'** |
| v. | ) **MOTION FOR PRELIMINARY** |
| | ) **INJUNCTION** |
| ROBINSON TOWNSHIP and MARK DORSEY, Robinson Township Zoning Officer, in his official and individual capacities, | ) ) ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs William Drummond, GPGC LLC, and Second Amendment Foundation, Inc.,

respectfully submit their Memorandum of Points and Authorities in Support of their Motion for a

Preliminary Injunction.

Dated:  September 21, 2018

Respectfully submitted,

/s/ Alan Gura_____
Alan Gura (VA Bar No. 68842)
Gura PLLC
916 Prince Street, Suite 107
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665
*Admitted pro hac vice*

/s/ James H. McCune_____
James H. McCune (PA Bar No. 19852)
/s/ K. Bradley Mellor_____
K. Bradley Mellor (PA Bar No. 61363)
Bowles Rice
1800 Main Street, Suite 200
Cannonsburg, PA 15317
724.514.8938/Fax 724.514.8954

Attorneys for Plaintiffs

TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.      Plaintiffs Will Succeed on the Merits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      Ordinance 1-2018 Violates Plaintiffs' Second Amendment Rights. . . . . . . . . . . . . . 6

                1.      The Second Amendment Secures the Historic King Road Gun Club. . . . . . 6

                2.      Ordinance 1-2018 Fails as a Matter of Text, History, and Tradition. . . . . . . 8

                3.      Ordinance 1-2018 Fails Any Level of Heightened Scrutiny. . . . . . . . . . . . . 9

        B.      Singling Out "Sportsman's Clubs" for Mandatory Non-Profit Status Violates
                Plaintiffs' Right to Equal Protection. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        C.      Robinson Township's Frustration of Drummond's Efforts to Operate the Gun
                Club Violated Drummond's Substantive Due Process Rights in his Property. . . . . 13

        D.      Abolishing the Livelihood Interest in the Historic King Road Gun Club Violates
                the Fourteenth Amendment Right to Livelihood. . . . . . . . . . . . . . . . . . . . . . . . . . 13

II.     Plaintiffs Are Irreparably Harmed By Ordinance 1-2018. . . . . . . . . . . . . . . . . . . . . . 14

III.    The Balance of the Equities, and the Public Interest, Favor Injunctive Relief. . . . . . . . . . 15

IV.     Plaintiffs Should Not Be Required to Post Security, as Defendants
        Cannot Be Financially Harmed by the Injunction. . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TABLE OF AUTHORITIES

Cases

*Andrews* v. *State*,
　　50 Tenn. 165 (1871). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Binderup* v. *Attorney Gen'l*,
　　836 F.3d 336 (3d Cir. 2016) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

*Conn* v. *Gabert*,
　　526 U.S. 286 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Connelly* v. *Steel Valley Sch. Dist.*,
　　706 F.3d 209 (3d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*District of Columbia* v. *Heller*,
　　554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Drake* v. *Filko*,
　　724 F.3d 426 (3d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Eichenlaub* v. *Twp. of Indiana*,
　　385 F.3d 274 (3d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Elrod* v. *Burns*,
　　427 U.S. 347 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ezell* v. *City of Chicago*,
　　651 F.3d 684 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9, 10, 14, 15

*Ezell* v. *City of Chicago*,
　　846 F.3d 888 (7th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*Greenleaf* v. *Garlock, Inc.*,
　　174 F.3d 352 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Heller* v. *District of Columbia*,
　　670 F.3d 1244 (D.C. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hohe* v. *Casey*,
　　868 F.2d 69 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ii

*Ill. Ass'n of Firearms Retailers* v. *City of Chicago*,
 961 F. Supp. 2d 928 (N.D. Ill. 2014)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Iron City LLC d/b/a Iron City Gun Club* v. *Robinson Township*, et al.,
 Court of Common Pleas, Washington County,
 Civil Div. Nos. 2016-5682, 2016-7073 (April 17, 2017)... . . . . . . . . . . . . . . . . . . . . . . 2

