## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM DRUMMOND, GPGC LLC, and SECOND AMENDMENT FOUNDATION, INC., | ) ) ) | Civil Action No. 18-1127 |
| | ) | Judge Marilyn J. Horan |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ROBINSON TOWNSHIP and MARK DORSEY, Robinson Township Zoning Officer, in his official and individual capacities, | ) ) ) ) ) | |
| Defendants. | ) ) | |

### OPINION AND ORDER

In August 2018, Plaintiffs William Drummond, GPGC LLC, and Second Amendment Foundation, Inc. filed suit against Defendants Robinson Township and Zoning Officer Mark Dorsey. (ECF No. 1). In their Complaint, Plaintiffs sought relief, pursuant to 42 U.S.C. § 1983, for alleged facial and as-applied violations of the Second Amendment right to bear arms, as well as various facial and as-applied violations of the Fourteenth Amendment's Equal Protection, Due Process, and Privileges or Immunities clauses. Plaintiffs also sought a preliminary injunction. (ECF No. 17). Defendants subsequently moved to dismiss the Complaint in its entirety. (ECF No. 26). In January 2019, the Court granted the Motion to Dismiss and denied the Motion for Preliminary Injunction as moot. (ECF No. 36). Plaintiffs appealed. (ECF No. 38). The Third Circuit Court of Appeals vacated and remanded this Court's Order with respect to Plaintiffs' facial Second Amendment claims and the denial of the preliminary injunction, insofar as preliminary injunction relates to the facial Second Amendment claims. (ECF Nos. 41, 42);

1

*Drummond v. Twp. of Robinson*, 784 Fed. App'x. 82 (3d Cir. 2019). The Third Circuit affirmed this Court's Order in all other respects.

Now before the Court are Defendants' Motion to Dismiss as it relates to Plaintiffs' facial Second Amendment claims and Plaintiffs' Motion for Preliminary Injunction. For the following reasons, Defendants' Motion to Dismiss will be granted, and Plaintiffs' Motion for Preliminary Injunction will be denied as moot.

## I. Background

The facts of this case are set out more fully in this Court's previous Opinion and Order at *Drummond v. Robinson Twp.*, 361 F. Supp. 3d 466 (W.D. Pa. 2019). For the purposes of this Opinion, the relevant facts are as follows.

In December 2017, Mr. Drummond entered into a ten-year lease of a 265-acre parcel within the jurisdiction of Robinson Township, Washington County, Pennsylvania. (ECF No. 1, at ¶¶ 11, 30). Mr. Drummond, through his wholly owned entity, GPGC LLC, intended to open and operate a for-profit shooting range and gun club on the property. *Id.* at ¶¶ 30–31. Mr. Drummond planned to "sell memberships, range time, firearms, ammunition, targets, food and beverage, and other ordinary goods that might be found at any gun range, as well as shooting training and safety courses to the public." *Id.* at ¶ 31.

Under Robinson Township's Zoning Ordinance, Mr. Drummond's property was zoned as an Interchange Business Development District, or IBD District. *Id.* at ¶ 12. At the time Mr. Drummond entered the lease, the Zoning Ordinance allowed Sportsman's Clubs as permitted principal uses within IBD Districts. *Id.* The Zoning Ordinance, however, did not define "Sportsman's Clubs." *Id.* Additionally, although the Zoning Ordinance did not allow

commercial outdoor shooting ranges as permitted principal uses or conditional uses in IBD

Districts, it allowed them in other zones. *Id.* at ¶ 48; (ECF No. 27-1, at 10, 18, 23–24, 88).

By the time Mr. Drummond submitted his zoning permit application in March 2018, the

Township had proposed certain amendments to the Zoning Ordinance that regulated Sportsman's

Clubs. *Id.* at ¶ 40. The Township enacted the pending amendments in April 2018. *Id.* at ¶ 47.

Through the regulation of Sportsman's Clubs, the Township sought "to avoid nuisances and

provide for and protect the public health, safety and welfare for the residents within the

geographic limits of the Township." (ECF No. 27-3, at 1). Accordingly, the amendments made

three changes to the Zoning Ordinance, two of which are relevant here. First, the Township

amended Section 601 to include a definition for "Sportsman's Club." (ECF No. 1, at ¶ 47).

Under the new definition, a "Sportsman's Club" is "[a] nonprofit entity formed for conservation

of wildlife or game, and to provide members with opportunities for hunting, fishing or shooting."

*Id.* Second, the Township amended Section 311 to include paragraph (D), which limits outdoor

shooting activities at Sportsman's Clubs "to pistol range, skeet shoot, trap and skeet, and rim-fire

rifles." *Id.* at ¶ 47. According to the Complaint, Section 311(D) created a prohibition on center-

fire rifles at Sportsman's Clubs, which "has significantly frustrated if not effectively barred the

use of the . . . property as a gun club or shooting range." *Id.* at ¶ 51. In short, Plaintiffs allege

that there is no mechanism under the Zoning Ordinance "by which anyone might be allowed to

operate a for-profit gun club or shooting range within an IBD district, or shoot center-fire rifles

at a 'Sportsman's Club.'" *Id.* at ¶ 49. The Township, consequently, rejected Mr. Drummond's

zoning permit application. *Id.* at ¶ 53.

