IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM DRUMMOND, GPGC LLC, and SECOND AMENDMENT FOUNDATION, INC., | ) ) ) ) | 2:18-cv-1127 |
| Plaintiffs, | ) ) | |
| | ) | Judge Marilyn J. Horan |
| v. | ) ) | |
| ROBINSON TOWNSHIP and MARK DORSEY, *Robinson Township Zoning Officer, in his official and individual capacities*, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**PRELIMINARY INJUNCTION ORDER**

In August 2018, Plaintiffs William Drummond, GPGC LLC, and the Second Amendment

Foundation, Inc., filed suit against Defendants Robinson Township and Zoning Officer Mark

Dorsey.  (ECF No. 1).  In their Complaint, Plaintiffs sought relief, pursuant to 42 U.S.C. § 1983,

for alleged facial and as-applied violations of the Second Amendment right to bear arms, as well

as various facial and as-applied violations of the Fourteenth Amendment's Equal Protection, Due

Process, and Privileges or Immunities clauses.  On September 21, 2018, Plaintiffs filed a Motion

for a Preliminary Injunction against the Defendants, seeking to enjoin enforcement of the

challenged Zoning Ordinance that they allege is unconstitutional.  (ECF No. 17).  Defendants

moved to dismiss the Complaint.  (ECF No. 26).  In January 2019, this Court granted the Motion

to Dismiss and denied the Motion for Preliminary Injunction as moot.  (ECF No. 36).  Plaintiffs

appealed.  (ECF No. 38).  The Third Circuit Court of Appeals vacated and remanded this Court's

Order with respect to Plaintiffs' facial Second Amendment claims only.  (ECF Nos. 41 & 42);

*Drummond v. Twp. of Robinson*, 784 Fed. App'x 82 (3d Cir. 2019) (*Drummond I*).

1

Upon remand, on March 16, 2020, this Court granted the Defendants' Motion to Dismiss and denied the Motion for Preliminary Injunction as moot.  (ECF No. 43).  Plaintiffs again appealed.  (ECF No. 44).  The Third Circuit vacated the dismissal of Plaintiffs' facial Second Amendment claims and remanded for this Court to promptly address Defendants' Motion for Preliminary Injunction.  (ECF No. 47); *Drummond v. Twp. of Robinson*, 9 F.4th 217 (3d Cir. 2021) (*Drummond II*).  Following the status conferences, all parties agreed that the Motion for Preliminary Injunction is now ripe for decision.

Following consideration of Plaintiffs' Complaint (ECF No. 1), Plaintiffs' Motion for Preliminary Injunction and the accompanying briefs and filings (ECF Nos. 17, 19, 20, 29, 30, 32), Defendants' Motion to Dismiss and the accompanying briefs and exhibits (ECF Nos. 26, 27, 31, 35), and the two Opinions of the Third Circuit (ECF Nos. 41, 42, 47), the Preliminary Injunction will be granted.

## FACTUAL FINDINGS

1.      The subject property ("Property"), known largely as the "Greater Pittsburgh Gun Club" (GPGC), operated as a commercial gun club, with certain gaps in operation, from the mid-1960's until January 2018.  The Property consists of approximately 265 acres situated in Robinson Township, Washington County, Pennsylvania.  (ECF No. 1, ¶¶ 11, 29, 32).

2.      Historically, GPGC operated as a commercial gun club and shooting range.  It consisted of a clubhouse and restaurant, as well as the living quarters of its manager and the manager's family, four trap ranges, three skeet ranges, a 26-yard pistol range, a 100-yard rifle-sighting range, and a 400-yard rifle range.  It sold memberships, range time, firearms, ammunition, targets, food and beverage, and provided firearm training and safety courses to the public.  The GPGC had as many as 800 members at any one time but did not require a

membership to shoot on its property.  Patrons who did not own their firearms, or who wished to try out different firearms, could rent firearms at the range.  In addition to members and civilian patrons, police and military personnel used the range for training.  At its range, GPGC allowed the use of pistols, shotguns, and center-fire rifles up to .50 caliber.  (ECF No. 1, ¶¶ 14, 15, 16).

3.      On December 17, 2017, William Drummond entered into a lease with his uncle, Joseph Donald Freund, Jr., for the 265-acre parcel located at 920 King Road in Robinson Township "for purposes of operating a gun club, the retail sale of firearms, and operating a shooting range."  (ECF No. 1, ¶ 30).

4.      Mr. Drummond planned for the gun range to be managed by GPGC and to sell memberships, range time, firearms, ammunition, targets, food and beverage, and to offer firearm training and safety courses to the public.  (ECF No. 1, ¶ 31).