*Jackson* v. *City & Cnty. of San Francisco*,
 746 F.3d 953 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*K.A.* v. *Pocono Mt. Sch. Dist.*,
 710 F.3d 99 (3d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Mance* v. *Sessions*,
 896 F.3d 390 (5th Cir. 2018)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*McDonald* v. *City of Chicago*,
 561 U.S. 742 (2010)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Metro. Edison Co.* v. *Pa. PUC*,
 767 F.3d 335 (3d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Nicolette* v. *Caruso*,
 315 F. Supp. 2d 710 (W.D. Pa. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Piecknick* v. *Pennsylvania*,
 36 F.3d 1250 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Reilly* v. *City of Harrisburg*,
 858 F.3d 173 (3d Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Robinson Township v. Greater Pittsburgh Trap and Skeet Club*,
 Court of Common Pleas, Washington County, Pennsylvania,
 Civil Division No. 93-4400 (May 9, 1997)... . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 12

*Sammon* v. *New Jersey Bd. of Medical Examiners*,
 66 F.3d 639 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*St. Joseph Abbey* v. *Castille*,
 712 F.3d 215 (5th Cir. 2013)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Teixeira* v. *Cty. of Alameda*,
 873 F.3d 670 (9th Cir. 2017) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*The Slaughter-House Cases*,

83 U.S. 36 (1872) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Truax* v. *Raich*,
239 U.S. 33 (1915). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States* v. *Decastro*,
682 F.3d 160 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States* v. *Marzzarella*,
614 F.3d 85 (3d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10, 12

*Windsor* v. *United States*,
699 F.3d 169 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Zambelli Fireworks Mfg. Co.* v. *Wood*,
592 F.3d 412 (3d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Statutes, Ordinances, and Rules

28 U.S.C. § 1738. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 65(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Robinson Township Zoning Ordinance Table 208(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Robinson Township Zoning Ordinance § 311(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Robinson Township Zoning Ordinance § 601. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

Other Authorities

The Writings of Thomas Jefferson
(T.J. Randolph, ed., 1830). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>

### INTRODUCTION

This case concerns the third attempt by Robinson Township and its Zoning Officer to shut down the gun club that has safely operated for most of the past 50 years on William Drummond's family property. Over twenty years ago, the Court of Common Pleas rejected the Township's nuisance claim as unfounded and lacking in credibility, finding it to be the product of personal animus. Last year, the Township lost a licensing action aimed at shutting down the gun club.

Now, the Township and its Zoning Officer have taken advantage of the gun club's change in management to legislate the club out of existence. But however else Robinson Township wishes to regulate gun clubs, it cannot carry its heavy Second Amendment burden without regard to compelling safety interests. The Township also cannot deprive gun club operators of the law's equal protection, or of their property and liberty interests in gun clubs. Injunctive relief is warranted.

### STATEMENT OF FACTS

The Greater Pittsburgh Gun Club ("GPGC"), under various names and managers, has operated for most of the past fifty-one years on William Drummond's family property—about 265 rural acres in Bulger, Pennsylvania. Drummond Aff., ¶¶ 4-5. Established in 1967 by Drummond's grandfather, GPGC operated as much as any ordinary commercial gun club and shooting range. It consisted of a clubhouse and restaurant, as well as the living quarters of its manager and the manager's family, four trap ranges, three skeet ranges, a 25-yard pistol range, a 100-yard rifle-sighting range, and a 400-yard rifle range. It sold memberships, range time, firearms, ammunition, targets, food and beverage, and other ordinary goods that might be found at any gun range, as well as shooting training and safety courses, to the public. The Club had as many as 800 members at any one time, but did not require membership to shoot on its property. Patrons who did not own their own

guns, or who wished to try out different guns, could also rent guns from the range. In addition to such ordinary civilian use, the range was also used by police and military personnel for training. *Id.* ¶6. GPGC had always allowed the use of ordinary firearms of the kind in common use for traditional lawful purposes, including pistols, shotguns, and center-fire rifles up to .50 caliber, though in 1994, it ceased allowing the use of machine guns by local military units. *Id.* ¶7.