Plaintiffs filed the present suit, in part, to challenge the constitutionality of Sections

311(D) and 601. In Counts I and II of the Complaint, Plaintiffs contend that Sections 601 and

311(D), respectively, deprive Plaintiffs of their Second Amendment right to keep and bear arms. *Id.* at ¶¶ 61, 65. Plaintiffs also ask the Court to preliminarily enjoin the Township from enforcing Sections 311(D) and 601. (ECF No. 17). The Township seeks dismissal of Counts I and II for failure to state a claim and objects to Plaintiffs' Motion for Preliminary Injunction. (ECF Nos. 26, 28).

## II. Standard of review

Rule 12(b)(6) allows a party to seek dismissal of a complaint against it on the ground that the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss a complaint under Rule 12(b)(6), a court must first "accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (internal quotations omitted). The court then must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* A complaint is sufficient only when it is facially plausible, meaning that the court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To be plausible on its face, the complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements." *Id.* The court need not "accept unsupported conclusions and unwarranted inferences." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013).

## III. Discussion

Plaintiffs bring two claims under 42 U.S.C. § 1983, alleging that Sections 601 and 311(D) of the Township's Zoning Ordinance, each on its face, violate the Second Amendment.

Section 1983 provides that a state actor who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. A plaintiff bringing a claim under § 1983 therefore must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). When a plaintiff alleges that the deprivation he suffers results from the existence of a particular statute—that is, the plaintiff alleges that the statute is unconstitutional on its face—the plaintiff "'must establish that no set of circumstances exists under which the [statute] would be valid.'" *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). This, of course, is a difficult standard for a plaintiff to meet. *Id.*

The Second Amendment to the United States Constitution protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. To evaluate whether a deprivation of a Second Amendment right has occurred, courts use a two-pronged approach. *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010) (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)). First, courts are to "ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *Id.* If the law does not impose a burden on conduct that falls within the Second Amendment's scope, then the inquiry is over. *Id.* If the challenged law does burden such conduct, courts are to move on to the second prong, under which they are to "evaluate the law under some form of means-end scrutiny." *Id.*

Regarding step one, the Court is tasked with determining whether Sections 311(D) and 601 of the Township's Zoning Ordinance regulate conduct within the scope of the Second Amendment's protection. Specifically, the Court must determine whether the right to bear arms

protects (1) the ability to shoot center-fire rifles at a gun range and (2) the operation of a for-profit gun range, which includes firearm and ammunition retail sales. To answer these questions, a textual and historical analysis is required. *Id.* at 89–93. Through such an analysis, the Supreme Court found that the core right protected by the Second Amendment is the right of "law-abiding citizens to 'use arms in defense of hearth and home.'" *Id.* at 89 (quoting *Heller*, 554 U.S. at 635). Courts have also recognized rights that, though they are ancillary to the core right, are within the ambit of Second Amendment protection. Relevant here, the Seventh Circuit found that "the right to maintain proficiency in firearm use [is] an important corollary to the meaningful exercise of the core right to possess firearms for self-defense." *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011). Similarly, the Ninth Circuit held that the ability to buy and sell firearms and ammunition is conduct that falls within the scope of the Second Amendment's protection. *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) ("[T]he core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms."); *Jackson v. City & County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) ("[T]he right to possess firearms for protection implies a corresponding right to obtain the bullets necessary to use them." (internal quotations omitted)).

By limiting outdoor shooting activities at Sportsman's Clubs to "pistol range, skeet shoot, trap and skeet, and rim-fire rifles," and thus prohibiting center-fire rifles, Section 311(D) burdens a person's ability to maintain proficiency in the use of center-fire rifles. Likewise, Section 601's prohibition on commercial activities at Sportsman's Clubs regulates, in part, where firearms and ammunition may be bought and sold. Accordingly, both Sections 311(D) and 601 burden conduct that, though ancillary to the core Second Amendment right to bear arms, is nonetheless within the scope of the Second Amendment's protection.