5.      Mr. Drummond intended for the gun range to permit patrons "to shoot ordinary firearms of the kind in common use for traditional lawful purposes, including pistols, shotguns, and center-fire rifles up to .50 caliber."  (ECF No. 1, ¶ 31).

6.      At all times material hereto, the property was zoned as an Interchange Business Development (IBD) district.

7.      Prior to April 9, 2018, Robinson Township Zoning Ordinance specified that "Sportsman's Clubs" were a permitted use within IBD districts, but the Ordinance did not define a "Sportsman's Club."  (ECF No. 1, ¶ 12).

8.      On February 19, 2018, the Township Board of Supervisors approved Resolution 08-2018, which authorized the Board to begin the process to amend the Zoning Ordinance, as it related to Sportsman's Clubs.  (ECF No. 27-2, at 1-2).

8.      On March 15, 2018, Mr. Drummond submitted an Application for Zoning Permit, representing to the Township that he intended to operate a Sportsman's Club on the premises. (ECF No. 1, ⁋ 40).

9.      On April 9, 2018, the Board of Supervisors enacted Ordinance 01-2018, to amend the Township's Zoning Ordinance in three respects:

a.      A definition of "Sportsman's Club" was added to Section 601 of the Zoning Ordinance, which provided that a "Sportsman's Club" is "[a] nonprofit entity formed for conservation of wildlife or game, and to provide members with opportunities for hunting, fishing, or shooting."

b.      Paragraph D was added to Section 311 of the Zoning Ordinance, regulating "Sportsman's Clubs," which provided that "[o]utdoor shooting activities shall be limited to pistol range, skeet shoot, trap and skeet, and rim-fire rifles;" and

c.      "Section 208, Table 208(A) IBD Interchange Business Development District Table of Allowed Uses shall be amended to reflect the zoning change set forth herein.  Specifically, a Sportsman's Club shall no longer be allowed as a Permitted Use in an IBD Interchange Business Development District, and shall instead only be allowed as a Conditional Use in an IBD Interchange Business Development District."

(ECF No. 1, ⁋ 47).

10.     The Township Board of Supervisors' stated purpose for the amendment was "to avoid nuisances and provide for and protect the public health, safety and welfare for the residents within the geographic limits of the Township."  (ECF No. 27-3, at 1).

4

11.     On April 13, 2018, Mr. Drummond received notice that his Application for

Zoning Permit had been denied, as his application did not indicate that the GPGC was organized

as a not-for profit entity.  (ECF No. 1, P 53).

12.     Mr. Drummond did not appeal this decision to the Township Board of

Supervisors.  (ECF No. 30, at 4).

13.     Aside from its filings in the case, the Township did not offer any evidence in

response to the Motion for Preliminary Injunction.

## CONCLUSIONS OF LAW

1.     In determining whether to grant a preliminary injunction, a court must consider

whether the party seeking the injunction has satisfied four factors: "1) a likelihood of success on

the merits; 2) he or she will suffer irreparable harm if the injunction is denied; 3) granting relief

will not result in even greater harm to the nonmoving party; and 4) the public interest favors such

relief." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010) (quoting *Miller

v. Mitchell*, 598 F.3d 139, 145 (3d Cir. 2010)); *see also* Fed. R. Civ. P. 65.

2.     The Second Amendment to the United States Constitution protects "the right of

the people to keep and bear Arms."  U.S. Const. amend. II.

3.     To evaluate whether a deprivation of a Second Amendment right has occurred,

Third Circuit courts apply a two-pronged approach.  *United States v. Marzzarella*, 614 F.3d 85,

89 (3d Cir. 2010) (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)).  First, the courts

"ask whether the challenged law imposes a burden on conduct falling within the scope of the

Second Amendment's guarantee."  *Id.*  If the law does not impose a burden on such conduct,

then the inquiry is over.  *Id.*  If the challenged law burdens conduct that falls within the Second

Amendment's guarantee, courts move to the second prong of the analysis, under which they are

to "evaluate the law under some forms of means-end scrutiny." *Id.*

4.      The right to bear arms "implies something more than mere keeping; it implies the

learning to handle and use them; . . . it implies the right to meet for voluntary discipline in arms."

*District of Columbia v. Heller*, 554 U.S. 570, 617-18 (2008).

5.      Under step one of the *Marzzarella* framework, the Court must first analyze

whether the challenged ordinance burdens a right protected by the Second Amendment's

guarantee.  Sections 311(D), 601, and 208, Table 208A implicate the right of GPGC's customers

to acquire firearms and maintain proficiency in their use.  Therefore, Plaintiffs' facial

constitutional challenge satisfies the first step of the *Marzzarella* framework.