Robinson Township brought a nuisance action against GPGC in 1993, in which it admitted that the Gun Club was lawfully operating its business under the Township's zoning ordinance. Verified Complaint ("VC") Exh. A, Findings ¶27. GPGC prevailed. *See Robinson Township v. Greater Pittsburgh Trap and Skeet Club*, Court of Common Pleas, Washington County, Pennsylvania, Civil Division No. 93-4400 (May 9, 1997), VC Exh. A. The Court of Common Pleas found that GPGC did not constitute a nuisance and dismissed the action. Adopting GPGC's proposed findings of fact and law, *id.*, the Court determined that the range was safe, that an alleged bullet strike on a neighboring property did not come from the club, and that the nuisance action was largely motivated by the personal animus that the Township's then-Zoning Officer and range neighbor Mark Kramer harbored against GPGC's manager. *Id.* Factual Findings, ¶¶40-43, 49-51, Conclusions of Law, ¶¶2-3. The Court also held that the Second Amendment barred the Township's regulation of GPGC. *Id.*, Conclusions of Law, ¶4. GPGC ceased operations in 2008 but was revived in 2016 as the Iron City Gun Club. Drummond Aff. ¶8. Within three months, spurred by Kramer, the Township revoked the Club's license for various alleged violations. *Id.* ¶¶23-25. This effort, too, failed in court. *See Iron City LLC d/b/a Iron City Gun Club* v. *Robinson Township*, et al., Court of Common Pleas, Washington County, Civil Div. Nos. 2016-5682, 2016-7073 (April 17, 2017), VC Exh. B.

When the club's operator announced that it would cease operations, William Drummond leased the land and formed GPGC LLC for the purpose of operating GPGC as it has historically

2

operated. Drummond Aff, ¶10. Drummond is a professional shooter and firearms instructor. He has been active in the shooting sports and the firearms industry for 20 years, and represents several companies in the firearms industry. An NRA-certified shooting instructor, Drummond has won multiple shooting championships throughout the world, and teaches competitive shooting and firearm safety. Drummond is also a member of the Second Amendment Foundation, Inc. ("SAF"), a non-profit membership organization with over 650,000 members and supporters nationwide, including Pennsylvania. *Id*. ¶3. Drummond and GPGC LLC would operate the club for the benefit and enjoyment of Drummond and members of the general public, including SAF members. *Id*. ¶10.

On January 19, 2018, Drummond spoke to Defendant Dorsey, the Zoning Officer for Robinson Township and who was then also the Chief of Police for McDonald, PA, the police department that is contracted to provide police services to Robinson Township. Drummond advised Dorsey of his intentions to continue the club's operation, and asked Dorsey what was required of him to take over the Club's operation, and remodel and improve the club. Dorsey advised Drummond to write him a detailed description of his plans. Drummond followed through the following day, but Dorsey became unresponsive. *Id*. ¶¶11-15. Meanwhile, without notice to Drummond, the subject of the Gun Club arose at the February 12, 2018 Robinson Township Board of Supervisors' meeting, with Judy Kramer, Mark Kramer's wife and one of the earlier nuisance plaintiffs, calling for restrictive zoning to shut down the Club. Exh. A. Four days later, Dorsey (who had attended the meeting) asked Drummond for more information, but dissuaded him from filing the necessary zoning application. Dorsey ignored Drummond's question as to which form was required. *Id*. ¶16.

Again without notice to Drummond, the Robinson Township Supervisors met on February 19 (Presidents' Day) to discuss restrictive zoning of the Gun Club at the Kramer's behest. *Id*. ¶17; Exh. B. The same day, Drummond offered to meet Dorsey on February 22 to submit required paperwork,

3

Dorsey, who had attended the special Presidents' Day meeting, ignored him. *Id.* ¶¶17-18. On March 1, 2018, Dorsey agreed to meet Drummond and accept his paperwork at a March 15, 2018, meeting. He requested more information, which Drummond provided March 7. *Id.* ¶¶21-22.

At their March 15, 2018 meeting, neither Dorsey nor Township Manager Crystal Brown said much. They finally accepted Drummond's application, but failed to mention that a restrictive zoning ordinance barring Drummond's application had been offered and placed on the agenda for a special Board of Supervisors' meeting a week hence, on March 22, 2018. *Id.* ¶23. As Drummond drove home from Robinson Township to North Carolina on March 19, 2018, a neighbor texted him to alert him to the special meeting. Drummond returned to Pennsylvania and argued against the ordinance at the special March 22 meeting, where it was tabled. *Id.* ¶¶24-25; Exh. C.

Believing the matter resolved, Drummond unsuccessfully sought to reconcile with Kramer, and reached out to Dorsey and the Township's Supervisors, offering further cooperation and asking about the status of his zoning application. As late as April 6, 2018, Drummond asked Dorsey about his zoning application, to no avail. No one told Drummond that the restrictive zoning ordinance was back on the agenda for the April 9, 2018 Board of Supervisors' meeting, where it was adopted. *Id.* ¶¶26-28; Exh. D, E.