Turning to step two, the Court must evaluate Sections 311(D) and 601 under some form of means-end scrutiny. Although the Supreme Court has stated that some form of heightened scrutiny is required, the Court has not resolved whether or when strict scrutiny or intermediate scrutiny applies to Second Amendment claims. *Heller*, 554 U.S. at 628 n.27. Courts have thus looked to First Amendment jurisprudence for guidance. *Marzzarella*, 614 F.3d at 89 n.4 (explaining that "the First Amendment is the natural choice" for guiding evaluations of Second Amendment challenges, and noting that "*Heller* itself repeatedly invokes the First Amendment in establishing principles governing the Second Amendment"). The First Amendment's test for time, place, and manner regulations on speech is pertinent here, in that it may be applied to time, place, and manner regulations on the exercise of Second Amendment conduct. *Id.* at 97. Under the First Amendment test, courts apply intermediate scrutiny, meaning that the government's objective in enacting the regulation must be important and that "the fit between the challenged regulation and the asserted objective [must] be reasonable." *Id.* at 98. The reasonableness of a content-neutral time, place, or manner regulation of speech depends on whether the regulation "leave[s] open ample alternative channels for communication of the information." *McCullen v. Coakley*, 573 U.S. 464, 477 (internal quotations omitted). A restriction on speech "may be invalid if the remaining modes of communication are inadequate," but, importantly, "the First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 812 (1984).

In the seminal Supreme Court case, *Renton v. Playtime Theatres*, the plaintiffs challenged a zoning ordinance that restricted the location of, but did not altogether ban, adult movie theaters. *Renton v. Playtime Theatres*, 475 U.S. 41, 43, 46 (1986). The Court held that the defendant-

city's interest in "preserv[ing] the quality of urban life" by "preventing the secondary effects caused by the presence of even one such theater in a given neighborhood" was "both important and substantial." *Id.* at 50 (internal quotations omitted). The Court also found that the ordinance allowed for reasonable alternative avenues, because the ordinance left more than five percent of the entire land area of the city open to use as an adult theater. *Id.* at 53. The Court thus held that the zoning ordinance did not violate the First Amendment's protection of free speech. *Id.* at 54.

Using this First Amendment framework as guidance, the test in the Second Amendment time, place, or manner context is whether the challenged regulation reasonably fits with an important governmental interest and leaves open ample alternative channels to exercise the right at issue. And, like the First Amendment, the Second Amendment does not guarantee the right to exercise every conceivable aspect of bearing arms at all times and in all places. *Heller*, 554 U.S. at 626 ("Like most rights, the right secured by the Second Amendment is not unlimited.").

Because Section 311(d) limits the types of outdoor shooting activities that may occur at Sportsman's Clubs, it thus regulates the manner in which persons may maintain proficiency in firearm use in IBD Districts. Likewise, Section 601 regulates the place where commercial gun sales and other for-profit commercial gun range activity may occur by limiting Sportsman's Clubs to nonprofit activities. These sections of the Zoning Ordinance are time, place, or manner regulations of ancillary Second Amendment conduct. The Township's stated objective for these regulations—nuisance prevention and protecting the public health, safety and welfare of its residents—is an important one, much like the defendant-city's interest in preventing the secondary effects of adult theaters in *Renton*.

The issue, then, is whether the fit between these regulations and the Township's objective is reasonable and whether ample alternatives channels exist for commercial gun range activity

and for maintaining proficiency with center-fire rifles.  First, as this Court explained in its previous Opinion, the commercial nature of an activity is often used as a proxy for intensity of that activity; the greater the intensity, the higher the likelihood that surrounding properties will be affected.  *Drummond*, 361 F. Supp. 3d at 488 n.3.  Additionally, limiting the type of firearm and type of shooting activity at Sportsman's Club likewise relates to land use intensity. Regulations addressing intensity of land use relate directly to, and thus reasonably fit with, nuisance prevention and protecting the public health, safety and welfare of its residents.

Next, as to available alternative channels, Plaintiffs contend that there are no means under the Zoning Ordinance "by which anyone might be allowed to operate a for-profit gun club or shooting range within an IBD district, or shoot center-fire rifles at a 'Sportsman's Club.'" (ECF No. 1, at ¶ 49).  However, Plaintiffs frame the issue too narrowly.  The issue is not whether the zoning scheme provides ample alternative channels within IBD Districts or Sportsman's Clubs.  Rather, the issue is whether the zoning scheme provides ample alternative channels for commercial gun range activity and for shooting center-fire rifles within the Township as a whole. Plaintiffs do not plead any facts that show a lack of commercial gun ranges or gun ranges where center-fire rifles may be fired within the Township.  In fact, commercial outdoor shooting ranges are allowed in other zones, (ECF No. 1, at ¶ 48; ECF No. 27-1), indicating that there are alternative channels within the Township through which the Second Amendment conduct at issue here can occur.  Plaintiffs thus fail to meet the burden required in facial challenges, as they fail to establish that no set of circumstances exists under which these Zoning Ordinance provisions would be valid.  Therefore, Plaintiffs' facial challenges in Counts I and II, which seek invalidation of Sections 601 and 311(D), respectively, must be dismissed for failure to state a claim.

**IV. Conclusion**

THEREFORE, based on the foregoing, Defendants' Motion to Dismiss is GRANTED and Plaintiffs' Complaint is hereby DISMISSED.  As a result, Plaintiffs' Motion for Preliminary Injunction is DENIED as moot.

DATE _March 16, 2020_                         _Marilyn J. Horan_
                                              Marilyn J. Horan
                                              United States District Judge