6.      As regards the appropriate means-ends scrutiny, when a law limits one's ability to

defend oneself at home by banning "arms in common use" at the time of the founding, such law

triggers strict scrutiny.  *Drummond II*, 9 F.4th at 229 (citing *Heller*, 554 U.S. at 625, 628).  When

a law limits other uses of firearms, or defense that takes places in public, the law triggers

intermediate scrutiny.  *Id.* (citing *Drake v. Filko*, 724 F.3d 426, 436 (3d Cir. 2013)).  Generally,

most purchase and practice restrictions trigger intermediate scrutiny.  *Id.* at 229.

7.      Although the courts owe "substantial deference" to local zoning decisions,

restrictions on rights guaranteed by the Second Amendment rights must still satisfy intermediate

scrutiny.  *Id.* at 231 (internal quotation marks and citation marks omitted).

8.      It is the government's burden to prove that the challenged regulation satisfies

intermediate scrutiny.  *Id.*

9.      Although Sections 311(D), 601, and 208, Table 208A do not burden the core

Second Amendment conduct of the right to bear arms in the home, they still infringe upon the

GPGC's customers' ancillary Second Amendment rights to acquire firearms and maintain proficiency in their use, such regulations trigger intermediate scrutiny.

10.     "To survive intermediate scrutiny, a law must clear two hurdles.  First, it must serve a 'significant, substantial, or important' government interest.'  *Marzzarella*, 614 F.3d at 98 (internal quotation marks and citation marks omitted).  Second, 'the fit between the asserted interest and the challenged law must be 'reasonable' and 'may not burden more conduct than is reasonably necessary.'  *Drake*, 724 F.3d at 436 (internal quotation marks, citation, and brackets omitted)."  *Drummond II*, 9 F.4th at 230-31 (footnote omitted).

11.     Although the health, safety, and welfare are substantial government interests, the Township must provide some evidence of how the amendments to the Zoning Ordinance serve those substantial government interests.  The government must "persuade us that 'the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way.'"  *Id.* at 232 (citing *Phillips v. Borough of Keyport*, 107 F.3d 164, 174-75 (3d Cir. 1997)).

12.     At this stage and for purposes of the Motion for Preliminary Injunction, the Township has not provided evidence that the challenged Ordinance provisions, Sections 311(D), 601, and 208, Table 208A, in fact serve the asserted government interests of health, safety, and welfare.  *See id.* at 231-32.

13.     Turning to the fit element of the intermediate scrutiny test, the government must demonstrate that alternative measures that burden substantially less protected activity, here the Second Amendment, would fail to achieve its interests, here health, safety, and welfare.  *Id.* at 231.  Additionally, the Township must show that it seriously considered more target tools for achieving its ends.  *See id.* at 232.

14.     At this stage, and for purposes of the Motion for Preliminary Injunction, the Township has not provided evidence to establish a fit between the Ordinance provisions, Sections 311(D), 601, and 208, Table 208A, and the substantial government interest of health, safety, and welfare, and the Township does not explain why it eschewed more targeted alternatives. *See id.* at 233.

15.     Based upon the present record before the Court, the Plaintiffs have sufficiently established a likelihood of success on the merits that the three challenged Ordinance provisions facially violate the Second Amendment.

16.     Based upon the present record before the Court, implementation of the challenged provisions of the Ordinance will irreparably harm the exercise of Plaintiff GPGC's customers' Second Amendment rights.

17.     Based upon the present record before the Court, granting the preliminary injunction will not result in greater harm to the nonmoving party.

18.     Based upon the present record before the Court, the public interest in securing their Second Amendment rights weighs in favor of granting the preliminary injunction.

## **ORDER**

Based on the foregoing findings of fact and conclusions of law, Plaintiffs' Preliminary Injunction is hereby GRANTED as follows:

Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction are enjoined from enforcing Robinson Township Zoning Ordinance Sections 311(D), 601, and 208, Table 208(A).

It is further ordered that Plaintiffs shall place security (corporate surety bond, cash, certified check, or attorney's check) in the amount of $500.00 (five hundred dollars) with the

Court, which amount is determined adequate for the payment of any damages any person may be entitled to recover as a result of an improper or wrongful restraint ordered.  If the security posted is cash, certified check, or attorney's check, the funds will be deposited in the Court's local Registry, where it will remain until further order by the Court.

DATE: __October 13, 2021__

Marilyn J. Horan
United States District Judge