GPGC had always been allowed as a "Sportsman's Club" as of right. The new ordinance defined a "Sportsman's Club" as "[a] non-profit entity formed for conservation of wildlife or game, and to provide members with opportunities for hunting, fishing or shooting," Robinson Township Zoning Ordinance § 601. It also barred all center-fire rifle fire at "Sportsman's Clubs," in other words, the shooting of any rifles of over .22 caliber, *id.* § 311(D); and further amended the zoning table to transfer "Sportsman's Club" from a principal permitted to a conditional use within the IBD District where the historic Gun Club is located. *See id.*, Table 208(A). By defining "Sportsman's

Clubs" as non-profit uses, and by narrowly prescribing the activities now permitted at "Sportsman's Clubs," Robinson Township has barred Plaintiffs' operation of the historic Gun Club. Drummond Aff., ¶29. By prohibiting the use of center-fire rifles at "Sportsman's Clubs," Robinson Township has significantly frustrated if not effectively barred the use of the historic King Road Gun Club property as a gun club or shooting range. *Id*. ¶30.

Having stonewalled Drummond's application since January so as to allow time for the introduction and enactment of prohibitive zoning amendments—a course of conduct that saw Dorsey fail to inform Drummond of *four* official meetings about his business, including two special meetings, one on a holiday—Dorsey denied Drummond's application on or about April 13, 2018, alleging it did not comply with a pending ordinance "at the time of application." VC Exh. C. "You may resubmit your application with evidence that the club is organized as a not-for-profit entity." *Id.*

## SUMMARY OF ARGUMENT

Plaintiffs satisfy all four preliminary injunction factors: (1) a reasonable probability of eventual success in the litigation, (2) irreparable harm, (3) the prospect of harm to others, and (4) the public interest. *Reilly* v. *City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). Litigation has already established that GPGC is not a nuisance. In any event, gaining and maintaining proficiency in the use of firearms is core Second Amendment activity. Defendants thus carry the burden of proving that banning a livelihood interest in the Gun Club is either historically confirmed, or advances some legitimate interest under heightened scrutiny. Nor does prohibiting rifle fire on Drummond's rural 265 acres narrowly advance any safety interests. The Gun Club cannot be transformed into a conditional use, where it has already operated as of right for most of the previous half-century. Robinson Township cannot discriminate against GPGC on account of its Second Amendment activity without satisfying strict scrutiny, it cannot destroy Drummond's property

5

interest, and its authority to regulate economic activity still requires at least a rational basis. Allowing an activity, only so long as nobody turns a profit at it, is irrational.

Irreparable harm is presumed given the impact on a fundamental right. And there are no countervailing interests in sustaining these provisions. The public interest stands against constitutional violations. A preliminary injunction is plainly warranted.

ARGUMENT

I.    PLAINTIFFS WILL SUCCEED ON THE MERITS.

A preliminary injunction movant "must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not)." *Reilly*, 858 F.3d at 179 (footnote omitted). Because "the burdens at the preliminary injunction stage track the burdens at trial," plaintiffs must be deemed likely to succeed unless the government can carry any applicable heightened scrutiny burdens. *Id.* at 180 (internal quotation marks omitted).

A.    Ordinance 1-2018 Violates Plaintiffs' Second Amendment Rights.

      1.    *The Second Amendment Secures the Historic King Road Gun Club.*

"[T]o bear arms implies something more than the mere keeping; it implies the learning to handle and use them . . . ; it implies the right to meet for voluntary discipline in arms . . . ." *District of Columbia* v. *Heller*, 554 U.S. 570, 617-18 (2008) (internal quotation marks omitted). "No doubt, a citizen who keeps a gun or pistol under judicious precautions, practices in safe places the use of it, and in due time teaches his sons to do the same, exercises his individual right." *Id.* at 619 (internal quotation mark omitted)). "The right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." *Ezell* v. *City of Chicago* ("*Ezell I*"), 651 F.3d 684, 704 (7th Cir. 2011) (striking down municipal gun range ban).

6

Other basic gun club activities, such as renting, buying and selling firearms; and commerce generally in ammunition, targets, and other shooting accessories; are likewise protected as inherent to gun clubs, though to be sure, they are also independently protected apart from such establishments. As the Supreme Court acknowledged in surveying the Second Amendment's history, "What law forbids the veriest pauper, if he can raise a sum sufficient for the purchase of it, from mounting his Gun on his Chimney Piece . . .?" *Heller*, 554 U.S. at 583 n.7 (internal quotation marks omitted). "Our citizens have always been free to make, vend and export arms. It is the constant occupation and livelihood of some of them." 3 The Writings of Thomas Jefferson 230 (T.J. Randolph, ed., 1830). "The right to keep and bear arms, necessarily involves the right to purchase them . . . ." *Andrews* v. *State*, 50 Tenn. 165, 178 (1871). "[A]lthough that acquisition right is far from absolute," the Second Amendment "right must also include the right to *acquire* a firearm . . . ." *Ill. Ass'n of Firearms Retailers* v. *City of Chicago*, 961 F. Supp. 2d 928, 930 (N.D. Ill. 2014); *see also Jackson* v. *City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) ("'the right to possess firearms for protection implies a corresponding right' to obtain the bullets necessary to use them") (citing *Ezell I*, 651 F.3d at 704). "As with purchasing ammunition and maintaining proficiency in firearms use, the core Second Amendment right to keep and bear arms for self-defense wouldn't mean much without the ability to acquire arms." *Teixeira* v. *Cty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (en banc) (internal quotation marks omitted). The Third Circuit agrees. Rejecting the argument that *Heller*'s allowance for *longstanding* commercial restriction negates a right to commerce in arms, the Third Circuit held that "[c]ommercial regulations on the sale of firearms do not fall outside the scope of the Second Amendment." *United States* v. *Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010). Prohibiting firearm sales "would be untenable under *Heller*." *Id.*

Courts take either of two approaches to resolving Second Amendment claims. Both approaches would yield the same result here: injunctive relief.

2.    *Ordinance 1-2018 Fails as a Matter of Text, History, and Tradition*.

Laws can be struck down for conflicting with the Second Amendment's core guarantee, without engaging in any means-ends scrutiny. In *Heller*, once it was determined that the Second Amendment secures a right to have handguns for self-defense, city ordinances banning handguns and the keeping of functional firearms simply could not survive. "[A] law that burdens persons, arms, or conduct protected by the Second Amendment and that does so with the effect that the core of the right is eviscerated is unconstitutional." *Binderup* v. *Attorney Gen'l*, 836 F.3d 336, 364 (3d Cir. 2016) (en banc) (Hardiman, J., concurring). This approach allows for the application of means-ends scrutiny "in cases involving less severe burdens." *Id.* at 364 n.8.

But some judges read *Heller*'s categorical approach to hold that "[g]un bans and gun regulations that are not longstanding or sufficiently rooted in text, history, and tradition are not consistent with the Second Amendment individual right." *Heller* v. *District of Columbia* (*Heller II*), 670 F.3d 1244, 1285 (D.C. Cir. 2011) (Kavanaugh, J., dissenting); *Mance* v. *Sessions*, 896 F.3d 390, 395 (5th Cir. 2018) (Elrod, J., dissenting from denial of rehearing en banc). Under this view, there is not much to argue. Zoning laws did not exist in the Framing Era. *Euclid* v. *Ambler Realty Co.*, 272 U.S. 365, 386 (1926). Plaintiffs are unaware of Framing Era laws barring gun clubs from turning a profit. Shooting had always been subject to time, place and manner restrictions, but always tied to obvious safety concerns, *see, e.g., Heller*, 554 U.S. at 632. Rifle practice would not have been banned in any controlled range setting where it had safely been practiced for half a century, especially following a judicial determination that it was safe at that particular location.

8

3.      *Ordinance 1-2018 Fails Any Level of Heightened Scrutiny.*

*Heller*'s categorical example notwithstanding, most Second Amendment claims are subjected to the two-step interest-balancing approach pioneered by the Third Circuit in *Marzzarella*, *supra*, 614 F.3d 85. Under this framework, a court first asks whether the challenged law burdens conduct protected by the Second Amendment. If not, the challenge ends. If it does, the court proceeds to apply "some form of means-ends scrutiny." *Id.* at 89. The standard of review in Second Amendment cases cannot be rational basis. *Heller*, 554 U.S. at 628 n.27; *Binderup*, 836 F.3d at 334.[1]

"[T]he Second Amendment can trigger more than one particular standard of scrutiny, depending, at least in part, upon the type of law challenged and the type of Second Amendment restriction at issue." *Drake* v. *Filko*, 724 F.3d 426, 435 (3d Cir. 2013) (internal quotation marks omitted); *Marzzarella*, 614 F.3d at 96-97. Like most courts, the Third Circuit requires "some form of heightened scrutiny," *Marzzarella*. 614 F.3d at 96, and has defined the options as being either strict or intermediate, *Drake*, 724 F.3d at 435-36. The Seventh Circuit applied "not quite 'strict scrutiny,'" *Ezell I*, 654 F.3d at 708, in striking down Chicago's gun range ban, and returned to that standard, "*some* heightened standard of judicial review," *Ezell* v. *City of Chicago* ("*Ezell II*"), 846 F.3d 888, 893 (7th Cir. 2017) (internal quotation marks omitted), in striking down Chicago's subsequent restrictive zoning of gun ranges.

As discussed supra, the Second Amendment secures Plaintiffs' operation of the Gun Club. At *Marzzarella* step two, to the extent that any particular standard of scrutiny must be identified, that standard should be strict scrutiny. Gun clubs function at the core of the Second Amendment right,

---

[1]Only the Second and Ninth Circuits allow for rational basis review in Second Amendment cases, by imposing a threshold test whereby a judge may determine the burden insubstantial. *United States* v. *Decastro*, 682 F.3d 160, 166 (2d Cir. 2012); *Teixeira*, 873 F.3d at 677.

and Robinson Township's constructive spot-zoning is part of a decades-long campaign targeting this particular club. Under "not-quite strict scrutiny," Chicago "[bore] the burden of establishing a strong public-interest justification for its ban on range training." *Ezell I*, 654 F.3d at 708. "The City must establish a close fit between the range ban and the actual public interests it serves, and also that the public's interests are strong enough to justify so substantial an encumbrance on individual Second Amendment rights." *Id.* at 708-09. It could only justify the breadth of its prohibition by establishing "genuine and serious risks to public safety." *Id.* at 709.

"[W]hether we apply intermediate scrutiny or strict scrutiny . . . the Government bears the burden of proof on the appropriateness of the means it employs to further its interest." *Binderup*, 836 F.3d at 353 (citations omitted). Even under intermediate scrutiny, Defendants must prove a "reasonable fit" between a "substantial" government interest and Ordinance 1-2018, that does not burden more conduct than reasonably necessary. *Marzzarella*, 614 F.3d at 97-98.

The easy part of heightened scrutiny is the assertion of a substantial or compelling interest. In enacting Ordinance 1-2018, Robinson Township declared that it "desires to provide for the regulation of Sportsman's Clubs in an effort to avoid nuisances and provide for and protect the public health, safety and welfare," Exh. E, laudable goals to be sure. But how does requiring that the Gun Club operate as a non-profit advance these interests? How is outright banning center-fire rifle shooting on 265 rural acres, and only in the context of a "Sportsman' Club," narrowly tailored to safety concerns? And why does a gun club with such a long history of safe operation as a principal permitted use suddenly require a conditional use permit?

The questions of whether the Gun Club is a nuisance, or poses any sort of danger when operated for profit and permitting center-fire rifle shooting, have already been adjudicated. Were Plaintiffs to operate the Gun Club in an unsafe manner, Defendants could address such behavior. But

Defendants cannot re-litigate their claim that the Gun Club, as such, is a nuisance, or poses any sort

of harm when operated on a for-profit basis or when it allows center-fire rifle fire. The Court of

Common Pleas has already conducted a trial, replete with witnesses, experts, and countless exhibits,

and has rendered a final judgment on the matter: the Gun Club is safe, it is not a nuisance.

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, "[f]ederal courts give preclusive

effect to issues decided by state courts, to not only reduce unnecessary litigation and foster reliance

on adjudication, but also promote the comity between state and federal courts that has been

recognized as a bulwark of the federal system." *Metro. Edison Co.* v. *Pa. PUC*, 767 F.3d 335, 350

(3d Cir. 2014) (internal quotation marks omitted). "We must give the acts of Pennsylvania's courts

the same full faith and credit in federal court that they would enjoy in Pennsylvania's courts."

*Greenleaf* v. *Garlock, Inc*., 174 F.3d 352, 357 (3d Cir. 1999) (citation omitted).

Pennsylvania's Supreme Court applies issue preclusion when:

(1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party . . .against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

*Metro. Edison*, 767 F.3d at 351 (internal quotation marks and footnote omitted).

Robinson Township's failed nuisance action against the Gun Club, and each and every

factual and legal finding made by the Court of Common Pleas, is fully binding here to the extent that

Robinson Township might claim the Gun Club, as operated historically, would pose a nuisance or

any sort of harm: (1) these issues are the exact issues decided by the state court; (2) the state court

entered a final adjudication on the merits; (3) Robinson Township is the same Robinson Township

that brought the prior action; (4) it had a full and fair opportunity to litigate its action; and (5) the

issues determined were essential to the judgment. Indeed, among the legal findings from the previous

11

action, the Court of Common Pleas held that Second Amendment barred it from taking action against the Gun Club. *Robinson Township*, *supra*; VC Exh. A at 15-16, Conclusion of Law ¶4.

Even in the previous judgment's absence, Robinson Township would require "actual evidence, not just assertions," to establish the proper fit between the challenged provisions and legitimate goals. *Ezell II*, 846 F.3d at 894. Robinson Township cannot "invoke [its] interests as a general matter and call it a day." *Id.* at 895. But Robinson Township is in a worse position than was Chicago in *Ezell II*. Chicago merely remained ignorant of how gun ranges interact with neighboring land uses, hoping courts would blindly defer to its desired outcome, *id.*, but the Township has had the benefit of its lost nuisance trial against the Gun Club. And still, Robinson Township appears to have done nothing more or less than execute a vendetta by the Kramers. Underscoring Ordinance 1-2018's complete lack of justification, the record here is one of active deception. If the Township had any legitimate concerns, it would have forthrightly shared them with Drummond as might be expected under the circumstances by honest people dealing fairly with each other. If Drummond would operate the Gun Club in a dangerous manner, that could be addressed going forward. As it stands, there exists zero connection between the Township's asserted goals and the challenged provisions, which are both over- and under-inclusive. The outcome under *Marzzarella* is not in doubt.

B.     Singling Out "Sportsman's Clubs" for Mandatory Non-Profit Status Violates Plaintiffs' Right to Equal Protection.

"[A] classification that trammels fundamental personal rights . . . must meet the strict scrutiny standard, under which a law must be narrowly tailored to further a compelling government interest." *Connelly* v. *Steel Valley Sch. Dist.*, 706 F.3d 209, 213 (3d Cir. 2013) (internal quotation marks omitted). The Second Amendment secures a fundamental right. *McDonald* v. *City of Chicago*, 561 U.S. 742 (2010). Section 601 classifies Plaintiffs' business differently from the other, for-profit IBD

uses on account of its Second Amendment activity. This classification cannot meet strict scrutiny.

Assuming that Robinson Township has a compelling interest in avoiding nuisances and securing the

public health, safety and welfare, it cannot be that Section 601 is even rationally related to advancing

this interest, let alone is required, and narrowly-tailored so as to avoid needless restriction.

C.      Robinson Township's Frustration of Drummond's Efforts to Operate the Gun Club
        Violated Drummond's Substantive Due Process Rights in his Property.

"To state a claim that a municipal land use decision violates substantive due process pursuant

to section 1983, plaintiff must meet two requirements. First, plaintiff must allege that the particular

property interest at issue is worthy of substantive due process protection. Second, plaintiff must allege

that the government's deprivation of that protected property interest 'shocks the conscience.'"

*Nicolette* v. *Caruso*, 315 F. Supp. 2d 710, 721-22 (W.D. Pa. 2003) (citations and footnote omitted).

As a lessee of real property, Drummond satisfies the first prong. *Id.* at 722. Nor should there

be any serious dispute that Defendants' actions "shock the conscience," as they acted "in order to

interfere with otherwise constitutionally protected activity," *Eichenlaub* v. *Twp. of Indiana*, 385

F.3d 274, 286 (3d Cir. 2004), namely, the operation of a gun club protected by the Second

Amendment. Furthermore, it shocks the conscience for a government to deprive people of the courts'

protection by legislating results specifically rejected in a court's considered judgment. For the

Township to merely legislate the result denied it by the Court of Common Pleas makes a sham of the

judicial process whose protection is essential to the concept of property.

D.      Abolishing the Livelihood Interest in the Historic King Road Gun Club Violates the
        Fourteenth Amendment Right to Livelihood.

The Fourteenth Amendment secures the right to earn a living, as a privilege or immunity of

national citizenship, and also as a substantive aspect of due process of law. Plaintiffs acknowledge

that *The Slaughter-House Cases*, 83 U.S. 36 (1872) forecloses the first of these arguments but

preserve it here for appeal, noting that the livelihood right was always understood to be included within the Privileges or Immunities Clause's text, and that *Slaughter-House* was wrongly decided for the reasons offered by the dissents in that case and Justice Thomas's *McDonald* concurrence.

The livelihood right remains on more solid footing under substantive due process. "[T]he right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." *Piecknick* v. *Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994) (quoting *Truax* v. *Raich*, 239 U.S. 33, 41 (1915)); *Conn* v. *Gabert*, 526 U.S. 286, 291 (1999). "The test for determining whether a law comports with substantive due process is whether the law is rationally related to a legitimate state interest." *Sammon* v. *New Jersey Bd. of Medical Examiners*, 66 F.3d 639, 645 (3d Cir. 1995) (quotation omitted). Although rational-basis review is deferential, the test is not "toothless." *Windsor* v. *United States*, 699 F.3d 169, 180 (2d Cir. 2012), *aff'd*, 570 U.S. 744 (2013). "[A] hypothetical rationale, even post hoc, cannot be fantasy, and [the government's] chosen means must rationally relate to the state interests it articulates." *St. Joseph Abbey* v. *Castille*, 712 F.3d 215, 223 (5th Cir. 2013). No rational basis supports the notion that a gun club that has safely operated for most of the past half-century would be yet-safer, if only its operator would forego a profit interest.

II.   PLAINTIFFS ARE IRREPARABLY HARMED BY ORDINANCE 1-2018.

Just as "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Hohe* v. *Casey*, 868 F.2d 69, 72 (3d Cir. 1989) (quoting *Elrod* v. *Burns*, 427 U.S. 347, 373 (1976)), "[t]he Second Amendment protects similarly intangible and unquantifiable interests," *Ezell I*, 654 F.3d at 699. Plaintiffs are suffering on-going "direct penalization, as opposed to incidental inhibition." *Hohe*, 868 F.2d at 73 (internal quotation

14

marks omitted). Absent injunctive relief, the Gun Club will remain shuttered, and Plaintiffs will be

unable to exercise their Second Amendment rights. As in *Ezell I*, the harm here is irreparable.

III.     THE BALANCE OF THE EQUITIES, AND THE PUBLIC INTEREST, FAVOR INJUNCTIVE RELIEF.

Injunctive relief will harm no one. The Gun Club has operated safely for nearly half a

century, and the Court of Common Pleas has determined that it is not a nuisance. Should any harm

arise out of Plaintiff's particular operation of the Gun Club, an injunction would not bar Robinson

Township from undertaking properly tailored, *constitutional* regulations. Indeed, an injunction could

only help prevent harm to others, as the availability of firearm education and training bears directly

on public safety. "[T]he enforcement of an unconstitutional law vindicates no public interest." *K.A.* v.

*Pocono Mt. Sch. Dist.*, 710 F.3d 99, 114 (3d Cir. 2013) (citation omitted).

IV.     PLAINTIFFS SHOULD NOT BE REQUIRED TO POST SECURITY, AS DEFENDANTS
        CANNOT BE FINANCIALLY HARMED BY THE INJUNCTION.

The Court should dispense with Fed. R. Civ. P. 65(c)'s security requirement, as "complying

with the preliminary injunction raises no risk of monetary loss to the defendant," and "the balance of

[the] equities weighs overwhelmingly in favor of the party seeking the injunction." *Zambelli*

*Fireworks Mfg. Co.* v. *Wood*, 592 F.3d 412, 426 (3d Cir. 2010) (internal quotation marks omitted).

CONCLUSION

The Court should issue a preliminary injunction.

Dated:  September 21, 2018                    Respectfully submitted,

/s/ Alan Gura                                /s/ James H. McCune
Alan Gura (VA Bar No. 68842)                 James H. McCune (PA Bar No. 19852)
Gura PLLC                                    /s/ K. Bradley Mellor
916 Prince Street, Suite 107                 K. Bradley Mellor (PA Bar No. 61363)
Alexandria, VA 22314                         Bowles Rice
703.835.9085/Fax 703.997.7665                1800 Main Street, Suite 200
*Admitted pro hac vice*                      Cannonsburg, PA 15317
Attorneys for Plaintiffs                     724.514.8938/Fax 724.514.8954

CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of September, 2018 a copy of the foregoing brief was

electronically served upon all parties by filing the same with the Clerk of Court using the CM/ECF

system and forwarding to all counsel of record.


/s/ Alan Gura
Alan Gura