Exhibit A

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM DRUMMOND, et al.,   )
                                   )
       Plaintiffs,          )
                                   )
v.                             )   Civil Action No. 2:18-cv-1127-MJH
                                   )
ROBINSON TOWNSHIP,   )
et al.,                           )
                                   )
       Defendants.       )
                                   )

## <u>CONSENT ORDER</u>

**WHEREAS**, on August 24, 2018, the Plaintiffs, William Drummond, GPGC LLC, and the Second Amendment Foundation, Inc. filed this action pursuant to 42 U.S.C. § 1983 alleging violations of their rights under the Second and Fourteenth Amendments to the United States Constitution, resulting from Robinson Township zoning ordinances restricting the operation of "Sportsman's Clubs" to non-profit entities and limiting outdoor shooting activities to pistol range, skeet shoot, trap and skeet, and rimfire rifles on the premises;

**WHEREAS**, Plaintiffs alleged that the continued enforcement of these restrictions prevented the operation of a for-profit Sportsman's Club on the parcel of land located at 920 King Road ("the Property") (Doc. 1);

**WHEREAS**, on September 21, 2018, the Plaintiffs also filed a Motion for Preliminary Injunction seeking to enjoin enforcement of the "non-profit ownership" and "rimfire" rules (Doc. 17);

**WHEREAS**, on August 17, 2021, following the Court's dismissal of the case and denial of the preliminary injunction motion as moot, the Third Circuit entered judgment vacating the

1

Court's order and reinstating Plaintiffs' claims because Plaintiffs had plausibly alleged Second Amendment violations, *see generally Drummond v. Robinson Twp.*, 9 F.4th 217 (3d Cir. 2021);

      **WHEREAS**, on October 13, 2021, following remand from the Third Circuit, and prior to the Township filing any answer or defense to the case, the Court entered a preliminary injunction granting Plaintiffs' preliminary relief, which resulted in the Township approving a provisional permit ("Provisional Permit") to operate a Sportsman's Club ("the Gun Club") on the Property without reference to the "non-profit ownership" or "rimfire" rules (Doc. 55);

      **WHEREAS,** the Township subsequently filed an Answer and Affirmative Defenses on November 3, 2021 (Doc. 64); and

      **WHEREAS**, the parties have reached an agreement to resolve this case through settlement, to avoid the further expense, disruption and uncertainty of litigation, and request the following consent order be entered.

      It is, on this ___ day of _____ 2022 hereby **ORDERED, ADJUDGED** and **DECREED** as follows:

1. This Consent Order is based on a negotiated settlement between the parties and is not to be construed as an admission of wrongdoing, liability, or noncompliance with any federal, state, or local rule, ordinance, statute, common law, or other legal obligation by any party.

2. Within 14 days of the entry of this Consent Order, Defendants, through its liability insurer, shall pay to Plaintiffs $165,000 to resolve all economic claims at issue in this case, including any claim for damages, attorney's fees, or costs.

3. Defendants shall permit the Gun Club to operate as a for-profit entity and are enjoined from enforcing against Plaintiffs Section 601 of the Robinson Township Zoning

Ordinance (attached as Exhibit 1) to the extent it defines a Sportsmen's Club as "a non-profit entity."

4.  Defendants shall permit the Gun Club to allow for the use of centerfire rifles and rifles up to .50 caliber and are enjoined from enforcing against Plaintiffs (a) Section 310(D) of the Robinson Township Zoning Ordinance and (b) the last sentence of the definition of a Sportsmen's Club in Section 601 of the Robinson Township Zoning Ordinance.

5.  Within 14 days of the entry of this Consent Order, Defendants are enjoined to issue pursuant to this Order a conditional use permit to Plaintiffs Drummond and GPGC, LLC ("Operator Plaintiffs") to operate the Gun Club on the Property in a manner consistent with the materials submitted with the application for the Provisional Permit without requiring Plaintiffs to appear before the Township or at a public hearing. Until the conditional use permit is granted, Defendants are enjoined to allow Operator Plaintiffs to operate the Gun Club under the Provisional Permit.

6.  The conditions on Operator Plaintiffs' permit shall be limited to those currently listed in Section 310(A)–(C) of the Robinson Township Zoning Ordinance. Operator Plaintiffs agree to operate the Gun Club in accordance with those conditions, and the parties agree that Operator Plaintiffs are in compliance with these conditions at this time. Those conditions are as follows:

    a.  Shall present a plan for any proposed serving of alcohol on club grounds with evidence of compliance with Liquor Control Board rules and ensuring that hours of operation do not concur with shooting events.

    b.  Shall be located on a lot of no less than forty (40) acres.

    c.   Shall illustrate that the design and direction of all firing lanes and [sic] shall not present a danger to public health and safety. The developer shall show adherence to best design practices, such as the National Rifle Association's NRA Range Source Book to ensure safety. Other intensive uses shall present a plan to minimize any noise created by activities through buffering, acoustic engineering or topography.

7. Operator Plaintiffs shall be entitled to operate pursuant to the conditional use permit so long as:

    a.   Operator Plaintiffs are in compliance with the conditions on their permit;

    b.   Operator Plaintiffs are in compliance with any ATF guidelines, protocols, or inspections that are applicable to the Gun Club; and

    c.   Operator Plaintiffs are in compliance with all generally applicable Township Ordinances consistent with the terms of this Order. Except as otherwise set forth in this Order, the Robinson Township zoning ordinance applies to this use just as it applies to every other use in the Township. All other applicable local, state, and federal laws apply to this use.

8. Plaintiffs have sent to Defendants documentation that had previously been prepared and provided to Robinson Township relating to the proposed operation and safety of the Gun Club.

9. This Consent Order shall inure to the benefit of any successor or assign of Plaintiffs

10. The parties represent that they have authority to consent to this Order and have taken all actions necessary to exercise that authority.

11. This Consent Order shall bind the parties and their respective officers, agents, servants, and employees.

12. The entry of this Consent Order resolves all claims and causes of action in this litigation.

13. This Consent Order is effective immediately and will remain in full force and effect until and unless the Court terminates it after a showing of good cause by either party.

14. The Court retains jurisdiction over any proceedings seeking to enforce the terms of this Consent Order.


 

_____
Honorable Marilyn J. Horan
U.S. District Judge

Exhibit 1

**TOWNSHIP OF ROBINSON, WASHINGTON COUNTY**

**ORDINANCE NO. 3-2019**

**AN ORDINANCE OF THE TOWNSHIP OF ROBINSON, WASHINGTON COUNTY, PENNSYLVANIA, AMENDING CHAPTER 27 OF THE ROBINSON TOWNSHIP CODE BY AMENDING THE ROBINSON TOWNSHIP ZONING ORDINANCE AND TO PROVIDE FOR A REZONING OF CERTAIN PARCELS IN THE TOWNSHIP, INCLUDING A ZONING MAP CHANGE**

**WHEREAS**, the Board of Supervisors (the "**Board**") of Robinson Township, Washington County, Pennsylvania (the "**Township**") has the power to protect the health, safety, and welfare of people and property within the Township; and

**WHEREAS**, the Municipalities Planning Code, 53 P.S. §10101 *et seq*., authorizes the Board to regulate zoning and land use in the Township; and

**WHEREAS**, the Board wishes to amend the Robinson Township Zoning Ordinance; and

**WHEREAS**, the Board of Supervisors has properly advertised and held a public hearing on July 8, 2019 on the proposed amendment and zoning map change.

**NOW THEREFORE,** BE IT ORDAINED AND ENACTED by the Board of Supervisors of Robinson Township, Washington County, Pennsylvania, that:

**Section 1.**   The Robinson Township Zoning Ordinance is hereby amended as provided in "Exhibit A" attached hereto.

**Section 2.**   Severability. The provisions of this Ordinance are declared to be severable, and if any provision of this Ordinance shall for any reason be held to be invalid, such invalidity shall not affect the Ordinance as a whole or any other part or part thereof.

**Section 3.**   Repealer. Any and all Ordinances and/or Resolutions, or parts thereof, conflicted herewith are repealed insofar as the matters herein are affected.

**Section 4.**   Effective Date. This Ordinance shall become effective five (5) days after enactment.

1

**ORDAINED AND ENACTED** this 8th day of July, 2019.

ATTEST:                                    TOWNSHIP OF ROBINSON,
                                           WASHINGTON COUNTY,
                                           BOARD OF SUPERVISORS


_____            _____
                                           Rodger Kendall, Chair


                                           _____
                                           Mary Donaldson, Vice-Chair


                                           _____
                                           David Foley, Supervisor

2

**EXHIBIT A**

**AMENDMENTS TO THE ROBINSON TOWNSHIP ZONING ORDINANCE**

# Robinson Township Zoning Ordinance

## ARTICLE 1 GENERAL PROVISIONS

Section 100 Title, Authority and Purpose

Section 101 Community Development Goals and Objectives

Section 102 Defined Words

Section 103 Compliance

Section 104 Severability

Section 105 Interpretation

Section 106 Repealer

Section 107 Establishment of Zoning Districts

Section 108 Establishment of Zoning Map

Section 109 Interpretation of District Boundaries

Section 110 Application of Regulations, Including Government Agencies

Section 111 Compliance with Official Map Ordinance

Section 112 Fees

## ARTICLE 2 ESTABLISHMENT OF ZONING DISTRICTS

Section 200 Purpose

Section 201 Establishment of Districts

Section 202 Special Conservation (SC) District

Section 203 Agricultural (A) District

Section 204 R-1A Rural Residential (R1A) District

Section 205 R-1B Single Family Residential District

Section 206 R-2 General Residential District

Section 207 Commercial (C) District

Section 208 Light Industrial (LI) District

4

Section 209 Industrial (I) District

ARTICLE 3 SUPPLEMENTAL REGULATIONS

Section 300 Criteria, Process and Performance Standards

Section 301 Cemeteries

Section 302 Private Clubs

Section 303 Commercial Recreation

Section 304 Recreational Campgrounds

Section 305 Sawmills

Section 306 Communications Towers

Section 307 Farm and Home Based Business

Section 308 Mining and Mineral Extraction

Section 309 Specialized Animal Raising and Care

Section 310 Sportsman's Clubs

Section 311 Neighborhood Business

Section 312 Public and Private Accredited Schools, Hospitals, and Nursing Homes

Section 313 Personal Care Homes and Group Care Facilities

Section 314 Agricultural Services

Section 315 Convenience Store, Gas Station, and Alternative Fuel Service Station

Section 316 Day Care Services

Section 317 Mobile Home Parks

Section 318 Multi-Family Dwellings

Section 319 Light Manufacturing, Warehousing and Truck Terminals and Wholesale Businesses

Section 320 Car Washes, Auto Sales, and Equipment Sales and Rental

Section 321 Landscaping Supply and Materials

Section 322 Contractors Garage or Storage Yard

5

Section 323 Retail Sales Building of Greater than 5,000 Feet Gross Floor Area

Section 324 Self Service Storage

Section 325 Planned Business Park

Section 326 Sexually Oriented Businesses

Section 327 Veterinary Clinic

Section 328 Bottle Clubs

Section 329 Bulk Fuel Storage Yard

Section 330 Flea Markets

Section 331 Correctional Facility/Halfway House

Section 332 Heavy Industry

Section 333 Salvage Yards and Recycling Centers

Section 334 Solid Waste Landfills

Section 335 Natural Gas Compressor Station or Natural Gas Processing Plant

Section 336 Shopping Centers and/or Multiple Commercial Buildings or Uses on a Single Lot

Section 337 Medical Marijuana Grower/Processor

Section 338 Essential Services (Wholesale or Private)

Section 339 Medical Marijuana Dispensaries

Section 340 Home Occupations

Section 341 Forestry and Timbering

Section 342 Oil and Gas Operations and Development

Section 343 Golf Courses; Golf or Country Clubs

Section 344 Kennels

Section 345 Crematoriums

<u>ARTICLE 4 ADDITIONAL REGULATIONS</u>

Section 400 Additional Standards for New Lots in the A District

6

Section 401 Non-Conforming Uses

Section 402 Application of Yard Regulations to Accessory Structures and Uses

Section 403 Temporary Structures and Uses

Section 404 Height Limitations

Section 405 Lots of Record

Section 406 Loading Areas and Parking

Section 407 Performance Standards

Section 408 Signs

Section 409 Environmental Standards, Screening and Buffering

ARTICLE 5 PLANNED RESIDENTIAL DEVELOPMENT

Section 500 Purpose

Section 501 Application of Provisions

Section 502 Ownership Requirements

Section 503 Availability of Public Services and Access

Section 504 Administration

Section 505 Development Standards

Section 506 General Requirements for Planned Residential Development

Section 507 Review Process for Approval

Section 508 Resale

Section 509 Enforcement and Agreements

Section 510 Fees – Planned Residential Development

ARTICLE 6 DEFINITIONS

Section 600 Interpretation

Section 601 Definitions

ARTICLE 7 ADMINISTRATION

Section 700 Zoning Hearing Board

Section 701 Zoning Officer

Section 702 Zoning Certificates and Sign Permits

Section 703 Violations

Section 704 Amendments

ARTICLE 1
GENERAL PROVISIONS

**Section 100 Title, Authority and Purpose**

100.1 Title:  This Ordinance shall be known and may be cited as the Robinson Township Zoning Ordinance. The accompanying district map shall be known, and may be cited as, the Robinson Township Zoning Map.

100.2 Authority:  In accordance with the authority granted to Robinson Township, Washington County, through Section 601 of the Pennsylvania Municipalities Planning Code (Act 247, as reenacted and amended), this Ordinance and map are intended to implement the Comprehensive Plan and fulfill all permissible purposes of zoning.

100.3 Purpose:  These regulations are deemed necessary in order to encourage beneficial growth and protection of private property in the Township while keeping the density of development consistent with existing Township facilities and the Township's ability to develop new facilities as needed. This Ordinance is also established to fulfill the purpose of Section 603 of the Pennsylvania Municipalities Planning Code as it relates to the Township's community development goals and objectives established in Section 101 Below.

**Section 101 Community Development Goals and Objectives**

The Community Development Goals and Objectives narrative is taken directly from the adopted Robinson Township Comprehensive Plan and are adopted herein by reference. The Township also established a graphic map which addressed the timing and character of future development within various portions of the Township which was used to establish a generally consistent zoning map.

**Section 102 Defined Words**

Rules for the interpretation of all defined words within this Ordinance are detailed in Article 6. Undefined terms shall be given their plain and customary meaning.

**Section 103 Compliance**

No structure shall be located, erected, demolished, constructed, moved, externally altered, converted or enlarged nor shall any structure or land use be used or designed to be used except in full compliance with this Ordinance and after the lawful issuance of all permits and certifications required by this Ordinance.  There shall be no fee for a demolition permit if a building is being replaced with a new structure.  All types of interior remodeling are exempt as long as there is no change to the basic structure.

9

**Section 104 Severability**

Should any section or provision of this Ordinance be declared by the courts to be unconstitutional or invalid, such decision shall not affect the validity of the Ordinance as a whole, nor the validity of any other section or provision of the Ordinance, other than the one so declared.

**Section 105 Interpretation**

    A. In the event of conflicts between the provisions of this Chapter and any other ordinance or regulation, the least restrictive provisions shall apply.

    B. In their interpretation and application, the provisions of this Chapter shall be considered minimum requirements adopted for the promotion of the health, safety and general welfare of the public.

    C. In interpreting the language of this Chapter to determine the extent of the restriction upon the use of property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the Board of Supervisors, in favor of the property owner and against any implied extension of the restriction.

**Section 106 Repealer**

Any resolution or ordinance, or any part of any resolution or ordinance, conflicting with the provisions of this Ordinance is hereby repealed to the extent of such conflict.

**Section 107 Establishment of Zoning Districts**

The districts described under Article 2 of this Ordinance, as well as all applicable standards for use, density, yards, and the approval and consideration of development are hereby established. This Ordinance shall take effect immediately upon adoption by the Board of Supervisors.

**Section 108 Establishment of Zoning Map**

A map entitled the Robinson Township Zoning Map is hereby adopted as part of this Ordinance. The Official Map shall be kept on file and available for examination at the Township Office. The Township shall use this official zoning map for interpretation. Informational zoning maps may be printed and distributed, but shall not be utilized for final interpretation of boundaries. All approved changes to zoning districts shall be promptly recorded on the zoning map by the Zoning Officer.

**Section 109 Interpretation of District Boundaries**

District boundaries that are shown between the lines of streets, streams and transportation rights-of-way shall be deemed to follow the centerline. The vacation of streets shall not affect the locations of such district boundaries. When the Zoning Officer cannot definitely determine the location of a district boundary by such centerlines, by the scale of dimensions stated on the zoning map or by the fact that it clearly coincides with a property line, he shall refuse action. The Zoning Hearing Board, upon appeal, shall interpret the location of the district boundary with reference to the scale of the zoning map and the purpose set forth in all relevant provisions of this Chapter.

10

Any territory hereafter annexed by the Township or gained through discovery, survey, or mapping error will be automatically zoned Rural Residential District until otherwise classified by the Township.

## Section 110 Application of Regulations, Including Government Agencies

Property owned, leased, or operated by the Commonwealth of Pennsylvania, the United States, or the Township, or any other public or governmental body or agency, shall be subject to the requirements of this Ordinance as follows:

110.1 Extent of Township Powers: Governmental entities and agencies shall be exempt from the provisions of this Ordinance only to the extent that the Township determines it has no power to apply its zoning regulations to the particular use of land.

110.2 Municipal Applicability: In the interest of the protection of health and safety, the Township shall be exempt from the provisions of this Ordinance in the course of municipal functions related to road maintenance and provision of infrastructure, including grading, paving, culverts, bridges, directional and safely signage, and similar structures and appurtenances, in particular any applicable setback and permitting procedures. The Township shall maintain all lot, yard, and coverage standards for any municipal building or municipally owned structure.

## Section 111 Compliance with Official Map Ordinance

Should the Township of Robinson adopt an Official Map as permitted by Article IV of the Planning Code; all development shall conform to such standards as required by the official map ordinance and the Municipalities Planning Code

## Section 112 Fees

112.1    The Township Board of Supervisors shall, from time to time, establish, by resolution, a schedule of fees, charges and expenses and a collection procedure for zoning permits, appeals and other matters pertaining to the Ordinance. The schedule of fees and related information may be posted in the Township offices, and may be amended only by official action by the Township Board of Supervisors.

112.2    No permit, certificate, application or variance shall be issued, nor shall any action be taken on proceedings before the Zoning Hearing Board unless, and until, such costs, charges, fees or expenses have been paid in full.

112.3     A Zoning Permit or Certificate shall be required for any change in the use of a building, land or structure, all new construction, additions or alterations affecting exterior dimensions of existing structures and any structural or interior changes required for a change of the structure's use.  Remodeling or improvement of an existing building which does not alter the basic structure, create additional lot coverage or change the use of the parcel or building is exempt from this specific requirement.  All Agriculture buildings and structures are exempt from zoning permits or certificates.

**Section 113 Table of AUTHORIZED USES, ZONING DISTRICTS where USE is AUTHORIZED, and Method of Authorization.**

An Authorized Use Table is included in this Ordinance as Exhibit A.  To the extent there is a discrepancy between the Authorized Use Table and the body of this Ordinance, the body of this Ordinance shall control.

ARTICLE 2
ESTABLISHMENT OF ZONING DISTRICTS

**Section 200 Purpose**

The purpose of this Article is to establish zoning districts where compatible uses of land may be located and grouped at appropriate densities to fulfill the community development goals and objectives and implement the comprehensive plan.

**Section 201 Establishment of Districts**

201.1  Not Used.

201.2  Uses not listed as Permitted Use, Conditional Use, or Special Exception in any Zoning District:

A.  Any comparable use not specifically listed in the authorized uses for a zoning district shall not be permitted in that zoning district, unless such use is authorized by the Zoning Hearing Board as a use by Special Exception.  The authority for the Zoning Hearing Board to grant approval of a use which is not specifically listed in the authorized uses for a zoning district shall be limited to the C-Commercial, LI-Light Industrial, and I-Industrial where "comparable uses not specifically listed" is included in the list of uses by special exception in the zoning district, subject to the applicable general standards, and express standards of section 300.1 – 300.2 and criteria of Section 300.

B.  Accessory uses or structures that are customarily accessory to principal structures or uses that are authorized as conditional uses or uses by special exception shall be permitted as accessory uses by right.

C.  In all five (5) zoning districts, where single-family dwellings either exist or are proposed, they shall be the only principal structure on a lot to include accessory structures.

12

D.  In all zoning districts where authorized by this Chapter, two or more non-residential buildings may occupy the same lot, and two or more authorized non-residential uses may occupy the same building, provided, in all cases, that all applicable requirements for each of the structures or use can be met on the lot.

E.  In all zoning districts, all accessory structures shall be located on the same lot with the principal structure to which they are accessory.

201.3  Zoning certificates or permits for permitted uses shall be reviewed by the Zoning Officer or Township Secretary or Township Manager for completeness.

201.4  Conditional uses may be granted or denied by the Board of Township Supervisors with advice of the Planning Commission in accordance with the express standards and criteria of this Ordinance.  Express criteria and standards for each conditional use may be found in the reference number cited under Article 3.  In granting a conditional use, the Supervisors may attach reasonable conditions as they may deem necessary to implement the purposes of this Ordinance and safeguard the neighborhood.  Uses in each category shall be according to the common meaning of the term or according to definitions set forth in Article 6.

**Section 202 Special Conservation (SC) District**

The Special Conservation (SC) District is established to ensure development recognizes the unique natural resources and scenic rural settings of the land.

**Table 202A**
**Special Conservation (SC) District Table of Allowed Uses**

| Permitted Principal Uses | Conditional Uses |
|---|---|
| Agriculture | Intensive Outdoor Commercial Recreation (See Section 303) |
| Bed and Breakfast | Recreational Campgrounds (See Section 304) |
| Place of Worship | Sawmills (See Section 305) |
| Essential Services | Private Clubs (See Section 302) |
| Forestry and Timbering (See Section 341) | Sportsman's Clubs (See Section 310) |
| Oil and Gas-Subsurface Facilities and Activities (See Section 342) | Oil and Gas-Well Site Development (See Section 342) |
| Home Occupations (See Section 340) | Essential Services (Wholesale or Private)(See Section 338) |
| One (1) Single-Family Detached Dwelling Per Lot | |
| Public Parks and Recreation | Special Exceptions |
| | Cemeteries (See Section 301) |
| Permitted Accessory Uses | Communications Towers (See Section 306) |
| Agricultural and Residential Accessory Buildings | Day Care Services (See Section 316) |
| Home Based Business (No Impact) | |

13

|  |  |
|--|--|
|  |  |
|  |  |

**Table 202B**
**Special Conservation (SC) District: Permitted Use Lot, Height, and Yard Standards**

| Use Type/Dimension | All Permitted Uses |
|---|---|
| Minimum Lot Area | 2 Acres |
| Minimum Lot Width | 200 Feet |
| Minimum Front Yard | 50 Feet |
| Minimum Side Yard | 35 Feet |
| Minimum Rear Yard | 50 Feet |
| Maximum Height | Farm structure, other than feed storage – 50 feet |
| Farm feed storage structures – 100 feet |  |
| All other principal structures 2 ½ stories, but no more than 50 feet |  |
| Maximum Coverage | 15% |

**Section 203 Agricultural (A) District**

The Agricultural (A) District is meant to promote areas of high-quality farmland.  It is also meant to maximize means for farmland owners to realize income from their property for compatible uses, and to minimize the impact of incompatible development upon agricultural security within the township.

**Table 203A**
**Agricultural (A) District Table of Allowed Uses**

| Permitted Principal Uses | Conditional Uses |
|---|---|
| Agriculture | Agricultural Services (See Section 314) |
| Bed and Breakfast | Natural Gas Compressor Station or Natural Gas Processing Plant (See Section 335) |
| Place of Worship | Oil and Gas-Impoundments (See Section 342) |
| Essential Services | Day Care Services (See Section 316) |
| Forestry and Timbering (See Section 341) | Mining and Mineral Extraction (See Section 308) |
| Home Occupations (See Section 340) | Sawmills (See Section 305) |
| Municipal Facility | Specialized Animal Raising and Care (See Section 309) |
| Public Parks and Recreation | Sportsman's Clubs (See Section 310) |
|  | Veterinary Clinic (See Section 327) |
| Oil and Gas-Well Site Development (See Section 342) | Essential Services (Wholesale or Private)(See Section 338) |
| Oil and Gas-Subsurface Activities and Facilities (See Section 342) | Special Exceptions |

14

| | |
|---|---|
| Natural Gas Metering Station | Cemeteries (See Section 301) |
| One (1) Single-Family Detached Dwelling Per Lot | |
| **Permitted Accessory Uses** | Kennels |
| Home Based Business (No Impact) | Communications Towers (See Section 306) |
| Agricultural and Residential Accessory Buildings | |
| Temporary Housing for Well Site Workers | |
| Farm and Home-Based Business (See Section 307) | |

**Table 203B**
**Agricultural (A) District: Permitted Use Lot, Height, and Yard Standards**

| **Use Type/Dimension** | **All Permitted Uses** |
|---|---|
| Minimum Lot Area | 2 Acres |
| Minimum Lot Width | 200 Feet |
| Minimum Front Yard | 50 Feet |
| Minimum Side Yard | 35 Feet |
| Minimum Rear Yard | 50 Feet |
| Maximum Height | Farm structure, other than feed storage – 50 feet |
| Farm feed storage structures – 100 feet | |
| All other principal structures 2 ½ stories, but no more than 50 feet | |
| Maximum Coverage | 20% |
| *See also Section 400 for creation of new lots | |

**Section 204 R-1A Rural Residential (R1A) District**

The R-1A Rural Residential District (R1A) is established to provide sites for low density residential use, together with agricultural activities and such public and semi-public uses and facilities as may appropriately be located in the same district.  This district is intended to provide areas for the long term low density residential growth of the Township and appropriate residential opportunities for single family dwellings and related uses in a rural setting.

**Table 204A**
**R-1A Rural Residential District Table of Allowed Uses**

| **Permitted Principal Uses** | **Conditional Uses** |
|---|---|
| Agriculture | Mobile Home Park (See Section 317) |
| Bed and Breakfast | Oil and Gas-Impoundments (See Section 342) |
| Place of Worship | Natural Gas Compressor Station or Natural Gas Processing Plant (See Section 335) |

15

| | |
|---|---|
| Forestry and Timbering (See Section 341) | Essential Services (Wholesale or Private)(See Section 338) |
| Essential Services | |
| | **Special Exception** |
| Home Occupations (See Section 340) | Planned Residential Development (See Article 5) |
| Public Park and Recreation | Private Clubs (See Section 302) |
| One (1) Single-Family Detached Dwelling Per Lot | Golf Courses (See Section 343) |
| Oil and Gas-Well Site Development (See Section 342) | Day Care Services (See Section 316) |
| Oil and Gas-Subsurface Facilities and Activity (See Section 342) | |
| Natural Gas Metering Station | |
| Municipal Facility | |
| **Permitted Accessory Uses** | |
| Home Based Business (No Impact) | |
| Agricultural and Residential Accessory Buildings | |
| Temporary Housing for Well Site Workers | |
| Farm and Home based Business (See Section 307) | |

**Table 204B**
**R-1A Rural Residential District: Permitted Use Lot, Height, and Yard Standards**

| Use Type/Dimension | Permitted Uses |
|---|---|
| Minimum Lot Area | 1.5 acres |
| Minimum Lot Width | 125 feet |
| Minimum Front Yard | 50 feet |
| Minimum Side Yard | 25 feet |
| Minimum Rear Yard | 35 feet |
| Maximum Height | Farm structure, other than feed storage 50 feet |
| Farm feed storage structures 100 feet | |
| All other principal structures 2 ½ stories, but no more than 50 feet | |
| Maximum Coverage | 15% |

**Section 205 R-1B Single Family Residential District**

The R-1B Single Family Residential (R-1B) District is established to provide for a single family dwelling and compatible uses in a more suburban setting than R-1A as road access and infrastructure is available to serve such developments.

16

**Table 205A**
**R-1B Single Family Residential District Table of Allowed Uses**

| Permitted Principal Uses | Conditional Uses |
|---|---|
| Place of Worship | Planned Residential Development (See Article 5) |
| One (1) Single Family Detached Dwelling Per Lot | Essential Services (Wholesale or Private)(See Section 338) |
| Essential Services | |
| Public Parks and Recreation | |
| Public and Private Accredited Schools and Hospitals (See Section 312) | |
| Forestry and Timbering (See Section 341) | Special Exceptions |
| Home Occupation (See Section 340) | Neighborhood Business (See Section 311) |
| Oil and Gas-Subsurface Facilities and Activity (See Section 342) | Personal Care Homes and Group Care Facilities (See Section 313) |
| Municipal Facility | Day Care Services (See Section 316) |
| Permitted Accessory Uses | |
| Home Based Business (No Impact) | Golf Courses (See Section 343) |
| Residential Accessory Buildings | |
| | |

**Table 205B**
**R-1B Single Family Residential District: Permitted Use Lot, Height, and Yard Standards**

| Use Type/Dimension | Single-Family Dwellings With Public Water and Sewer | Single-Family Dwellings Without Public Sewer and All Other Permitted Uses |
|---|---|---|
| Minimum Lot Area | 20,000 Square Feet | 40,000 Square Feet |
| Minimum Lot Width | 100 Feet | 150 Feet |
| Minimum Front Yard Depth | 50 Feet | 50 Feet |
| Minimum Side Yard Depth | 10 Feet | 20 Feet |
| Minimum Rear Yard Depth | 20 Feet | 20 Feet |
| Maximum Height of Structure | 28 Feet | 28 Feet |
| Maximum Coverage | 40% | 40% |

**Section 206 R-2 General Residential District**

The R-2 General Residential (R-2) District is established to provide for a variety of housing types and densities in the portion of the Township where road access, community facilities and services, and infrastructure are available to serve such development.

17

**Table 206A**
**R-2 General Residential District Table of Allowed Uses**

| Permitted Principal Uses | Conditional Uses |
|---|---|
| Place of Worship | Planned Residential Development (Article 5) |
| Essential Services | Mobile Home Park (See Section 317) |
| Forestry and Timbering (See Section 341) | Multi-Family Dwellings (See Section 318) |
| Home Occupations (See Section 340) | Duplex |
| Public Parks and Recreation | Townhouse Dwelling |
| Personal Care Home and Group Care Facilities (See Section 313) | Essential Services (Wholesale or Private)(See Section 338) |
| Public and Private Accredited Schools, Hospitals, and Nursing Homes (See Section 312) | Private Clubs (See Section 302) |
| Municipal Facility | |
| Oil and Gas-Subsurface Facilities and Activity (See Section 342) | |
| One (1) Single Family Detached Dwelling Per Lot | |
| Permitted Accessory Uses | |
| Home Based Business (No Impact) | Special Exceptions |
| Residential Accessory Buildings | Neighborhood Business (See Section 311) |
| | Day Care Services (See Section 316) |
| | |

**Table 206B**
**R-2 General Residential District: Permitted Use Lot, Height, and Yard Standards**

| Use Type/Dimension | Single-Family Dwellings With Public Water and Sewer | Single-Family Dwellings Without Public Sewer and All Other Permitted Uses |
|---|---|---|
| Minimum Lot Area | 20,000 Square Feet | 40,000 Square Feet |
| Minimum Lot Width | 100 Feet | 150 Feet |
| Minimum Front Yard Depth | 50 Feet | 50 Feet |
| Minimum Side Yard Width | 10 Feet | 20 Feet |
| Minimum Rear Yard Depth | 15 Feet | 15 Feet |
| Maximum Height of Structure | 28 Feet | 28 Feet |
| Multi-Family Dwelling | 40,000 Square Feet plus 2,500 Square Feet Per Dwelling | Multi-Family Dwellings are not permitted without public sewer in the R-2 District |
| Maximum Coverage | 40% | 40% |

18

**Section 207 Commercial (C) District**

The Commercial (C) District is established to provide for businesses that have lower infrastructure needs and neighborhood impacts than the LI Light Industrial District, while providing for the protection of both business and residential interests.

**Table 207A**
**C Commercial District Table of Allowed Uses**

| Permitted Principal Uses | Conditional Uses |
|---|---|
| Essential Services | Light Manufacturing, Warehousing and Truck Terminals and Wholesale Businesses (See Section 319) |
| Forestry and Timbering (See Section 341) | Car Washes, Auto Sales, Service and Repair, and Equipment Sales and Rental (See Section 320) |
| Professional Office* | Contractors Garage or Yard (See Section 322) |
| | Day Care Services (see Section 316) |
| Home Occupation (See Section 340) | Landscaping Supply and Materials (See Section 321) |
| Veterinary Clinic (See Section 327)* | Natural Gas Compressor Station or Natural Gas Processing Plant (See Section 335) |
| Funeral Homes* | Oil and Gas-Well Site Development (See Section 342) |
| Place of Worship* | Water Recycling/Hydro Recovery Facilities |
| Self Service Storage (See Section 324) | Convenience Store, Gas Station, and Alternative Fuel Service Station (See Section 315) |
| Oil and Gas-Subsurface Facilities and Activities (See Section 342) | Essential Services (Wholesale or Private)(See Section 338) |
| Natural Gas Metering Station | Medical Marijuana Dispensary (See Section 339) |
| Municipal Facility | Shopping Centers and/or Multiple Commercial Buildings or Uses on a Single Lot (See Section 336) |
| *Only a single principal use or principal building is permitted per lot. | Eating and Drinking Places* |
| | Neighborhood Business (See Section 311) |
| | Retail Sales Building of Greater than 5,000 Feet GFA (See Section 323) |
| | Taverns |
| | Multiple commercial uses on a Lot or multiple commercial structures or buildings shall be a conditional use in this district |
| Permitted Accessory Uses | Special Exception |

| Home Based Business (No Impact) | |
|---|---|
| Accessory Buildings | Commercial Recreation (See Section 303) |
| Temporary Housing for Well Site Workers | "comparable uses not specifically listed" is included in the list of uses by special exception in the zoning district, subject to the applicable general standards, and express standards of Section 300.1 – 300.2 and criteria of Section 300 |

**Table 207B**
**C Commercial District: Permitted Use Lot, Height, and Yard Standards**

| Use Type/Dimension | All Permitted Uses |
|---|---|
| Minimum Lot Area | 1/2 Acre |
| Minimum Lot Width | 125 Feet |
| Minimum Front Yard | 75 Feet |
| Minimum Side Yard | 25 Feet |
| Minimum Rear yard | 35 Feet |
| Maximum Height | 35 Feet |
| Maximum Coverage | 60% |

**Section 208  Light Industrial (LI) District**

The LI Light Industrial District is established to provide for businesses and high-impact land uses that require significant infrastructure.

**Table 208A**
**LI Light Industrial District Table of Allowed Uses**

| Permitted Principal Uses | Conditional Uses |
|---|---|
| Professional Office | Communications Towers (See Section 306) |
| Corporate Office | Essential Services (Wholesale or Private)(See Section 338) |
| Agricultural Services (See Section 314) | Billboards (See Section 408) |
| Oil and Gas-Well Site Development (See Section 342) | Oil and Gas-Impoundments (See Section 342) |
| Place of Worship | |
| Oil and Gas-Subsurface Facilities and Activities (See Section 342) | Convenience Store, Gas Station, and Alternative Fuel Service Station (Section 315) |
| Forestry and Timbering (See Section 341) | Water Recycling/Hydro Recovery Facilities |
| Essential Services | Natural Gas Compressor Station or Natural Gas Processing Plant (See Section 335) |

20

| | |
|---|---|
| Light Manufacturing, Warehousing and Truck Terminals and Wholesale Businesses (See Section 319) | Sportsman's Club (See Section 310) |
| Planned Business Park (See Section 325) | Planned Residential Development (Article 5) |
| | Shopping Centers and/or Multiple Commercial Buildings or Uses on a Single Lot (See Section 336) |
| Natural Gas Metering Station | Medical Marijuana Dispensary (See Section 339) |
| Municipal Facility | Eating and Drinking Places |
| | Hotel or Motel |
| | Private Clubs (See Section 302) |
| | Research and Laboratories |
| | Taverns |
| **Permitted Accessory Uses** | **Special Exception** |
| Accessory Daycare for Employees | |
| Accessory Buildings | Public and Private Accredited Schools, Hospitals, and Nursing Homes (See Section 312) |
| Accessory Eating and Drinking Place for a motel or hotel | Crematoriums (See Section 345) |
| Temporary Housing for Well Site Workers | "comparable uses not specifically listed" is included in the list of uses by special exception in the zoning district, subject to the applicable general standards, and express standards of Section 300.1 – 300.2 and criteria of Section 300 |

**Table 208B**
**LI Light Industrial District: Permitted Use Lot, Height, and Yard Standards**

| Use Type/Dimension | All Permitted Uses |
|---|---|
| Minimum Lot Area | 1/2 Acre |
| Minimum Lot Width | 100 Feet |
| Minimum Front Yard | 30 Feet |
| Minimum Side Yard | 20 Feet |
| Minimum Rear Yard | 20 Feet |
| Maximum Height | 45 Feet |
| Maximum Coverage | No maximum lot coverage |

## Section 209 Industrial (I) District

The Industrial (I) District is established to provide appropriate areas for forms of heavy industry, major manufacturing and similar high-intensity uses that can have a higher impact upon surrounding properties.

21

Table 209A
Industrial (I) District Table of Allowed Uses

| Permitted Principal Uses | Conditional Use |
|---|---|
| Convenience Store, Gas Station, and Alternative Fuel Service Station (See Section 315) | Research and Laboratories |
| Any LI Principal Permitted Use | Communications Towers (See Section 306) |
| Professional Offices | Bulk Fuel Storage Yard (See Section 329) |
| Public Utility Offices | Flea Market (See Section 330) |
| Oil and Gas-Subsurface Facilities and Activities (See Section 342) | Mining and Mineral Excavation (See Section 308) |
| Light Manufacturing, Warehousing and Truck Terminals and Wholesale Businesses (See Section 319) | Water Recycling/Hydro Recovery Facilities |
| Natural Gas Metering Station | Heavy Industry (See Section 332) |
| Forestry and Timbering (See Section 341) | Salvage Yards and Recycling Centers (See Section 333) |
| Combined Cycle Gas Turbine Electric Generation Using Processed Natural Gas Oil and Gas-Well Site Development (See Section 342) | Essential Services (Wholesale or Private)(See Section 338) |
| Contractors Garage or Storage Yard (See Section 322) | Natural Gas Compressor Station or Natural Gas Processing Plant (See Section 335) |
| Only a single principal use or principal building is permitted per lot. Multiple commercial uses on a lot or multiple commercial structures or buildings shall be a conditional use in this district. | Medical Marijuana Grower/Processor (See Section 337) |
| | Oil and Gas-Impoundments (See Section 342) |
| | Billboards (See Section 408) |
| Permitted Accessory Uses | Special Exception |
| Temporary Housing for Well Site Workers | Sexually Oriented Business (See Section 326) |
| Accessory Buildings" | Bottle Clubs (See Section 328) |
| | Correctional Facility/Halfway House (See Section 331) |
| | Solid Waste Landfills (See Section 334) |
| | Commercial Recreation (See Section 303) |
| | "comparable uses not specifically listed" is included in the list of uses by special exception in the zoning district, subject to the applicable general standards, and express standards of section 300.1 – 300.2 and criteria of Section 300 |

22

**Table 209B**
**Industrial (I) District: Permitted Use Lot, Height, and Yard Standards**

| Use Type/Dimension | All Permitted uses |
| --- | --- |
| Minimum Lot Area | 1/2 Acre |
| Minimum Lot Width | 150 Feet |
| Minimum Front Yard | 50 Feet |
| Minimum Side Yard | 25 Feet |
| Minimum Rear Yard | 50 Feet |
| Maximum Height | 45 Feet |
| Maximum Coverage | No maximum lot coverage |

ARTICLE 3
SUPPLEMENTAL REGULATIONS

**Section 300 Criteria, Process and Performance Standards**

300.1   Procedure for Approval

A.   Approval of Conditional Uses. The Board of Supervisors shall hear and decide requests for conditional uses; however, the Board of Supervisors shall not approve a conditional use application unless and until:

1.   A written application for conditional use approval is submitted to the Zoning Officer one week prior to the regular meeting of the Planning Commission. The application shall indicate the section of this Chapter under which conditional use approval is sought and shall state the grounds upon which it is requested. The application shall include the following:

(a)   Where warranted by the characteristics of the proposed use, the Township may require a current property plan or drawing indicating all existing and proposed structures and all proposed construction, additions or alterations on the site in sufficient detail to determine the feasibility of the proposed development and compliance with applicable requirements of this Chapter.

(b)   A written statement showing compliance with the applicable general standards and criteria of the Part for the proposed use.

(c)   The application fee required to be paid.

(d)   Evidence of property ownership or tenant with permission of landowner as required by the MPC.

2.   A written recommendation is received from the Planning Commission or 30 days has passed from the date of the Planning Commission meeting at which the application is first considered as complete and properly filed for approval.

23

3. At least one copy of the public notice shall be posted on the affected property at least seven days prior to the date that the public hearing is commenced by the Board of Supervisors.

4. A public hearing is commenced by the Board of Supervisors pursuant to the public notice and said hearing is scheduled no more than 60 days following the date of submission of a complete and properly filed application, unless the applicant has agreed, in writing, to an extension of time.

5. Each subsequent hearing before the Board of Supervisors shall be held within 45 days of the prior hearing, unless otherwise agreed by the applicant is writing or on the record.

6. The Board of Supervisors shall render a written decision within 45 days after the last public hearing. Where the application is contested or denied, the decision shall be accompanied by findings of fact and conclusions based thereon. Conclusions based on any provision of this Chapter or any other applicable rule or regulation shall contain a reference to the provision relied upon and the reasons why the conclusion is deemed appropriate in light of the facts found.

7. Where the Board of Supervisors fails to render a decision within the required 45 days or fails to commence, conduct or complete the required hearing as specified in Subsection A4 and 5 above, the decision shall be deemed to have rendered in favor of the applicant, unless the applicant has agreed in writing or on the record, to an extension of time. The Board of Supervisors shall give public notice, as defined herein, of said deemed approval within 10 days from the last day it could have met to render a decision. If the Board of Supervisors shall fail to provide such notice, the applicant may do so.  Nothing in this subsection shall prejudice the right of any party opposing the application to appeal the decision to a court of competent jurisdiction.

8. If land development approval is required for the conditional use, the application for conditional use approval and the application for approval of a land development required by the Township Subdivision and Land Development Ordinance may be processed concurrently, provided that all application requirements of both ordinances for a conditional use and a land development plan are met.

B. Expiration of Conditional Use approval. Conditional Use approval shall expire automatically, without written notice to an the applicant, if no application for a land development plan, a grading permit, a building permit or certificate of occupancy to undertake the construction or authorize the occupancy described in the application for conditional use approval is submitted within 12 months of said approval, unless the Board of Supervisors, in its sole discretion, extends conditional use approval upon written request of the applicant received prior to its expiration. The maximum extension permitted shall be one twelve-month extension.

C. Approval of uses by Special Exception.  Special Exceptions may be permitted by the Zoning Hearing Board, consistent with the provisions of the Pennsylvania Municipalities Planning Code, as amended, pursuant to standards and criteria set forth in this Chapter. The Zoning Hearing Board shall hear and decide requests for uses by special exception. The Zoning Hearing Board shall not approve an application for a use by special exception unless and until:

1. A written application for approval of a use by special exception is submitted to the Zoning Officer. The application shall indicate the section of this Chapter under which approval of the use by special exception is sought and shall state the grounds upon which it is requested. The application shall include the following:

    (a) A plan or drawing if necessary, indicating all existing and proposed structures and all proposed construction, additions or alterations on the site in sufficient detail to determine the feasibility of the proposed development  and compliance with all applicable requirements of this Chapter.

    (b) A written statement showing compliance of this part for the proposed use.

    (c) It is in general conformity with the Comprehensive Plan for Robinson Township.

    (d) Evidence of property ownership or tenant with permission of landowner as required by the MPC.

    (e) The developer shall submit drawings to the Board indicating the boundaries of the property, location of adjacent streets, the location and height of proposed buildings on the property with dimensions from property lines, access to the property and the location and number of proposed parking spaces.

2. The Board shall make findings of fact and state its reasons for granting or denying the special exception. The Board shall have the authority to require and approve specific plans.

3. Not Used.

4. At least one copy of the public notice shall be posted on the affected property at least one week prior to the public hearing.

5. A public hearing pursuant to public notice, as defined herein, is conducted by the Zoning Hearing Board within 60 days of submission of a complete and properly filed application. Said hearing shall be conducted in accordance with procedures specified by Article 7 of this Chapter.

6. If land development approval is required for the use by special exception, the application for approval of a land development required by the Township Subdivision and Land Development Ordinance shall be submitted to the

25

Township Planning Commission following approval of the use by special exception by the Zoning Hearing Board.

D. Expiration of Special Exception use approval. Special Exception use approval shall expire automatically, without written notice to an the applicant, if no application for a land development plan, a grading permit, a building permit or certificate of occupancy to undertake the construction or authorize the occupancy described in the application for conditional use approval is submitted within 12 months of said approval, unless the Board of Supervisors, in its sole discretion, extends conditional use approval upon written request of the applicant received prior to its expiration. The maximum extension permitted shall be one twelve-month extension.

300.2 Process:    Applications for Conditional Uses or Special Exceptions shall be made to the Township Office. Conditional Uses shall be granted or denied by the Board of Township Supervisors after the recommendation of the Township Planning Commission. Special Exceptions shall be granted or denied by the Zoning Hearing Board. Procedures shall follow those specified in this Ordinance and the Pennsylvania Municipalities Planning Code. The Zoning Officer shall review all applications for conditional uses or special exceptions to determine that they are complete and correct. Upon such determination, a public hearing shall be scheduled within any time limit established by the Pennsylvania Municipalities Planning Code, unless the applicant has agreed in writing to a time extension.

300.3 Overall Performance Standards for Specified Uses

In addition to the specific standards and criteria listed for each use listed, all applications for conditional uses and uses by special exception listed in each zoning district shall demonstrate compliance with all of the following general standards and criteria:

A. The use is permitted as a Conditional Use or Special Exception, as defined under the terms of this Ordinance

B. The specific criteria, if any, for the following use by Conditional Use or Special Exception as applicable, will be met.

C. The use shall not endanger the public health, safety or welfare nor deteriorate the environment as a result of being located on the property where it is proposed.

D. The use shall comply with the additional regulations Article 4 of this Chapter.

E. If the proposed use should need supplementary or additional public facilities and services such as highways, fire protection, drainage systems, refuse disposal, water supply and sewage disposal the persons or agencies responsible for the establishment of the proposed use may have to demonstrate their need to provide such.

F. Outdoor lighting, if proposed, shall be shielded and reflected away from residential properties and public streets.

26

Where the applicant meets all applicable standards both for a conditional use and relevant performance standards, including but not limited to parking, lot area, and setbacks, it will be granted. In granting a conditional use or special exception, the Board of Township Supervisors or Zoning hearing board, as applicable, may also add reasonable additional conditions and safeguards beyond the specific criteria for each conditional use. The purpose of such additional conditions and safeguards is to further mitigate negative impacts of a development upon specific sites, and make the use more compatible with the surrounding zoning district. Such reasonable additional conditions and safeguards may include, but not limited to:

A. Establishment of screening and buffering or an increase in screening and buffering normally required.

B. Limitations upon hours of operation.

C. Establishment of fencing for purposes of security, limiting vehicular access, or control of windblown trash.

D. Limits upon future subdivision of property to prevent the creation of a lot too small for the approved conditional use.

E. Changes in the location or design of access drives or parking areas to prevent traffic hazards, congestion, or the impacts of increased traffic upon local access and residential streets.

The developer will be notified in writing of any such reasonable additional conditions and safeguards imposed by the board as part of any approval.

## Section 301 Cemeteries

The purpose of cemeteries, under this Ordinance, is to provide a proper burial ground for persons.

A. Connections to existing Township streets will be no closer than fifty (50) feet to a street intersection, fifteen (15) feet to a fire hydrant, thirty (30) feet to a driveway on the same side of the street and shall avoid streets or driveways opposite proposed means of ingress and egress.

B. The cemetery shall comply with all applicable Federal, State, County and Township laws, statutes, ordinances, resolutions and regulations.

C. All new facilities shall have a size of at least one half (1/2) acre, and shall include a deeded right-of-way connecting the burial ground to a public road.

## Section 302 Private Clubs

Private clubs shall be subject to the following:

27

A. Any establishment that includes a restaurant or tavern shall be subject to the off-street parking requirements of Section 406 for the portion of the building devoted to the restaurant or tavern use, in addition to the parking required for the private club.

B. Any rental of the facility to nonmembers shall require on-site management and/or security personnel during the event.

C. Activities on the site and within the building shall comply with the noise standards specified in Section 407.B.5 of this Chapter.

D. All off-street parking that adjoins a residential zoning classification shall be screened (Type IV), as defined by Section 409.B of this Chapter.

**Section 303 Commercial Recreation**

Commercial Recreation is divided into three subtypes. See Article 6 for subtype definitions.

Outdoor uses shall:

A. Have a lot of not less than six (6) acres in size.

B. Outdoor speakers may be employed for musical performances between the hours of 7:00am to 11:00pm. Outdoor speakers may also be employed for outdoor recreation and outdoor recreation events/uses between the hours of 7:00am to 10:30pm during weekdays and 7:00am to 11:00pm on weekends.

Indoor uses shall:

A. Have no outdoor speakers, with the exception of emergency public address speakers.

B. Present evidence of compliance with Pennsylvania Department of Labor and Industry building regulations.

Intensive uses shall:

A. Maintain a lot of at least one hundred (100) acres for commercial hunting operations and fifty (50) acres for all other intensive uses.

B. No enclosure for commercial hunting shall be erected within four hundred fifty (450) feet of a residence, any agricultural building used to house livestock, a school, day care facility, or playground associated with a school. Other intensive commercial recreation uses shall add two hundred (200) feet to all required setback areas to create a buffer zone where no intensive activities may occur.

C. No intensive use shall directly about a residential district, or an existing planned residential development (as defined by this Ordinance).

D. Commercial shooting ranges illustrate that the design and direction of all firing lanes shall not present a danger to public health and safety. The developer shall show

adherence to best design practices, such as the National Rifle Association's NRA Range Source Book to ensure safety. Other intensive uses shall present a plan to minimize any noise created by activities through buffering, acoustic engineering or topography.

E.  Any outdoor lighting shall be shielded to prevent glare to neighboring properties, and meet the standards of the Robinson Township Outdoor Lighting Ordinance.

## Section 304 Recreational Campgrounds

Such uses are commercial in nature, normally seasonal but do have a high impact potential. They are also regulated by the Robinson Township Subdivision and Land Development Ordinance and must comply with all provisions of that ordinance relative to plan submittal and approval. Such uses shall:

A.  Provide evidence of compliance with Pennsylvania Department of Environmental Protection standards for water and sanitary sewer facilities and/or septic system that complies with Washington County Sewage Authority Standards.

B.  Provide evidence of approved solid waste removal.

## Section 305 Sawmills

A.  No Commercial Saw Mill on lots of less than 10 acres.

## Section 306 Communications Towers

A.  Compliance with other Regulations:

1.  If applicable, the applicant shall demonstrate that it is licensed by the Federal Communications Commission to operate a communications tower and communication antennas. If not applicable, the Township may require evidence of any exemption.

2.  All applicable standards established by the Federal Communications Commission governing human exposure to electromagnetic radiation shall be met.

3.  All applicable Federal Aviation Administration, Commonwealth Bureau of Aviation and applicable airport zoning regulations shall be met.

B.  Dimensional Requirements:

1.  Towers shall be no taller than necessary to perform their intended function. The maximum height of any communications tower shall be no more than three hundred (300) feet unless preempted by airport zoning.

29

2.  Communications towers may be located on a lot occupied by other principal structures, and may occupy a leased parcel within a lot meeting the minimum lot size requirements for the zoning district it is located within, but the minimum area devoted to the communications tower shall be at least two (2) acres.

C.  Yard and Setback Requirements

1.  The minimum dimension between the tower base and any abutting property line shall be at least the height of the tower plus ten (10) feet.

2.  No two (2) towers, existing or proposed, shall be within three thousand (3,000) feet of one another unless two (2) or more towers are placed on the same parcel or lot. The distance between any tower base and the edge of the site is at least the height of the tower closest to the edge.

3.  No Tower shall be located within five hundred (500) feet of a residential lot with an occupied residential building unless waived by resident.

4.  All support guy wire anchors and accessory buildings shall be located within a fenced area upon the site.

5.  Any communications equipment building shall comply with the required yards and height requirements of applicable zoning district for an accessory structure.

D.  Shared Use of a Tower:

1.  Before a new tower site can be approved, the developer shall demonstrate that there is no feasible existing elevated location within three thousand (3,000) feet of the proposed site, capable of supporting his/her equipment at the required height. Existing structures such as steeples, silos or water tanks may be used, as well as existing towers in lieu of a new tower. The developer shall provide letters from the owners of the elevated locations stating that they have refused the developer the use of their site.

E.  Fencing, Access, Landscaping, Lighting, and Other Standards:

1.  Pole towers will be preferred over lattice towers.

2.  A security fence at least eight (8) feet high shall surround the entire area around the base of the tower, any accessory buildings and guy anchors on the ground.

3.  Access to the site, if it does not abut a public road, shall be over an easement at least twenty (20) feet wide between road and site and shall be improved with a dust-free, all weather surface to a width of at least ten (10) feet for its entire length.

4.  Existing trees on the site shall not be removed except within the fenced area or for the access easement. An evergreen screen at least six (6) feet high shall be

planted at the base of the tower and accessory buildings to screen them from the view of nearby residences.

5. The tower and site shall not be lighted except as maybe required by the Federal Aviation Administration.

F. Tower Design and Maintenance:

1. The tower installation shall be designed by a registered Pennsylvania professional engineer, who shall supervise the construction at no cost to the Township, shall certify that the structure has been designed and constructed in accordance with the current Structural Standards for Steel Antenna Towers and Antenna Supporting Structures, published by the Electrical Industrial Association/Telecommunications Industry Association. The structure must be capable of carrying at least twice the anticipated initial load, with a safety factor for two (2), and of withstanding wind and ice loads in accordance with accepted engineering practices.

2. The developer shall provide a schedule for regular inspection and maintenance of the tower and site, and shall be responsible to mow the entire site that is not in woods or in agricultural or other active use.

G. Submission Requirements:

1. Even if a tower site is to be leased, a subdivision or land development plan shall be prepared to show the site, described by bearings and distances, within the property from which the site will be leased or sold.

2. Evidence of a lease agreement must be presented.

3. A site development plan, drawn to scale, shall also be prepared to show precisely the location of the tower on the site, fencing, support buildings on the ground, guy anchors, and access easement.

4. The subdivision plan shall be reviewed and if approved, recorded per timing provision of the Planning Code.

5. Once finalized, the applicant shall submit the name, address and emergency telephone number for the operator of the communications tower for the use of Emergency management personnel.

6. The applicant shall submit a Certificate of Insurance evidencing general liability coverage in the minimum amount of $1 million per occurrence and property damage coverage in the minimum amount of $1 million per occurrence covering the communications tower and communications antennas.

H. Ultimate Disposition:

1. The developer, or current owner, shall be responsible for the removal of the tower and the returning of the site to its original condition within one (1) calendar year after if the tower is abandoned or the equipment is no longer operational. Landscaping installed during development of the site may remain in place. Each tower owner shall inform the Township of any changes in ownership or responsibility for a tower immediately after the change occurs.

## Section 307 Farm and Home Based Business

The intent of this use is to allow for a rural business to operate in conjunction with a home or farm, but are of greater impact than home occupation. Examples may include woodworking enterprises, light repair services (such as small engine repair), and very light fabrication or assembly.

A. The owner or occupant or family member of the home must be engaged in the business

B. No structure used for the business may be larger than five thousand 5,000 square feet or gross floor area.

C. No more than twenty (20) persons, other than individuals who reside on the property, may be employed in the business.

D. Any building used for the business must minimum set back requirements for where the property is located.

## Section 308 Mining and Mineral Extraction

Mining may include the excavation of earth, sand, gravel, stone, coal or other minerals by surface or deep mining methods and removal of the excavated materials from the site when such activity is not a part of an approved site development plan. An application for conditional use must be approved prior to issuance of any land development plan, stormwater management plan, or other approval.

As part of the application for conditional use approval, the applicant shall submit a drawing showing:

A. The property on which the excavation will occur, including abutting roads, property lines and boundary on the property within which the excavating will occur, including proposed phasing of the work over the life of the project;

B. Contours at five (5) foot intervals, indicating existing contours and proposed contours at conclusion of excavation;

C. Solution to drainage from the site, showing means of carrying groundwater to a natural drainage way or to an approved stormwater system;

D. The registration seal of the engineer preparing the drawing when over five (5) acres in area.

32

E. The excavator shall comply with all applicable regulations of this Ordinance, including but not limited to site grading and drainage, landscaping and buffering, and environmental standards.

F. No landfill or dumps for garbage or other refuse or commercial or industrial by-products shall be permitted, except land application as permitted by the Pennsylvania Department of Environmental Protection.

G. The excavation project shall be operated as follows:

　　1. Primary access to the site shall be controlled at one location.

　　2. The excavator shall post the property, noting that a dangerous condition exists and warning trespassers away.

　　3. The excavator shall take care that trucks leaving the property are not overloaded. If materials from trucks are spilled upon a public road, all such materials shall be removed from the road within four (4) hours.

　　4. Wash stations shall be installed for trucks leaving the site to enter a public road in order to ensure that no dust leaves the property.

H. The Board of Supervisors may require a bond in favor of the Township to be posted by the excavator to cover damages that may occur to Township roads as a result of hauling materials excavated from the permitted site. The amount of the bond less any sums needed to correct damages shall be refunded to the excavator within one (1) year after the conclusion of the operation.

I. Within the context of any regulations established by the Pennsylvania Department of Environmental Protection and other laws, the developer shall agree to contact the Township to enable Township officials to observe final backfilling and compaction of the site following any excavation to ensure that illegal dumping does not occur, and that the site shall be ultimately usable for other purposes. Within the confines of the standards for professional consultant reimbursement under the Municipalities Planning Code, such inspection by the Township may be at the developer's cost.

**Section 309 Specialized Animal Raising and Care**

While the Township recognizes the importance of these endeavors, their intensity makes them a conditional use. Such facilities shall:

A. No Specialized Animal Raising and Care may be conducted on a lot of less than ten (10) acres. The developer shall agree to not subdivide any parcel below these stated minimums, while the said use remains active.

B. No pens or runs shall be closer than one hundred (100) feet from neighboring lot lines.

C. Provide evidence of meeting all applicable state codes and licenses.

33

**Section 310 Sportsman's Clubs**

A. Shall present a plan for any proposed serving of alcohol on club grounds with evidence of compliance with Liquor Control Board Rules and ensuring that hours of operation do not concur with shooting events.

B. Shall be located on a lot of no less than forty (40) acres.

C. Shall illustrate that the design and direction of all firing lanes and shall not present a danger to public health and safety. The developer shall show adherence to best design practices, such as the National Rifle Association's NRA Range Source Book to ensure safety. Other intensive uses shall present a plan to minimize any noise created by activities through buffering, acoustic engineering or topography.

D. Outdoor shooting activities shall be limited to pistol range, skeet shoot, trap and skeet, and rim-fire rifles.

**Section 311 Neighborhood Business**

The purpose of this conditional use is to allow very small retail businesses that would serve the neighborhood or potential tourists. Such uses shall:

A. Provide all parking as required by this Ordinance on lot.

B. All compressors shall be so enclosed as to baffle their sound from surrounding uses.

C. All dumpsters and or garbage/trash storage areas shall be enclosed.

D. All signage shall be lit by indirect means.

E. No newly constructed building shall exceed five thousand (5,000) square feet gross floor area (GFA)

**Section 312 Public and Private Accredited Schools, Hospitals, and Nursing Homes**

A. Shall be located on a paved public street which has two means of entrance and exit (It shall not be located upon a dead end road or street), and with a minimum cartway width of twenty-four (24) feet, or the street shall be improved to this minimum cartway width.

B. The design and landscaping shall be compatible with, and preserve the character of, adjoining residential uses.

C. All parking and recreation/play areas that abut residential uses shall provide screen planting.

D. Any outdoor lighting shall be designed to prevent glare to adjoining properties.

E. Such uses shall have, list and present, all required Local, County, State or Federal permits, or applications for required permits. If required permits are in the application

34

stages, the final approval for same shall be a condition prior to issuing a Certificate of Occupancy.

## Section 313 Personal Care Homes and Group Care Facilities

Personal care homes shall meet the following conditions:

A. There shall be no sign or exterior display beyond the name of the home or its use. Signs shall meet the standards of Section 408 of this Ordinance.

B. Required Local, County and/or State certifications shall be presented to the Township Board of Supervisors. Specifically included are to be applicable permits from the Pennsylvania Department of Human Services.

C. Such uses shall have, list and present, all required Local, County, State or Federal permits, or applications for required permits. If required permits are in the application stages, the final approval for same shall be a condition prior to issuing a Certificate of Occupancy.

## Section 314 Agricultural Services

This category may include agricultural processing industries and warehousing except slaughterhouses and dead animal reduction plants. This category includes retail outlets for agricultural products produced on and off premises, including wineries, cider mills, and farmer's markets as well as grain drying and feed mills, seed sales, feed grinding services, and agricultural implement dealers.

A. The developer shall clearly define all proposed processes and any potential waste or odors generated.

B. Sufficient loading areas shall be provided for anticipated truck traffic.

C. All processing structures shall be located at least one hundred (100) feet from any side lot line.

## Section 315 Convenience Store, Gas Station, and Alternative Fuel Service Station

A. All canopies from gasoline pumps must be set back from a public right of way by at least one half of the front yard setback required.

B. Areas for refueling underground fuel tanks shall be designed to comply with all federal and state regulations.

C. Such uses shall have, list and present, all required Local, County, State or Federal permits, or applications for required permits. If required permits are in the application stages, the final approval for same shall be a condition prior to issuing a Certificate of Occupancy.

35

## Section 316 Day Care Services

Shall be allowed as a conditional use providing the following criteria are met:

A. Any outdoor play area shall be effectively fenced from access to abutting properties with a solid or opaque fence of at least four (4) feet in height.

B. For all new construction, and where feasible for existing structures, circular driveways shall be provided to deliver and pick up children. These will be for the safely of the children and the protection of the neighborhood. In any event, there shall be an off-street area for loading/unloading children.

C. Such uses shall have, list and present, all required Local, County, State or Federal permits, or applications for required permits. If required permits are in the application stages, the final approval for same shall be a condition prior to issuing a Certificate of Occupancy.

## Section 317 Mobile Home Parks

A. Provide evidence they have met all applicable regulations from sewage disposal.

B. Show evidence of compliance with all applicable Pennsylvania Department of Environmental Protection regulations.

C. Be screened from abutting single-family residential or business uses (Type I).

D. Any mobile homes must meet the Uniform Construction Code standards for tiedowns/anchoring.

E. Must meet all applicable standards for the Robinson Township Subdivision and Land Development Ordinance.

## Section 318 Multi-Family Dwellings

All such development shall be subject to the Township Subdivision and Land Development Ordinance.

A. Multiple single family dwellings upon a single lot shall show that all minimum lot and yard requirements are met in a manner that would allow subdivision into legal lots if necessary at some point in the future.

B. All multi-family dwellings shall be provided with public water and sewer connections or an approved community system

C. In addition to meeting minimum lot sizes for the district, the developer shall provide at least 10,000 square feet of lot area for each dwelling until within the development.

D. No portion of a multi-family dwelling may be erected within one hundred (100) feet of a R1A or R1B zoning district.

36

**Section 319 Light Manufacturing, Warehousing and Truck Terminals and Wholesale Businesses**

The purpose of this category is to diversify the Township's economic base by providing more industrial business opportunities in business areas without jeopardizing the overall welfare of other small business. Such businesses shall:

    A.  Agree that all industrial activities and storage areas shall be contained indoors.

    B.  Show a plan for minimizing the effect of any truck traffic on congested areas.

    C.  Show evidence of compliance with parking, loading, signage, lighting, buffering and other performance standards.

    D.  All building sizes shall not exceed 30,000 square feet GFA (gross floor area).

**Section 320 Car Washes, Auto Sales, and Equipment Sales and Rental**

These kinds of business differ from other kinds of retail or industry in that activities and goods sold may occur outside of buildings.

    A.  No vehicles will be parked or stored within any setback lines or encroach upon a required yard area, except customer vehicles parked on a short-term basis. For the purposes of this Section, a "short-term basis" shall be defined as less than seventy-two (72) hours.

    B.  If there is outdoor storage of new or used parts, scrap parts, unlicensed vehicles, parts of vehicles, or vehicles which lack current Pennsylvania inspection stickers, the storage area must be completely enclosed with opaque fencing at least 6 feet high and meet all setback requirements.

**Section 321 Landscaping Supply and Materials**

    A.  No outdoor storage of mulch, stone or similar loose material is permitted within two hundred (200) feet of a property line occupied by a dwelling in separate ownership.

**Section 322 Contractors Garage or Storage Yard**

Such uses are permitted subject to the following requirements:

    A.  All outdoor storage shall be within rear or side yard setbacks and behind the front lot line.

**Section 323 Retail Sales Building of Greater than 5,000 Feet Gross Floor Area**

    A.  Parking areas shall be set back at least thirty five (35) feet from any State or Township road right-of-way.

    B.  Screening shall be required for any retail building that abuts a single-family dwelling.

**Section 324 Self Service Storage**

These structures consist of one or more larger buildings that are divided into small separate units. These units are then rented for storage, normally for personal goods. Such uses must adhere to the following regulations:

A. There shall be no outdoor storage of any type, at any time, with the exception of properly registered and permitted vehicles. Such vehicles and trailers shall be stored in a manner that they are visually screened from any abutting residential use.

B. In addition to the required side and rear yards, an additional ten (10) foot buffer yard shall be required. This buffer yard is to be planted in evergreen trees to provide a visual buffer to surrounding properties. Front yards shall be landscaped with a mix of lower shrubs, grass and trees.

C. The entire complex shall be surrounded by a security fence at least six (6) feet but not greater than eight (8) feet in height. Said fence shall be no closer to any lot line than ten (10) feet.

**Section 325 Planned Business Park**

It is the intent of the Planned Business Park (PBP) to provide for development of research and business parks that, while meeting applicable building, health and safety standards, also fosters innovative building and open space  resulting in an aesthetically attractive working environment; provides for the preservation and protection of natural resources and the effective use of land and materials; fosters internal and external educational, business and research relationships to enhance the economic stability of the Region; and provides the flexibility to adapt to changes in markets and technologies.

A. The PBP is intend to achieve the following objectives

1. Provide for screening, landscaping, signage, and lighting.

2. Provide efficient, safe and aesthetic land development.

3. Provide for adequate light and air, proper building arrangements, and minimum adverse effect on surrounding property and to preserve existing topography, trees, amenities, landmarks and natural features.

4. Develop proper safeguards to minimize the impact on the environment including but not limited to minimizing soil erosion and sedimentation, air and water pollution, and noise levels.

5. Ensure the provision of adequate water supply drainage and stormwater management, sanitary facilities and other utilities and services.

6. Provide this type of development with infrastructure and services supplied by the Township and Public Authorities.

B.  Design and Improvements

    1.  The design and physical improvements to the property being developed shall be provided by the developer as shown on the approved plan in accordance with the requirements of this Section. Unless specifically waived or superseded by this Ordinance, all PBPs must comply with all requirements of the Robinson Township Subdivision and Land Development Ordinance and the Robinson Township Storm Water Management Ordinance.

    2.  Location: A PBP shall be adjacent to and have the primary vehicle access to an arterial street as defined or mapped in the Robinson Township Comprehensive Plan.

    3.  Size: A proposed PBP shall have no maximum acreage limit but shall contain no less than twenty (20) acres of total land area.

    4.  All land contained in a proposed PBP must be filed by a single landowner and be developed as a single entity.

C.  Permitted Uses

Land and structures in a PBP may only be used for the following:

    1.  Primary uses:

(a)  Public and private institutions of higher education and training.

(b)  Laboratories, offices and other facilities for both basic and/or applied research

(c)  Corporate and governmental offices that are in conformance with the intent of this Ordinance.

(d)  Production or assembly of prototype only to the scale necessary for full investigation of the merits of the product.

(e)  Data and communication centers, information processing facilities.

(f)  Business, professional and financial offices

(g)  Hotels, conference facilities, meeting rooms and restaurants

(h)  Business services and retail uses incidental to and in support of other permitted uses.

(i)  Multi-occupancy incubators.

(j)  Light Industry.

    2.  Accessory Uses:

39

(a)  Open space improvements and facilities.

(b)  Active recreational structures and fitness facilities

(c)  Caretaker residences

(d)  Other incidental operations required to maintain or support a primary or limited use such as maintenance shops, central energy plants and wastewater treatment facilities.

D.  Density

1.  Lot area shall be a minimum of 20,000 sq. ft.

2.  Maximum Building Coverage.

(a)  The total ground floor area of all buildings and structures shall not exceed thirty-five percent (35%) of the total land area of the park.

(b)  Maximum impervious surfaces shall, in developments of fifty (50) to one hundred (100) acres, not exceed sixty percent (60%) and in developments of one hundred plus acres, not exceed sixty-five percent (65%) of the total land area of the park.

E.  Perimeter Requirements

1.  The park shall be designed to avoid adverse influences and impacts on surrounding properties. Required setbacks from perimeter boundaries shall be 100 feet for structures and 50 feet for parking areas. I-576 perimeter setbacks shall be 50 feet for structures and 25 feet for parking and driveway areas. Entry features are excluded from setback requirements provided they meet requirements of the Robinson Township Subdivision and Land Development Ordinance.

F.  Interior Setbacks

1.  Interior setbacks must be proposed by the developer and shown on the Preliminary Plan, and will be approved by the Township Board of Supervisors, as a part of the Preliminary Plan approval. These setbacks must be consistent with the PBP's design and intent. Minimum front yard setbacks hall be 35 feet. Minimum side and rear yards setbacks shall be 20 feet.

G.  Open Space Requirements

1.  A minimum of thirty percent (30%) of the gross area of the park shall be devoted to open space.

2.  At least fifty percent (50%) of the required open space shall be contiguous.

40

3. For purposes of calculating required acreage specified herein, open space shall not include land occupied by streets, driveways, parking spaces and buildings or structures, other than recreational structures.

H. Environmental Design

1. The environmental design scheme of the PBP shall be laid out in such a fashion so that all of the elements listed below are incorporated into a harmonious and aesthetically pleasing design. Consideration should be given to the overall character of the development and its visual effect on adjacent uses as well as the tenants of the development and residents of the Township.

2. Existing trees should be inventoried and preserved whenever possible. Existing sands of mature healthy trees, hedgerows, waterways, historic sites, scenic points, views and vistas and other community assets and landmarks shall be preserved.

3. The PBP should be designed to minimize grading and other changes to the natural terrain. All grades and slopes should blend with the surrounding terrain and development.

4. All landscaping shall be in conformance with an overall landscaping plan and unifying concept for the development.

5. The PBP shall conform to the regulations on erosion and grading control contained in the Robinson Township Subdivision and Land Development Ordinance.

6. The PBP shall conform to the requirements of the Robinson Township Storm water Management Ordinance.

7. Billboards shall be prohibited. Identification and direction signs shall be permitted, subject to regulation under Section 408 of this Ordinance.

8. There shall be no direct glare, whether from floodlights or high-temperature processes, so as to be visible from adjoining zoning districts.

I. Streets and Traffic

1. A PBP shall have an internal system of public streets with the major access to the site linked to an arterial street.

2. A system of pedestrian and bikeway access, in the form of paved sidewalks for interior walkways, shall be provided within the PBP. The minimum width of these access ways shall be eight (8) feet in width and these access ways shall be paved with asphalt and designed to drain. It may be necessary to connect between every use, structure or recreational area with pedestrian walks outside the park area for safety concerns.

**Section 326 Sexually Oriented Businesses**

Sexually Oriented Businesses, as defined herein, shall be permitted as a conditional use, provided:

    A.  Setbacks: The proposed business does not lie within one thousand (1,000) feet of:

        1.  A place of worship

        2.  A public or private pre-elementary, elementary or secondary school

        3.  A public library

        4.  A child-care facility or nursery school

        5.  A child-oriented business

    B.  Compliance with all other applicable local codes and licenses is presented to the Township Board of Supervisors.

**Section 327 Veterinary Clinic**

    A.  All overnight kennel facilities accessory to the clinic shall be able to provide indoor facilities for domestic pets and should be able to provide outdoor facilities for large animals.

    B.  The clinic shall show evidence of legal means of disposal of dead animals and other medical waste.

    C.  Be screened from abutting residentially zoned property (Type I screening).

**Section 328 Bottle Clubs**

    A.  Shall present the Township with a security plan.

    B.  Shall employ no outdoor speakers.

**Section 329 Bulk Fuel Storage Yard**

    A.  Liquid storage tanks shall be completely surrounded by a dike capable of containing the maximum contents of all the tanks within the dike. Any openings in the dike shall be leak-proof when closed and shall close automatically in the event of tank rupture. As needed, tanks shall be registered with DEP, comply with their regulations, and show evidence of same.

    B.  No tank shall be located closer than 100 feet to any property or street line or 500 feet to any residence.

    C.  The area within the dike shall be drained by an underground system capable of closing automatically in the event of tank rupture.

D. An emergency management plan shall be prepared and approved by the Township with consultation with the local fire department and the consent of the DEP shall be secured by the developer as conditions of issuing a zoning permit or certificate.

## Section 330 Flea Markets

A. The operator of the flea market shall either be the property owner, or provide evidence of written permission (such as a lease agreement) to utilize the property.

B. The operator shall submit a plan that details public parking areas, and the number and location of proposed seller stalls.

C. The operator shall have a contract with an approved waste hauler, and a minimum of one (1) fifty (50) gallon capacity solid waste receptacle (or equivalent dumpster capacity) for every four (4) proposed seller.

## Section 331 Correctional Facility/Halfway House

A. Shall present the Township Board of Supervisors with a security plan that takes into account the safety of Township residents.

B. Does not lie within one thousand (1,000) feet of:

1. A church

2. A public or private pre-elementary, elementary, or secondary school

3. A public library

4. A child-care facility or nursery school

5. A public park adjacent to any resident district

6. A child-oriented business

C. Does not lie within five hundred (500) feet of a pre-existing single-family home.

## Section 332 Heavy Industry

The applicant shall provide a detailed description of the proposed use in each of the following topics:

A. The nature of the on-site processing operations, the materials used in the process, the products produced, and the generation and methods for disposal of any by-products. In addition the applicant shall furnish evidence that the disposal of materials will be accomplished in a manner that complies with State and Federal regulations.

B. The general scale of the operation in terms of its market area, specific floor space requirements for each step of the industrial process, the total number of employees on each shift, and an overall needed site size.

C. Any environmental impacts that are likely to be generated (e.g., odor, noise, smoke, dust, litter, glare, vibration, electrical disturbance, waste water, stormwater, solid waste, etc.) and specific measures employed to mitigate or eliminate any negative impacts. The applicant shall further furnish expert evidence that the impacts generated by the proposed use fall within acceptable levels as regulated by applicable laws and ordinances, including but not limited performance standards under Article 7 of this Ordinance.

D. A traffic study prepared by a professional traffic engineer and meeting any standards for such studies within Robinson Township.

## Section 333 Salvage Yards and Recycling Centers

A. All drive and parking areas shall be hard surfaced with asphalt or concrete.

B. Type III screening per Section 409.B.1(c) shall surround the storage area.

C. No emission of objectionable gases, fumes, smoke or dust.

D. Must have all required Federal, State and Local permits and meet performance standards under Section 407.

## Section 334 Solid Waste Landfills

Operators of sanitary landfills shall file with the Board of Supervisors written proof that they have met all permit requirements of the State and/or Federal Government as they may apply to a specific development.

A. Local requirements which must be met prior to permit approval by the Board include:

1. Minimum lot size of twenty (20) acres; a buffer yard of two hundred (200) feet from all public rights-of-way and four hundred (400) feet from all dwellings, schools, churches, hospitals and residential uses.

2. An eight (8) foot high cyclone type fence with panel weaving or similar solid fencing shall parallel all lot lines for purposes of preventing the passing of wind-blown litter and preventing direct visibility for the working area from public rights-of-way and adjoining properties. Barrier fences shall be maintained in good condition at all times.

3. The barrier shall be at a minimum distance of seventy-five (75) feet from all operations, and the area between the work area and barrier shall consist of natural cover of vegetation of forestry. This strip shall not be of barren soil.

4.  The landfill shall have no more than two (2) access routes, unless the landfill property borders three (3) or more public right-of-way. In such an event, approval by the Township Supervisors will be necessary to secure an additional access route. All access areas shall be maintained in a dust free condition at all times.

5.  A bond will be filed with the Township Supervisors, at an amount deemed necessary by the Board of Supervisors, to provide for protection of Township roads, which may be used for access to this landfill.

6.  The operator shall submit to the Board for approval a plan for the restoration of the landfill area, which shall include anticipated future use of the restored land. A DEP-approved restoration plan will be sufficient, where required.

7.  Due to bird strike hazards, landfills are not permitted within five thousand (5,000) feet of any airport.

8.  Hours of operation shall be limited to between 7:00 am and 7:00 pm.

**Section 335 Natural Gas Compressor Station or Natural Gas Processing Plant**

Natural Gas Compressor Stations are permitted as a permitted use Industrial ("I"),  and Light Industrial ("LI"), zoning districts and as a conditional use in Commercial ("C"),  Rural Residential ("R-1A") and Agricultural ("A") zoning districts.

Natural Gas Processing Plants are permitted as a conditional use in Industrial ("I") and Light Industrial ("LI") zoning districts.

The requirements for either a permitted use or conditional use under this Section 335 are as follows.

A.  Before filing an application the applicant shall meet with representatives of the Township to discuss the (1) proposed use; (2) site location; (3) the time frame for development; (4) traffic routes; (5) the condition of Township roads as a part of said traffic route and the potential need for advance repairs or upgrades; (6) plans for potential excess maintenance of said traffic routes; and, (7) traffic safety.

B.  Applicant shall submit four (4) copies of a signed and completed application with all applicable and required fees to the Township zoning officer.

1.  The Application must include the following information:

(a)  A written narrative signed and dated by the applicant, describing the proposed use outlining an approximate timeline for the proposed development;

(b)  A site plan, or a copy of the Applicant's Erosion and Sediment Control Plan and Post-Construction Stormwater Management Plan if said plans have been prepared by a licensed professional (e.g. engineer, surveyor, geologist or

45

landscape architect) who is registered in Pennsylvania and who has attended up-to-date training provided by DEP, Office of Oil and Gas Management on erosion and sediment control and post construction stormwater management for oil and gas activities;

(c) A copy of the Applicant's Preparedness, Prevention and Contingency Plan;

(d) A road access plan showing both temporary and permanent access routes and identifying all ingress and egress points;

(e) If any weight-restricted Township roads will be used by Applicant for any oil and gas development or operations, Applicant shall comply with any applicable road bonding requirements and provide proof of bonding of said roads.  In lieu of road bonding, the Township and Applicant may enter into a road maintenance agreement, a copy of which will be included;

(f) A copy of Highway Occupancy Permits and other permits already obtained at the time of the application submission.

(g) Written authorization from the property owner(s) who has legal or equitable title in and to the surface of the proposed Development.  A copy of the oil and gas, mineral or other subsurface lease agreement or similar document vesting legal or equitable title to the surface will constitute written authorization;

(h) The name of an individual and emergency contact number that the Township or residents may contact 24 hours a day for each day of the week to report emergencies;

C. Natural Gas Compressor Station or Natural Gas Processing Plant shall meet the location restrictions established by the Commonwealth, its regulatory agencies and relevant local, State or Federal statutes or regulations.   Natural Gas Compressor or Natural Gas Processing Plant shall additionally meet the front, rear and side yard setbacks as provided for in Article 2 of this Zoning Ordinance.

D. No Natural Gas Compressor Station or Natural Gas Processing Plant shall be located closer than 1,000 feet from dwelling, library, school or place of worship.

E. Applicant/Operator shall take the necessary safeguards to ensure that the paved Township roads utilized shall remain free of dirt, mud, and debris resulting from development activities and/or shall ensure such roads are promptly swept or cleaned if dirt, mud and debris occur.

F. Applicant/Operator shall take necessary precautions to ensure the safety of persons in areas established for road crossing and/or adjacent to roadways (for example, persons waiting for public or school transportation). Where necessary and permitted, during periods of anticipated heavy or frequent truck traffic associated with development, Applicant/Operator will provide flagmen or other alternative and approved safety mechanism to ensure the safety of children at or near schools or school bus stops and

46

include adequate sign and/or warning measure for truck traffic and vehicular traffic. Applicant/Operator will coordinate its efforts with school districts so as to minimize heavy truck traffic during the hours school buses are picking up or dropping off children.

G. The access driveway off the public road to the Natural Gas Compressor Station or Natural Gas Processing Plant site shall be gated at the entrance to prevent illegal access.

H. Fencing of at least six (6) feet in height shall be installed around all Natural Gas Compressor Stations and Natural Gas Processing Plants.

I. Applicant/Operator shall take the necessary safeguards to ensure appropriate dust control measures are in place.

J. Direct site lighting downward and inward toward the Natural Gas Compressor Station or Natural Gas Processing Plant so as to minimize glare on public roads and adjacent buildings within five hundred (500) feet of the facility.

K. Unless otherwise approved by adjacent property owners, no construction activities of Natural Gas Compressor Stations or Natural Gas Processing Plants shall be performed during the hours of 10:00 p.m. to 6:00 a.m.

L. Applicant/Operator shall not clear brush or trees by way of burning, and shall chip, grind or remove all stumps from properties it clears for Development purposes.

M. Noise standards for Natural Gas Compressor Stations and Natural Gas Processing Plants shall be equal to or less than 55 decibels at the nearest dwelling, library, school or place or worship at the time of initial construction.

N. Conditional Use Requirements

    1. Applicant/Operator shall be responsible to pay the advertising and cost of public hearings incurred by the Township related to the application for activities authorized by this Ordinance.

    (a) Applicants/Operators submitting an application, for activities authorized by this Ordinance shall do so on Zoning Permit Application provided by the Township and shall submit an application fee based on the type of use, permitted or conditional, in accordance with the Township Fee Schedule.

**Section 336 Shopping Centers and/or Multiple Commercial Buildings or Uses on a Single Lot**

A. All such development shall be subject to the Township Subdivision and Land Development Ordinance.

B. The developer shall either submit incorporation for a property owners association that would own and maintain all private improvements, or show evidence that all minimum

lot and yard requirements are met in a manner that would allow subdivision into legal lots if necessary at some point in the future.

C. The proposal shall show adherence to all environmental design standards under Section 325 as applicable to the site.

## Section 337 Medical Marijuana Grower/Processor

A. A Grower/Processor must have a valid permit issued by the Pennsylvania Department of Health.

B. A Grower/Processor may only grow, store, harvest or process medical marijuana in an indoor, enclosed, secure facility (Building), which includes electronic locking systems, electronic surveillance, and other features required by the Pennsylvania Department of Health.

C. All materials and equipment shall be stored within a completely enclosed Building.

D. The storage or manufacture of hazardous or potentially hazardous materials shall not be permitted.

E. The size of the proposed operation and its relationship to surrounding Uses shall be evaluated by the Supervisors to determine the appropriateness of the proposed activity in the location proposed.

F. Adequate Public facilities shall be available to meet the requirements of the proposed manufacturing process.

G. Adjacent Public Streets shall be adequate to accommodate the traffic volumes and weight limits associated with truck traffic to and from the Site.

H. The Supervisors may impose restrictions on Access to the facility, storage of vehicles or materials on the premise, hours of operation and other such matters as they deem necessary to insure that there is no adverse impact upon the functioning of the district or adjacent parcels.

I. Outdoor Lighting, if any, shall be shielded and/or reflected away from adjoining property so that no direct beam of light, but only diffuse or reflected light, enters adjoining properties.

J. A Grower/Processor may not be located within 1,000 feet of the property line of a Public or private school Day-Care Services Facility, and may not be located within 750 feet of a Residential Use, and/or residential Zoning District.

K. A Grower/Processor may not operate on the same Site as a Dispensary.

**Section 338 Essential Services (Wholesale or Private)**

Such uses, as described herein, are owned and operated by a private utility or a private entity that provides the described services.

Essential Services (Wholesale or Private) are allowable as a conditional use in all zoning districts subject to the procedures for conditional use approval set forth in Section 301 of the Zoning Ordinance. Additionally, if land development approval is required for the conditional use, the application for approval of land development shall be regulated by the Robinson Township Subdivision and Land Development Ordinance, including plan submittal and approval procedures, unless specifically exempted by a provision of this Ordinance.

Where the Essential Service (Wholesale or Private) described in an application to the Township is an aboveground, high-voltage ("HV") electrical transmission line, the application submission requirements for the conditional use under this Section 338 are as follows.

    A.  Applicant shall submit four (4) copies of a signed and completed application with all applicable and required fees to the Township zoning officer.

        1.  The Application must include the following information:

        (a)  The name of the applicant and the address of its principal business office.

        (b)  The name, title and business address of the attorney of the applicant and the person authorized to receive notice and communications with respect to the application if other than the attorney of the applicant.

        (c)  A general description--not a legal or metes and bounds description--of the proposed route of the HV line, to include the number of route miles, the right-of-way width and the location of the proposed HV line within the Township.

        (d)  The names and addresses of known persons, corporations and other entities of record owning property within the proposed right-of-way.

        (e)  A general description of the applicant's HV line right-of-way interests.

        (f)  A general description of the need for the proposed HV line.

        (g)  A general description of the safety considerations which will be incorporated into the design, construction and maintenance of the proposed HV line.

        (h)  A description of studies which have been made as to the projected environmental impact of the HV line as proposed and of the efforts which have been and which will be made to minimize the impact of the HV line upon the environment and upon scenic and historic areas, including but not limited to impacts, where applicable, upon land use, soil and sedimentation, plant and wildlife habitats, terrain, hydrology and landscape.

49

(i) A matrix or list of all Federal, State and local government with requirements governing the construction or maintenance of the proposed HV line; the regulatory permitting or licensing approvals that must be required for the project at the time the application is filed; and the approximate timeline for approval and current status. The applicant should provide relevant updates on the status of the regulatory permitting/licensing approvals throughout the application process.

(j) The estimated cost of construction of the proposed HV line, and the projected date for completion.

(k) The following exhibits:

   i. A depiction of the proposed route on aerial photographs and topographic maps of suitable detail.

   ii. A general description of the proposed HV line, including the length of the line, the number of supporting structures, the design voltage, the size, number and materials of the conductors, the design of the supporting structures and their height, configuration and materials of construction.

   iii. A simple drawing of a cross section of the proposed right-of-way of the HV line and any adjoining rights-of-way showing the placement of the supporting structures at typical locations, with the height and width of the structures, the width of the right-of-way and the lateral distance between the conductors and the edge of the right-of-way indicated.

(l) Additional information as the Township may reasonably require with respect to the proposed HV line.

2. The application shall be signed by a person having authority with respect thereto and having knowledge of the matters therein set forth and shall be verified by the same.

B. At conditional use hearings held under this Section, the Township will accept evidence upon, and in its determination of the application it will consider, *inter alia,* the following matters:

   1. The impact and the efforts which have been and will be made to minimize the impact, if any, of the proposed HV line upon the following:

   (a) Land Use

   (b) Soil and sedimentation

   (c) Plant and wildlife habitats

   (d) Terrain

(e)  Hydrology

(f)  Landscape

(g)  Archaeologic areas

(h)  Geologic areas

(i)  Historic area

(j)  Scenic area

(k)  Wilderness area

(l)  Scenic rivers

**Section 339 Medical Marijuana Dispensaries**

A.  A Dispensary must have a valid permit issued by the Pennsylvania Department of Health.

B.  A Dispensary may only dispense medical marijuana in an indoor, enclosed, secure facility (Building).

C.  A Dispensary may not operate on the same Site as a Grower/Processor.

D.  A Dispensary may not be located within 1,000 feet of the property line of a Public or Private school, Day-Care Services Facility, and may not be located within 750 feet of a Residential Use, and/or residential Zoning District.

E.  A Dispensary may sell medical devices and instruments which are needed to administer medical marijuana under the Medical Marijuana Act, 35 P.S. §§ 10231.106 et seq.

F.  A Dispensary may sell services approved by the Pennsylvania Department of Health related to the use of medical marijuana.

**Section 340 Home Occupations**

Prior to issuance of a zoning certificate, the Applicant shall present a plan to the Zoning Officer that meets the following performance standards.

A.  Evidence that the home occupation will be carried on entirely within the dwelling unit.

B.  Evidence that no more than twenty five percent (25%) of the gross floor area of the dwelling may be used for the home occupation.

C.  Evidence that articles sold or offered for sale on site shall be limited to mail-order articles or articles for sale elsewhere.

51

D. Evidence that no offensive noise, vibration, smoke (or other particulate matter), heat, humidity, glare or other objectionable effects shall be produced.

E. Evidence that no equipment or processes shall be used which creates interference in radio or television receivers off the premises or which cause fluctuation in utility line transmissions. Applicant will also show that electric or electronic equipment will not create an electrical fire hazard.

F. In order to retain the home occupation-zoning certificate, not more than five (5) persons other than the occupants of the dwelling unit shall be employed.

## Section 341 Forestry and Timbering

The harvesting of trees shall be a permitted use in all districts, unless harvesting is being done as an adjunct to land development activities. However, any timber harvester (with the exception of a landowner harvesting his own trees) shall provide the Zoning Officer a sketch of the area to be harvested (a clear photocopy of a U.S.G.S. quadrangle will be adequate.) Also, the applicant must:

A. Provide a transportation plan that shows which roads in the Township will be used to haul logs from the logging site.

B. Provide any necessary bond to protect Township roads.

C. No mechanized forestry operations shall commence before 7:00 a.m. nor proceed past 9:00 p.m.

## Section 342 Oil and Gas Operations and Development

Oil and Gas-Well Site Development is allowed as a permitted use in the Agricultural ("A"), Industrial ("I"), Light Industrial ("LI"), and Rural Residential ("R-1A") zoning districts and as a conditional use in those zoning classifications of Commercial ("C"), and Special Conservation ("SC").

Oil and Gas-Subsurface Facilities and Activities are authorized in all zoning districts. Oil and Gas-Subsurface Facilities and Activities shall be exempt of the requirements of this Section.

Oil and Gas-Impoundments shall be allowed as a permitted use in the ("I") Industrial zoning district and as a conditional use in the Agricultural ("A"), Light Industrial ("LI"), Rural Residential ("R-1A") and Special Conservation ("SC") zoning districts.

Underground Injection wells, or similarly named or proposed wells, regulated by the Environmental Protection Agency through Underground Injection Control program shall be prohibited in all other zoning districts.  Section 341 (exempting O&G from other requirements of zoning) shall not apply to wells falling within this category Section 341.

The requirements for either a permitted use or conditional use, with the exception of Oil and Gas-Subsurface Activities and Facilities, under this Section 341 are as follows.

A. Before filing an application the applicant shall meet with representatives of the Township to discuss the (1) proposed use; (2) site location; (3) the time frame for development; (4) traffic routes; (5) the condition of Township roads as a part of said traffic route and the potential need for advance repairs or upgrades; (6) plans for potential excess maintenance of said traffic routes; and, (7) traffic safety.

B. Applicant shall submit four (4) copies of a signed and completed application with all applicable and required fees to the Township zoning officer.

    1. The Application must include the following information:

        (a) A written narrative signed and dated by the applicant, describing the proposed use outlining an approximate timeline for the proposed development;

        (b) A site plan, or a copy of the Applicant's Erosion and Sediment Control Plan if said plan has been prepared by a licensed professional (e.g. engineer, surveyor, geologist or landscape architect) who is registered in Pennsylvania and who has attended up-to-date training provided by DEP, Office of Oil and Gas Management on erosion and sediment control and post construction stormwater management for oil and gas activities;

        (c) A road access plan showing both temporary and permanent access routes and identifying all ingress and egress points;

        (d) If any weight-restricted Township roads will be used by Applicant for any oil and gas development or operations, Applicant shall comply with any applicable road bonding requirements and provide proof of bonding of said roads. In lieu of road bonding, the Township and Applicant may enter into a road maintenance agreement, a copy of which will be included;

        (e) A copy of the Applicant's Preparedness, Prevention and Contingency Plan;

        (f) A copy of the Applicant's Erosion and Sedimentation Control Plan and Post-Construction Stormwater Management Plan;

        (g) A copy of any State permits, to include the ESCGP 1 or 2, Well Permits, Highway Occupancy Permits and other permits already obtained at the time of the application submission. An Applicant may submit an application without the necessary and approved state permits but final Township approval shall be contingent upon receipt of said State permits. The Applicant shall submit to the Township a true and correct copy of all permits issued by the Pennsylvania Department of Environmental Protection (PA DEP) and other State permitting agencies prior to beginning any work on an approved Oil and Gas Development site;

        (h) Written authorization from the property owner(s) who has legal or equitable title in and to the surface of the proposed development. A copy of the oil and

53

gas, mineral or other subsurface lease agreement or similar document vesting legal or equitable title to the surface will constitute written authorization;

(i) The name of an individual and emergency contact number that the Township or residents may contact 24 hours a day for each day of the week to report emergencies;

(j) When applicable, a copy of Applicant's FAA Form 7460-1 "Notice of Proposed Construction or Alteration" showing that there is no interference with air traffic; and,

(k) The number of trailers to be located on the site.

C. Recognizing that the specific location of equipment and facilities is an important integral part of oil and gas development, as a part of the planning process, the Applicant/Operator shall strive to consider location of its temporary and permanent operations, where prudent and possible, so as to minimize interference with Township residents' enjoyment of their property.

D. Oil and gas- well site development shall only be permitted to be located on property that is a minimum of ten (10) acres or larger.  Multiple properties may be combined to meet the ten (10) acre minimum.

E. Oil and Gas Operations shall meet the location restrictions established by the Commonwealth, its regulatory agencies and found in those Environmental Acts.   Oil and Gas Operations shall additionally meet the front, rear and side yard setbacks as provided for in Article 2 of this Zoning Ordinance.

F. Applicant/Operator shall take the necessary safeguards to ensure that the Township roads utilized shall remain free of dirt, mud, and debris resulting from development activities and/or shall ensure such roads are promptly swept or cleaned if dirt, mud and debris occur.

G. Applicant/Operator shall take all necessary precautions to ensure the safety of persons in areas established for road crossing and/or adjacent to roadways (for example, persons waiting for public or school transportation). Where necessary and permitted, during periods of anticipated heavy or frequent truck traffic associated with development Applicant/Operator will provide flagmen or other alternative and approved safety mechanism to ensure the safety of children at or near schools or school bus stops and include adequate sign and/or warning measure for truck traffic and vehicular traffic. Applicant/Operator will coordinate its efforts with school districts so as to minimize heavy truck traffic during the hours school buses are picking up or dropping off children.

H. The access driveway off the public road to the drill site shall be gated at the entrance to prevent illegal access to the drill site.

54

I.  For any gas well where the planned surface location of the well will be within 1,000 feet of a Protected Structure, the Operator shall either install temporary safety fencing at least six (6) feet in height, around the established drilling pad or in lieu of fencing provide at least one (1) security guard 24/7 at all times when drilling or completions equipment is on the Well Site.

J.  Before drilling, First Responders shall have on-site orientation and be provided with adequate awareness information. Upon request from the Township, Applicant/Operator will, prior to drilling of an oil or gas well, make available at its sole cost and expense, an appropriate site orientation for First Responders.  Such site orientation shall be made available at least annually during the period when the Applicant/Operator anticipates drilling activities in the Township.

K.  Applicant/Operator shall take the necessary safeguards to ensure appropriate dust control measures are in place.

L.  Except in an emergency, no bullhorns shall be used on-site as a means of communication on the drill site.

M.  Recognizing that adequate and appropriate lighting is essential to the safety of those involved in the development of oil and gas, the Applicant/Operator shall take steps, to the extent practicable, to direct site lighting downward and inward toward the drill site, wellhead, or other area being developed so as to minimize glare on public roads and adjacent buildings within five hundred (500) feet of the drill site, wellhead, or other area being developed.

N.  Prior to initial construction activities in the Township, the Applicant/Operator shall attend a public meeting to present general information about the Applicant/Operator's Development plans in the Township and allow for questions and answers related to. The Operator shall notify, in writing, by U.S. Mail, or personal service, owners of real estate within 3000' of contemplated drilling within the Township, the date time and location of the meeting, and the approximate location of the proposed Well Site at least once, not more than 30 days and not less than seven (7) days in advance of the meeting. If requested by the Township, and if drilling activities continue for more than twelve (12) months, the Operator shall attend additional meetings and present information, but shall not be required to do so more often than annually, unless additional Well Sites not previously discussed at a public hearing are proposed.

O.  Prior to the commencement of drilling activities, no construction activities involving the alteration to, or repair work on any access road or well site shall be performed during the hours of 10:00 p.m. to 6:00 a.m.

P.  Operator shall not clear brush or trees by way of burning, and shall chip, grind or remove all stumps from properties it clears for Development purposes.

Q.  All Oil and Gas Operations must comply with the noise requirements in Section 407.B.5 of this Ordinance.  In the event that an Applicant/Operator is unable to meet the aforementioned requirements the Applicant/Operator may either:

55

1. Utilize appropriate noise mitigation measures that may include sound barriers or such technology or devices that will allow the Applicant/Operator to meet said noise requirements; or

2. Obtain a release waiver of said noise requirements from the owners/renters of those properties who would be affected by noise conditions in excess of that allowed in Section 407.

   (a) The Applicant/Operator must submit a professionally prepared sound study or sound impact assessment identifying those parcels that would be subject to excess sound levels.

   (b) The Applicant/Operator must obtain release waivers from all adversely impacted property owners/renters as identified on the sound study or sound impact assessment.  A copy of said release waiver shall be provided to the Township.

      i.  All release waivers shall be signed by the impacted property owner/renter and notarized.

   (c) Upon Applicant's/Operator's submittal of said (1) sound study or sound impact assessment and (2) release waivers from all impacted property owners/renters the Applicant/Operator shall be deemed to have met the requirements and intent of Section 407.B.5.

   (d) In the event that upon commencement of activity sound from Oil and Gas Development and Operations exceeds the allowances of Section 407 on the properties of those owners/renters who did not sign a release waver, Applicant/Operator will either obtain a release waiver from said individuals per the requirements of paragraph (b) above or be required to institute noise mitigation as referenced in paragraph Q.1 above.

R. The Township reserves the right to review and approve all temporary housing arrangements for employees of Operator and any subcontractors working on the Well Site during the duration of drilling operations.  If approved the Applicant/Operator will be required to pay a fee in accordance with that provided for in the Township Fee Schedule.

S. All work-over operations shall be restricted to the hours of 6:00 a.m. to 10:00 p.m., except in the event of an emergency, as reasonably determined by the Operation. "Work-over operations" shall mean the process of performing major maintenance or remedial treatments on an oil or gas well.

T. Conditional Use Requirements

   1. Applicant/Operator shall be responsible to pay the advertising and cost of public hearings incurred by the Township related to the application for activities authorized by this Ordinance.

2. Applicants/Operators submitting an application, for activities authorized by this Ordinance shall do so on Zoning Permit Application provided by the Township and shall submit an application fee based on the type of use, permitted or conditional, in accordance with the Township Fee Schedule.

U. The requirements of this Section are in lieu of and supersede any other generally applicable requirements of this the Township Zoning Ordinance or any other Township Ordinance, except any requirements specifically referenced, or those under the Township's Flood Plain Management Ordinance.

**Section 343 Golf Courses; Golf or Country Clubs**

Golf courses and golf or country clubs shall be subject to the following:

A. The minimum site required shall be 30 acres.

B. Clubhouses shall be located at least 200 feet from any property line adjoining property in residential Zoning District and at least 50 feet from all other property lines.

C. Where eating and/or drinking facilities are provided, loading areas and parking requirements of Section 406 for Eating and Drinking Places shall be met.

D. The clubhouse and any other outdoor recreation facility, other than the golf course, such as a swimming pool or tennis courts shall be screened Type IV screening] along all property lines that adjoin property in any residential Zoning District.

E. Outdoor operations shall be discontinued between the hours of 11:00 p.m. and 6:00 a.m.

**Section 344 Kennels**

Kennels shall be subject to the following:

A. If required by law, the facility shall be licensed by the Commonwealth.

B. The facility shall comply with the Pennsylvania Dog Law (PA 1996-1513;3 P.S.§ 459-101 et seq.), as now or hereafter amended, and all applicable rules and regulations of the Pennsylvania Department of Agriculture.

C. The minimum site required to operate a kennel shall be five acres.

D. Outdoor kennels shall be located at least 300 feet from any occupied dwelling on an adjacent lot and at least 200 feet from any property line adjoining property in an R-1A, R-1B, or R-2 Zoning District.

E. Type I Screening, as defined by Section 409 B, shall be installed along any property line adjoining an existing dwelling for the distance necessary to screen the adjacent dwelling and its rear yard from the kennel.

F. Outdoor runs and similar facilities shall be constructed for easy cleaning, and shall be adequately secured by a minimum six-foot high fence with self-latching gate.

G. The operator shall submit an animal waste management and disposal plan to the Township

**Section 345 Crematoriums**

Crematoriums shall be subject to the following:

A. The minimum site required shall be five (5) acres.

B. The crematory shall not be located within 500 feet of any existing dwelling

C. The use shall comply with all applicable regulations of the Commonwealth of Pennsylvania.

ARTICLE 4
ADDITIONAL REGULATIONS

**Section 400 Additional Standards for New Lots in the A District**

A. Purpose. The Agricultural District is specifically designated to protect the Township's unique concentrations of active farmland, prime and important farming soils types, and agricultural security areas.

B. Limits on new Lots:

1. New lots of minimum of two (2) acres may be created within the A – Agricultural District.

2. The number of new lots created within any parent tract is determined by Clean and Green standards of minimum acreage being either 2 or 10 acre lots.

(a) All Use Lot, Height, and Yard Standards (Section 203 B)

**Table 400A**

| Size of Original Property in Separate Ownership | Maximum Number of |
|---|---|
| Four (4) acres | Two (2) lots |
| Over four (4) acres but less than ten (10) acres | Three (3) lots |
| Ten (10) acres or over but less than twenty (20) acres | Four (4) lots |

58

| Twenty (20) acres or over but less than fifty (50) acres | Five (5) lots |
|---|---|
| Fifty (50) acres or over but less than seventy-five (75) | Six (6) lots |
| Seventy five (75) acres or over but less than one hundred (100) acres | Seven (7) lots |
| One hundred (100) acres or over but less than one hundred twenty-five (125) | Eight (8) lots |
| One hundred twenty-five (125) acres or greater | Nine (9) lots |
| *Including any original or residual tract not subdivided | |

**Section 401 Non-Conforming Uses**

The following provisions shall apply to all nonconforming uses and structures. It is the intention of the Township that all legal non-conforming uses and structures shall be able to continue; however, all changes in such uses shall only be as in compliance to this Article.

    A. Any nonconforming use may be changed to a use of the same or a more restrictive classification (Such as a conversion from industrial use to commercial use)

    B. Any nonconforming structure which has been damaged or destroyed by fire or any other means may be reconstructed and used as before, if intent to rebuild is expressed within six (6) months of discontinuance of use and if the restored structure covers no greater area and contains no greater cubic content than the destroyed building. If approved by the Zoning Hearing Boards through Special Exception, a reconstructed structure may exceed its original lot coverage and cubic content but must meet the minimum yard requirements of the district in which the structure is located. The process for reviewing such a reconstruction shall be consistent with that for land developments under Article V of the PA Municipalities Planning Code and the Robinson Township Subdivision and Land Development regulation.

    C. In the event that any nonconforming use is abandoned or ceases, for whatever reason, for a period of one (1) year, such nonconforming use shall not be resumed and any further use shall be in conformity with the provisions of this Ordinance. A nonconforming use that is converted to a conforming use may not revert to the previous nonconformity.

    D. With approval of the Zoning Officer, the nonconforming use of a building may be extended throughout those parts thereof which ere manifestly arranged or designed for such use at the time of adoption of this Ordinance.

    E. A nonconforming use may, with the approval of the Zoning Hearing Board as a Special Exception, be extended, enlarged or replaced if such expansion does not occupy an area greater than fifty (50%) percent more than the structure occupied prior to such expansion, enlargement or reconstruction. Furthermore, such structures must meet the minimum yard regulations and height restrictions of the district in which the structure

59

is located. The expansion of a nonconforming use under this Section shall be regarded as a Land Development Plan under Article V of the PA Municipalities Planning Code and the Robinson Township Subdivision and Land Development Ordinance.

F. Standards for change, conversion, or expansion of nonconforming uses, whether by a land development plan or special exception:

1. If the nonconforming use is a residential nonconformity, no expansion will result in a greater number of dwelling units

2. The nonconformity may not extend to any property beyond the original lot, parcel or tract upon which it is located.

3. The Township may limit the hours of operation for the new use.

4. The expansion will not increase any unscreened outdoor storage area.

5. The Township may require screening to mitigate any effect upon surrounding properties.

G. A single family dwelling unit that is a nonconforming structure because a portion of it encroaches upon a required yard area may expand in a manner that only continues to that degree of encroachment, and it does not further encroach into the required yard.

H. Nothing contained herein shall require any change in the overall layout, plans, construction, size or designated use of any development, building, structure or part thereof for which official approval and required permits have been granted prior to the effective date of this Ordinance.

**Section 402 Application of Yard Regulations to Accessory Structures and Uses**

A. All accessory buildings, whether attached to the principal structure or not, and whether open or enclosed, including porches, carports, balconies or platforms above normal grade level, shall not project into any minimum front, side or rear yards in any zoning district.

B. All walls or fences under eight (8) feet in height and paved terraces without walls, roofs or other enclosures may be erected within the limits of any yard. Retaining walls and fences required for screening under this Ordinance are not subject to the eight (8) foot high limitation. Fences may be permitted in front yard areas provided they are no higher than four (4) feet and do not impinge on the required free sight triangle at intersections. Fences for safety purposes or containment of livestock and do not block public road or driveways lines of site are exempt from these provisions.

C. Swimming pools shall be permitted in yard areas, provided that the pool is located not less than ten (10) feet from lot line. All swimming pools shall be enclosed by a permanent fence at least four (4) feet in height. Above ground pools may use a combination of sides and screen to reach the required height.

D. Small garden sheds, storage sheds and similar structures may be permitted in yard areas, provided such structure does not exceed one thousand (1,000) square feet and lies no closer than fifteen (15) feet to an abutting lot line.

E. Unattached Accessory Structures for Single-Family Residential Dwellings:

1. A single-story accessory structure of one thousand (1,000) square feet or less, which is not attached to the principal structure on the lot by means of common wall or connecting permanent roof, maybe erected within one (1) of the side yards or within the rear yards in accordance with the following requirements.

    (a) Front yard—As normally required by the district

    (b) Side yard [interior lot]—fifteen (15) feet

    (c) Side yard [lot abutting two (2) public streets]—Same as for principal structure

    (d) Rear yard—Fifteen (15) feet

    (e) Not closer to a principal structure than ten (10) feet

2. However, any such accessory structure in excess of one hundred forty-four (144) square feet so erected shall submit to the Zoning Officer a plan for drains, gutters, sumps, or grading which will assure no runoff from the building will enter a neighboring property.

F. Attached Accessory Structures:

1. When an accessory structure is attached to the principal building, it shall comply in all respects with the requirements of this Ordinance applicable to the principal building.

## Section 403 Temporary Structures and Uses

A. Temporary Trailers

1. Temporary trailers to be used for temporary living and sleeping quarters for workers.

2. When a permitted use, temporary construction trailers for use as storage or offices related to construction work shall be permitted only during the period that the construction work is in progress. Permits for such temporary structures shall be issued for a six (6) month period and may be renewed while construction is in progress. Temporary structures are subject to all use and setback requirements.

3. This Section does not apply to any temporary structure or trailer placed in conjunction with a Conditional Use, which shall only be approved and permitted as a part of such Conditional Use approval.

4. Portable storage units, portable carports, and similar portable structures are permitted on all lots provided they meet the setbacks for the zoning district, based upon the size of the structure, as detailed in Section 402. Such setbacks are not applicable to a portable storage unit parked for a period of less than fifteen days for the purposes of moving household goods.

B. Parking Major Recreational Equipment:

The outdoor storage of major recreational equipment including, but not limited to, travel trailers, motor homes, tent trailers, pickup campers (designed to be mounted on automobile vehicles), boats and boat trailers shall be permitted as an accessory to a dwelling subject to the following requirements:

1. Equipment must be registered to the owner or resident of the dwelling unless kept for a period of thirty days or less.

2. Equipment kept for more than thirty days shall be stored in compliance with the following yard or setback requirements:

(a) Front Yard—25 feet

(b) Side Yard—6 feet

(c) Rear Yard—5 feet

(d) On a corner lot (reverse frontage lot), the front yard requirement of 25 feet shall be applicable on two lot faces.

(e) No permit is required for keeping major recreational equipment on lot when accessory to a dwelling and compliant with setbacks.

(f) Must be properly licensed and registered.

(g) May not be used for permanent residential use, or housing of animals, or any storage except for incidental recreation or travel supplies.

C. Tent, Truck and Temporary Retail Sales

1. Tents erected for community or family events, auctions or residential yard and garage sales are exempt from this Section provided that temporary structures are removed within five (5) days of erection. However, no such exempt tent or truck shall block any vehicular line of sight on a public street. Where the proposed tent, truck used for retail sales, or other temporary sales event will

remain in place for more than five days, a zoning certificate for temporary use must be obtained.

2. The Applicant shall show the location of all temporary signs placed in conjunction with the sale, and pay a deposit in an amount established by the Township fee resolution to ensure all signs are removed upon conclusion of the sale.

3. If the property owner is not the sponsor of the sales event, the applicant shall provide the Township with written permission of the property owner.

4. No part of any tent or truck regulated by this Section shall be located within any required yard or setback.

5. Mud and dust free parking shall be provided, adequate to the proposed size and use of the tent, truck, or other temporary sales structure as determined by the Zoning Officer.

6. The event shall not impede or adversely affect vehicular or pedestrian traffic sight distance, flow or parking maneuver. The driveway shall be clearly delineated and if necessary, show any PennDOT approval and/or adequate sight distance.

7. Unless clearly accessory to another retail operation, the maximum duration of any tent or other temporary retail sale shall be fourteen (14) calendar days. No tent sale shall be held upon the same property for thirty (30) days after said event, unless conditional use approval as a flea market is obtained.

8. The applicant shall have sufficient secure trash receptacles on site for all waste generated by the retailer or anticipated customer use.

9. All signs, merchandise, equipment used in such sales, and all debris and waste resulting from a temporary sale shall be removed from the premises within three days of the termination date of the permit.

D. Other Temporary Uses

1. Temporary Permits

A temporary permit may be authorized by the Township for a short-term activity or use which it deems beneficial to the public health or general welfare, or for which it deems necessary to promote the proper development of the community, provided that such uses or activities are otherwise permitted uses in that district.

2. Temporary Structures

Permits for temporary structures shall be issued for a period not to exceed one (1) year and shall be limited to temporary real estate sales offices for approved

developments in any zoning district and temporary construction or business offices in the Commercial, Industrial, Business Park Planned Development or Special Development districts, and shall be permitted only during construction of an approved development. Temporary structures shall be located on the site of the approved development and shall not be any closer than twenty (20) feet to any property or right-of-way line. Temporary structures shall be located so as not to interfere with construction activities.

## Section 404 Height Limitations

A. Structure height, in excess of the height permitted above the average ground level allowed in any district may be increased, provided all minimum front, side and rear yard depths are increased by one (1) foot for each additional foot of height; however, such increase shall be limited to no more than ten (10) additional feet.

1. The following structures are exempt from height regulations provided they do not constitute a hazard: electric utility towers and poles, church spires, chimneys, elevator bulk heads, smoke stacks, conveyors, flag poles, agricultural barns, silos and similar farm structures, standpipes, elevated water tanks, derricks and similar structures.

2. For the above structures, all yard and set back requirements must be met; in addition, any structure with a height in excess of fifty (50) feet will be first referred to the Fire Department for a review and comments relative to public safety considerations. Such comments shall be considered by the Board of Supervisors as part of a land development application pursuant to the Township Subdivision and Land Development Ordinance.

## Section 405 Lots of Record

A. Any lot of record existing at the effective date of this Ordinance, and held in separate ownership different from the ownership of adjoining lots, may be used for the erection of a structure conforming to the use regulations of the district in which it is located even though its lot area and width are less than the minimum required by this Ordinance; however, such lot must comply with the yard, height and coverage standards of the zoning district where in it is located.  Where two (2) or more adjacent lots of record with less than the required area or width are held by one (1) owner, on or before the date of enactment of this Ordinance, the request for a permit shall be referred to the Board of Supervisors which may require re-platting to fewer lots, which would comply with the minimum requirements of this Ordinance.

## Section 406 Loading Areas and Parking

A. Off-street loading and parking spaces shall be provided in accordance with the specifications in this Section in all districts, whenever any new use is established or an existing use in enlarged.

B. Off-Street Loading:

1. Every use listed in Table 406A shall provide off-street loading berths in accordance with its size. All figures are given in gross feet of floor area for each listed use.

**Table 406A**
**Off-Street Loading Space Requirements**

| Use | Berth Required |
|-----|----------------|
| | |
| Schools | 10,000 Square feet gross floor area |
| Hospitals, Nursing Homes, Personal Care Homes, Auditoriums and Arenas | 50,000 Square feet gross floor area |
| Convenience Store, Gas Station, and Alternative Fuel Service Station | 4,000 Square feet gross floor area |
| Eating and Drinking Place | 40,000 Square feet gross floor area |
| Retail Sales/Shopping Centers | 40,000 Square feet gross floor area |
| Hotel | 50,000 Square feet gross floor area |
| Industrial Uses | 10,000 Square feet gross floor area |
| Light Manufacturing | 10,000 Square feet gross floor area |
| Heavy Manufacturing, Wholesale, Warehouse Truck | 5,000 Square feet gross floor area |

C. Size and Access:

    1. Each off-street loading space shall be not less than ten (10) feet in uniform width and sixty-five (65) feet in length. It shall be so designed so that vehicles using loading spaces are not required to back onto a public street or alley.

D. Off-Street Parking Size and Access:

    1. Off-street parking spaces shall have an area determined by their use. In the case of multi-family dwellings, mobile home parks, industrial and manufacturing establishments, warehouses, wholesale, and truck terminals, each space shall be not less than one hundred forty-four (144) square feet, being at least eight (8) feet wide and eighteen (18) feet long. For all other uses, each space shall have a uniform area of one hundred eighty (180) square feet, being at least ten (10) feet wide and eighteen (18) feet long. These uniform sizes shall be exclusive of access drives or aisles, and shall be in useable shape and condition. Except in the case of single-family dwellings, no parking area shall contain less than three (3) spaces. Parking areas shall be designed to provide sufficient turnaround area so that vehicles are not required to back onto public streets. Where an existing lot does not abut on a public or private street, alley or easement of access, there shall be provided an access drive leading to the parking or storage areas or loading spaces. Such access drive shall be consistent with requirements for private streets in the Robinson Township Subdivision and Land Development Ordinance. Access to off-street parking areas shall be limited to well-defined locations, and in no case shall there be unrestricted access along a street.

65

E.  Large Off-Street Parking Lots:

1.  Off-street parking lots in excess of twenty thousand (20,000) square feet shall meet the following standards for stormwater management: Minimum planting strips of ten (10) feet between the parking lot and all lot lines to be planted with one (1) hardwood or coniferous tree per each two (2) parking spaces or combination thereof. Trees which die shall be replaced annually. Eight percent (8%) of the total interior space shall be devoted to interior planting strips to be maintained in trees, shrubbery, annual plants or similar pervious dust and mud free material.

F.  Number of Parking Spaces Required:

1.  The number of off-street parking spaces required is set forth in Table 406B. Where the use of premises is not specifically mentioned, requirements for similar uses shall apply. If no similar uses are mentioned, the parking requirements shall be one (1) space for each two (2) proposed patrons and/or occupants of that structure. Where more than one (1) use exists on a lot, parking regulations for each use must be met, unless it can be shown that peak times will differ.

**Table 406B**
**Required Parking Spaces**

| Use | Parking Spaces Required |
|---|---|
| | |
| Single-Family Dwelling and Duplex | 2 per dwelling unit |
| Multi-Family Dwelling | 2.5 per dwelling unit |
| Mobile Home Parks | 2.5 per dwelling unit |
| | |
| Churches, Indoor Assembly Places | 1 per each 3 seats or 1 per each 4 persons permitted in maximum occupancy |
| Public Parks and Recreation | 1 per each 2,500 of lot area developed and used for the recreational activity |
| Public and Private Accredited Schools | 1 per each teacher and staff and 1 for each 4 classrooms plus 1 for each 2 students age 16 and over |
| Day Care Services | 1 per each teacher and staff and 1 for each 5 children |
| Nursing Homes and Personal Care Homes | 1 per each staff on the largest shift plus 1 per each 4 beds |
| Hospitals | 1 per each staff on the largest shift plus 1 per each bed |
| | |
| Car Washes, Auto Sales, Service and Repair, and Equipment Sales and Rentals | 1 per 5,000 square feet developed lot area for vehicle display and 1 per 300 square feet |

| | customer service area; to a required maximum of 30 designated customer parking spaces |
|---|---|
| Convenience Store, Gas Station, and Alternative Fuel Service Station, | 1 per 200 square feet gross floor area |
| Hotels, Motels, or Bed and Breakfast | 1 per guest room plus 1 per each employee on the largest shift |
| Funeral Homes | 25 for the first parlor or viewing room, plus 10 per each additional viewing room |
| Indoor Commercial Recreation | 1 per each 3 persons in maximum occupancy |
| Outdoor Commercial Recreation | 1 per each 2,500 of lot area developed and used for the recreational activity |
| Medical and Dental Office | 8 spaces per doctor |
| Professional Office and Banks | 1 per each 250 square feet of gross floor area |
| Furniture Stores | 1 per each 800 feet of gross floor area |
| Eating and Drinking Places | 1 per each 2 patron seats |
| Retail Stores/Shopping Centers | 1 per each 400 Square feet gross floor area |
| | |
| Business Parks, Light Manufacturing, Heavy Manufacturing, Truck Terminals and Warehouses | 1 per each employee on largest shift plus one visitor space per each 10,000 Square feet gross floor area |

G. Location and Parking:

1. Required parking spaces shall be located on the same lot with the principal use. The Zoning Hearing Board through Special Exception may permit parking spaces to be located not more than two hundred (200) feet from the lot of the principal use, if located in the same zoning district as the principal use, and the Board finds that it is impractical to provide parking on the same lot with the principal use.

H. Screening and Landscaping:

1. Off-street parking areas for more than five (5) vehicles, and off- street loading areas, shall be effectively screened on any side which adjoins a residential district (see definition of Screening) or use. In addition, there shall be a planting strip of at least five (5) feet between the front lot line and the parking lot. Such planting strip shall be suitably landscaped and maintained.

I. Minimum Distance and Setbacks:

1. No off-street loading or parking area for more than five (5) vehicles shall be closer than ten (10) feet to any adjoining property line containing a dwelling, residential district, school, hospital, or similar institution.

J. Surfacing:

1.  All parking and loading areas and access drives shall have a paved surface, graded with positive drainage to prevent the flow of surface water onto neighboring properties. Parking areas larger than ten thousand (10,000) square feet shall submit a plan, including drainage provisions, to the Township for approval. Lots shall be designed to provide for orderly and safe loading and parking.

K.  Any lighting used to illuminate off-street parking or loading areas shall be arranged so as to reflect the light away from the adjoining premises of any residential district or use and away from roads or highways and meet all standards of the Robinson Township Outdoor Lighting Ordinance.

## Section 407 Performance Standards

A.  No use of land or structure in any district shall involve, or cause, any condition or material that may be dangerous, injurious, or noxious to any other property or person in the Township.

B.  All non-agricultural uses of land must observe the following performance requirements:

1.  The developer shall provide assurances in writing that the proposed use will not be noxious or offensive by reason of emission of smoke, dust, gas fumes, odors, glare, light trespass, or vibration beyond the confines of the property on which the proposed use will be located, and that all applicable Federal and Commonwealth environmental statutes and regulations have been addressed.

2.  Areas of the property not covered by buildings shall be used only for vehicle parking, access driveways and walks, truck maneuvering and parking areas and planted and maintained lawns, landscaping, tree clusters, or buffer areas.

3.  Fire Protection:

(a) Fire protection and fighting equipment acceptable to the Board of Fire Underwriters shall be readily available when any activity involving the handling or storage of flammable or explosive material is carried on.

4.  Electric Disturbance:

(a) No activity shall cause electrical disturbances adversely affecting radio, television or other communication equipment in the neighboring area.

5.  Noise:

(a) Noise that is determined to be objectionable because of volume or frequency shall be muffled or otherwise controlled, except for fire sirens and related apparatus used solely for public safety purposes. Specifically, the following standards shall apply:

i.  The ambient noise level of any operation (other than those exempted below) shall not exceed the decibel levels prescribed. The sound pressure level or ambient level is the all-encompassing noise associated with a given environment, being a composite of sounds from any source, near and far. For the purpose of this Chapter, ambient noise level is the average decibel level recorded during observations taken in accordance with the procedure specified below, taken at any time when the alleged offensive noise is audible, including intermittent, but recurring, noise.

ii.  No operation or activity shall cause or create noise in excess of the sound levels prescribed below:

(1)  Farming and agriculture operations and/or uses are exempt.  All Residential areas shall comply with the exterior noise level resulting from any use or activity located on such lot exceed a maximum of 60 dBA.

(2)  C, LI Districts. At no point on or beyond the boundary of any lot within these districts shall the exterior noise level resulting from any use or activity located on such lot exceed a maximum of 65 dBA.

(3)  I District. At no point on or beyond the boundary of any lot within these districts shall the exterior noise level resulting from any use or activity located on such lot exceed a maximum of 75 dBA.

(4)  Where two or more zoning districts in which different noise levels are prescribed share a common boundary, the most restrictive noise level standards shall govern.  All farming and agriculture activities are exempt from the noise requirement in all zoning districts.

iii.  The following uses or activities shall be exempted from the noise regulations:

(1)  Noise emanating from construction or maintenance activities between 7:00 a.m. and 9:00 p.m.

(2)  Noise caused by safety signals, warning devices and other emergency-related activities or uses.

(3)  Noise emanating from public recreational uses between 7:00 a.m. and 10:00 p.m.

iv.  In addition to the above regulations, all uses and activities within the Township shall conform to all applicable County, State and Federal regulations. Whenever the regulations contained herein are at variance with any other lawfully adopted rules or requirements, the more-restrictive shall govern.

6. Vibrations:

(a) Vibrations detectable without instruments on neighboring property in any district shall be prohibited.

7. Odors:

(a) No use shall emit odorous gas or other odorous matter in such quantities as to be offensive at any point on or beyond the lot lines. The guide for determining such quantities shall be the 50% response level of Table 1 (Odor Thresholds in Air), "Research on Chemical Odors: Part I – Odor Thresholds for 53 Commercial Chemicals," October 1968, Manufacturing Chemists Association, Inc., Washington, D.C.

8. Glare:

(a) Lighting devices that produce objectionable direct or reflective glare greater than 0.5 foot-candle at any property line adjacent to an existing dwelling or public street shall not be permitted.

9. Erosion:

(a) No erosion by wind or water shall be permitted which carry objectionable substances onto neighboring properties.

10. Water Pollution:

(a) No building or zoning permit shall be issued until all applicable wastewater, storm-water, or erosion/sedimentation control permits have been obtained.

11. Proper Waste Disposal for Business Uses:

(a) The storage of all solid waste shall be practiced so as to prevent the attraction, harborage or breeding of insects or rodents, and to eliminate conditions harmful to public health or which create safety hazards, odors, unsightliness, or public nuisances.

    i. Any business producing municipal waste shall provide a sufficient number of approved collection containers to store all waste materials generated during periods between regularly scheduled collections, and shall place and store all waste materials therein.

    ii. Collection containers shall be kept tightly sealed or covered at all times. Solid waste shall not protrude or extend above the top of the container. Storage areas for collection containers shall contain a screen or screen plantings.

      iii. Collection containers shall be used and maintained so as to prevent public nuisances.

      iv. Bulky waste items such as furniture and appliances shall be stored in a manner that will prevent the accumulation or collection of water, the harborage of rodents, safety hazards, and fire hazards. Doors must be removed from all major appliances such as refrigerators and stoves.

      v. Open burning of solid waste materials by businesses is specifically prohibited.

C. The zoning officer shall investigate any purported violation of the performance standards and, subject to the approval of the Board of Township Supervisors, may employ qualified technical experts to assist in the determination of a violation. Costs of the services of such experts shall be paid by the owner or operator of the facility or use to be in violation if the facility or use is found to be in violation. If the facility or use is found to be in compliance with the performance standards, said costs shall be borne by the Township. If a complainant requests the enforcement by the Township and the facility or use is found to in compliance with the performance standards, said costs shall be borne by the complainant.

1. If the facility or use is found to be in violation, the owner or operator shall be given written notice of violation in accordance with Article 7 of this Chapter and a reasonable length of time to correct the violation. Failure to correct the violation shall be subject to the penalty provisions of this Chapter and shall result in the revocation of the certificate of occupancy for the facility or use.

## Section 408 Signs

A. Exempt Signs:

The following types of signs are permitted in all zoning districts, and are exempt from permitting requirement, but not from performance standards relative to traffic safety or overall sign limitations of any specific sign type or district.

1. Temporary signs announcing a campaign, drive or event of a civic, philanthropic, educational or religious organization, provided such sign shall not exceed thirty-two (32) square feet in area, is not posted more than sixty (60) days before the event, and shall be removed immediately upon the completion of the campaign, drive or event.

2. Temporary signs erected in connection with announcing the development or proposed development of the premises or property provided that the area of any such sign shall not exceed thirty-two (32) square feet. Not more than one (1) such sign shall be placed on the property held in single and separate ownership unless the property fronts on more than one (1) street, in which case one (1) such sign shall be permitted on each separate street frontage. Such signs shall be removed with ten (10) days after the development has been completed or the

71

last structure occupied, whichever occurs first. No such sign may be erected until all subdivision and land development approvals have been obtained.

3. Political signs announcing candidates seeking public office, a referendum, or similar political speech, of not more than thirty-two (32) square feet in size, not more than 30 days prior to and removed by ten (10) days after.

4. Religious symbols or displays or messages, and holiday displays or messages with no commercial content.

5. The flag of the United States, Commonwealth of Pennsylvania, or any state or nation.

6. Signs offering the sale or rental of the premises upon which the sign is erected, provided that the area of any such sign shall not exceed ten (10) square feet and not more than one (1) such sign shall be placed on the property unless the property offered is of greater than ten acres. In such cases, such signs may be of up to thirty-two (32) square feet in size, and one may be placed for each six-hundred (600) feet of road frontage.

7. Signs directing patrons to or advertising auctions, garage, or yard sales provided that they do not exceed four (4) square feet, are placed on site no more than seven days before the event, and are removed as soon as the event or activity has occurred.

8. Directory signs which list all the occupants of a multi-tenant or multiple-family building, or buildings in a multi-building development; provided, that the area of such signs does not exceed one-half (1/2) square foot per tenant or two (2) square feet per individual building, whichever is smaller.

9. Temporary signs of contractors, developers, architects, engineers, builders, and artisans, erected and maintained on the premises where the work is being performed, provided that the area of such sign shall not exceed sixteen (16) square feet in any Residential District and thirty-two (32) square feet in all other districts. Such signs shall be removed upon completion of the work.

10. Any signs not visible from outside a lot or building.

11. Displays of time and temperature with no other content.

12. Rest room, exit, public telephone, handicapped parking or access, and similar directional or informational signs placed for the benefit of the public or building tenants.

13. "No trespassing" signs, signs indicating the private nature of a road, driveway or premises, signs controlling hunting or fishing on the premises, provided that the area of each such sign shall not exceed six (6) square feet.

14. House and address numbers, home occupation, or nameplate sign displaying the name and address of the occupant or the profession or activity of the occupant of a dwelling unit, provided that not more than one (1) such sign shall be erected for each permitted use, and provided that the area of each such sign shall not exceed four (4) square feet and many not be illuminated.

15. Memorial signs or tablets denoting the date of erection of a building.

16. Temporary signs announcing the birth of a child, birthday commemoration, marriage, graduation, or similar event in the life a householder shall be permitted; provided such signs do not exceed thirty-two (32) square feet. In all residential areas the temporary signs are to be removed as soon as the event or activity has occurred or within ten (10) days.

17. Any sign warning of a hazard that contains no other information or commercial content.

18. Signs erected by the Township or an authorized entity that serve to provide directions and explanations for public recreational purposes and facilities, for dedication/memorial purposes, and to mark and explain historical events, persons or structures. Such signs shall not exceed sixteen (16) square feet in area. Such signs may include the name or logos of business or individuals who have sponsored a public improvement or general support of such facility.

19. Traffic signs and similar regulatory notices placed by a duly constituted governmental body.

20. Signs erected for the purpose of scoring or sponsoring an athletic event taking place upon the site, which may include the electronic scoring devices and names or logos of sponsors of the sign, provided there is no illumination of the sign at times when the activity is not taking place.

B. Performance Standards:

Except where specifically noted, all signs shall adhere to all performance standards.

1. Unless specifically exempted by Section 408A of this Ordinance, a permit must be obtained from the Township for the erection or alteration of any sign that results in any dimensional changes. Exemptions from the necessity of securing a permit, however, shall not be construed to relieve the owner of the sign involved from responsibility for its erection and maintenance in a safe manner and in a manner in accordance with all the other provisions of this Ordinance and other codes.

(a) No signs shall be permitted within public rights-of-way, except PennDOT-approved traffic signs and devices; signs and banners specially approved by the Township for decoration or promotion of community events and activities; signs not exceeding nine (9) square feet placed temporarily to

73

advertise the sale of real estate or a yard sale; political signs not exceeding nine (9) square feet placed temporarily; signs not exceeding nine (9) square feet placed temporarily to provide notice of or direction to a civic philanthropic, political, educational, or religious event or activity. The Township may require proof of insurance for any sign with a right-of-way.

(b) No person shall construct, erect, place, use or permit the use of any permanent or temporary sign or sign structure on private or public property except for the property owner or tenant, or a person with the express written consent of the property owner.

(c) No motor vehicle not licensed and inspected for travel on the highways of the Commonwealth shall be used as a sign. Any vehicle that has a business sign affixed must be parked within a lawful parking area, and may not be parked in a yard or setback area.

(d) Construction and Maintenance: All signs shall be constructed in a workmanlike fashion using durable materials. Signs shall be designed and constructed to withstand wind forces and in accordance with appropriate mechanical or electrical standards. The owners of signs shall keep them in safe and good repair. Signs which become deteriorated or otherwise present a public hazard shall be removed or repaired by the sign's owner. If the owner of a sign cannot be found or identified, the owner of the property whereon the sign is located shall be responsible for its repair or removal.

(e) No sign structure may block a vehicular line of sight for a driveway, access lane, or public street, or be placed at any location where by its position, shape, or color it may interfere with or obstruct the view of or be confused with any authorized traffic sign, signal or devices. Sign structures erected directly upon the ground within fifteen (15) feet of any vehicular driveway, or street intersection shall have at least three (3) feet six (6) inches of clear space between such sign and the ground; however, necessary supports may extend through such open space.

(f) No signs shall be permitted which are posted, stapled or otherwise attached to public utility poles.

(g) Nonconforming signs, once removed, shall be replaced only with conforming signs. Nonconforming signs may be repainted or repaired, providing such repainting or repairing does not exceed the dimensions of the existing sign.

C. Illumination:

1. Except as specifically provided under regulations for lawful illuminated signs or electronic signs by conditional use, no sign shall employ internal, direct, or intermittent light, electronic or movable text, strobes or other animations that may serve to distract motorists, or cause light trespass to abutting properties.

     2.  All electrical connections shall be serviced by underground wires which meet all relevant codes. No temporary signs shall be illuminated.

D.  Sign Permit Application:

All applications for signs as required under this Section shall be submitted to the Zoning Officer. The application shall contain:

     1.  Type, area and number of signs proposed.

     2.  Type of illumination proposed (if permitted), including the luminance proposed and direction of lighting.

     3.  For freestanding signs, a sketch showing the placement of the sign in relation to all driveways, vehicular rights of way, and cartways. The developer shall submit current sight distances, before and after erection of the sign with sufficient information to show that sight distances shall not be reduced.

     4.  An elevation sketch showing the relationship of the sign to the building, grade, all driveways, vehicular rights-of-way, and cartways.

     5.  A photograph or graphic rendition of the proposed sign copy, including all symbols, letter, and graphic elements show to scale and all structural elements intended to anchor the sign.

E.  Zoning District Sign Standards:

     1.  Each lawful use may have a combination of freestanding, roof, or wall signs meeting the standards of Table 408A. For the C, AC, and R-1 Districts, aggregates shall be calculated on a per lot basis. For the LI, C, and I Districts, aggregates may be based upon separate tenancy, subject to all multiple businesses on a single lot being an approved conditional use or land development plan.

**Table 408A**

| Zoning District | SC/AC | R-1A/R-1B/R-2 | **LI**/C/I |
|---|---|---|---|
| Signage Area Permitted | Aggregate of 64 Square Feet 2 Signs per Property | Aggregate of 32 Square Feet 2 Signs per Property | Aggregate of 400 Square Feet |
| Maximum Area per Sign | 32 Square Feet | 16 Square Feet | 144 Square Feet |
| Maximum Height per Sign | 12 Feet | 7 Feet | 25 Feet |
| Setback | 15 Feet from R-O-W 20 Feet from Property Lines | 15 Feet from R-O-W 20 Feet from Property Lines | 15 Feet from R-O-W 20 Feet from Property Lines |

| Illumination | Not permitted in SC, Or AC, External Illumination Permitted in the LI | Not permitted | Internal or External |
|---|---|---|---|

F.  Billboards:

    1.  Billboards shall be permitted as a conditional use in the LI Light Industrial and I Industrial District. Static Billboards are permitted in the LI Light Industrial and the I Industrial District. Electronic billboards shall be permitted only in the I Industrial District.

    (a)  No billboard shall be placed within one hundred fifty (150) feet of another on the same side of the road or one hundred (100) feet of another on the opposite side of a road.

    (b)  No billboard shall be placed within two hundred fifty (250) feet of any single family dwelling or place of worship.

    (c)  Such signs shall not be placed within two hundred fifty (250) feet of any road intersection, or at a curve or at any place where vehicular line-of-sight could be partially or completely obstructed.

    (d)  Billboards shall not exceed one hundred (100) square feet when viewed from its widest silhouette.

    (e)  Show evidence of compliance with all applicable regulations of the Pennsylvania Department of Transportation.

    (f)  Show compliance with all standards of the Robinson Township Outdoor Lighting Ordinance.

    (g)  Electronic billboard as permitted in the I Industrial District shall meet all standards for electronic signs under Sections 408.G.

G.  Electronic Signs:

    1.  Signs with video, LED or similar electronic changeable copy messages are permitted as a Conditional Use in the C Commercial District provided the developer of the sign shall clearly describe the type of electronic sign proposed as it meets the appropriate definition of electronic signs by sub-type under the definitions in this Ordinance.

    (a)  An electric sign shall meet all area and setback limitations for the district in which it is proposed.

(b) Additional Setback from Residential Districts: All portions of the sign structure must be a minimum distance of one hundred (100) feet from an abutting R-1 Residential District boundary.

(c) Setback from Other Electronic Changeable Copy, Electronic Graphic Display or Video Display Signs: Electronic signs must be separated from other electronic signs by at least thirty-five (35) feet. No more than one (1) electronic sign is permitted on a lot, regardless of how many tenants occupy that lot.

(d) Orientation: When located within one hundred fifty (150) feet of a residentially-used lot, all parts of the electronic changeable copy sign must be oriented so that no portion of the sign face is visible from an existing or permitted principal structure on that lot.

(e) Audio or Pyrotechnics: Audio speakers or any forms of pyrotechnics are prohibited in association with an electronic sign.

(f) The Supervisors may limit the hours of illumination or operation of electronic signs pursuant to preventing light trespass.

(g) The developer shall present an operating plan that includes proposed message duration, transitions between messages, and any transitional or other special effect proposed. The developer shall show driver reaction times, speed, and sight distances for vehicle that will be in view of the sign and show the sign will not present an undue distraction to motorists. The plan shall be based upon the vehicular speed limit of traffic on all streets from which the sign would be visible and estimated motorist reaction time. This should be based upon *The United States Sign Council On-Premise Signs Guideline Standards*, 2003 edition or as amended.

(h) Electronic signs may not function as billboards and must advertise on-site goods, services, or activities. Incidental advertising of community news, organizations, or non-profit events is permitted provided there is no purchase of time by the space by the organization being promoted.

## Section 409 Environmental Standards, Screening and Buffering

A. Environmental Standards:

1. Land shall be environmentally suitable for the purpose for which it is being developed.

2. Wetlands:

(a) Development, land use activity, and improvement that would entail encroachment into wetlands requires evidence that the appropriate agencies have been contacted and the required permits have been obtained.

3. Ground Cover and Landscaping:

(a) Vegetative cover shall be provided on all disturbed areas, excluding fallow agricultural fields, not covered by paving, stone or other solid material. The maintenance or use of native plant materials with lower water and nutrient requirements is encouraged.

4. Erosion and Sedimentation:

(a) All proposed development and existing land use activities which involve grading or excavation shall prepare an Erosion and Sedimentation Control Plan for review by the Washington County Conservation District.

5. Woodlands:

(a) Existing wooded areas can serve as an alternative to planted buffer areas and shall be protected to prevent unnecessary destruction. Healthy trees with a caliper of twelve (12) inches or more as measured four-and-a-half (4 ½) feet above existing grade, shall not be removed unless their location interferes with a planned improvement. At least fifty percent (50%) of the number of trees sized as above, as exist at the time of application, shall be maintained or replaced immediately after construction. Replacement trees shall be of a native species and have a minimum trunk caliper of two (2) inches at a height of six (6) inches above finished grade, and located within un-buildable sections of the site (e.g., floodplain, steep slope, setback areas). This Section only applies to land developments and does not apply to the practice of agricultural land clearing or the practice of forestry, which is a permitted accessory use in all zoning districts.

6. Steep Slopes:

(a) Proposed development in areas having slopes of sixteen percent (16%) or greater shall indicate the methods that will be used to protect water quality on and around the site from the adverse effects of the proposed use and shall provide a twenty-five (25) foot vegetative buffer consisting of native trees and other brushy perennial vegetation either along the boundary of the property with the lowest elevation or at the foot of the sloped-portion of the property if it lies interior to the boundary.

B. Screening and Buffering:

1. The following screening shall be employed where required by conditional use, or any supplementary regulation of the Robinson Township Zoning Ordinance.

(a) Type I Screening:

   i. To consist of a triple row of spruces or other evergreens planted at oblique lines to one another so that a continuous screen is provided. All trees shall

78

be a minimum of six (6) feet at the time of planting. Trees which die shall be replaced within six (6) months.  As an alternative to the triple row of Norway spruces, the developer shall maintain a fifty- (50) foot wide buffer yard of natural vegetation sufficient for screening. This buffer area shall not be used for parking or other uses. This buffer yard should maintain natural vegetation unless such vegetation is considered insufficient for shade screening, storm-water management or erosion control. In such case, the planting standards shall be twenty-eight (28) conifer and eight (8) deciduous trees per each five thousand (5,000) square feet of yard area. Trees shall be a minimum of six (6) feet at planting and replaced within six (6) months of death.

(b) Type II Screening:

    i.  A Type II screen shall consist of either:

        (1)  An opaque fence at least eight (8) feet in height; or

        (2)  A barrier fence at least eight (8) feet in height.

    ii.  On the outside perimeter of the fence, a ten (10) foot plant strip shall be maintained at a planting standard of ten (10) coniferous or deciduous trees, per one hundred (100) lineal feet. Trees shall be a minimum of six (6) feet tall at planting and replaced within six (6) months of death.

(c) Type III Screening:

    i.  Type III screening shall consist of both Type I and Type II, for a total width of no less than sixty-five (65) feet.

(d) Type IV Screening:

    i.  A type IV screening shall consist of a single row of any species of coniferous tree, shrub, or plant that will block a line of sight from the level of existing grade to at least four (4) feet in height at time of planting, and grow to at least six (6) feet in height.

(e) Alternate Landscaping Plans:

    i.  The Township Board of Supervisors may consider alternative forms of screening or buffering subsequent to review by the Planning Commission.

79

ARTICLE 5
PLANNED RESIDENTIAL DEVELOPMENT

**Section 500 Purpose**

The purpose of the PRD regulations is to create residential development which is more creative and imaginative and which will foster more efficient, aesthetic and desirable use of open areas than is generally possible under conventional zoning district controls and subdivision requirements. Further, these regulations are intended to promote more economical use of land potential while providing a latitude in building design, building placement, amenities and community facilities of appropriate quality, oriented to the specific development site characterized by special features of topography, shape or size, and at the same time preserve the natural scenic qualities of Robinson Township and the open spaces within the Township.

**Section 501 Application of Provisions**

PRD may be permitted in the LI, R-1 and R-2 Zoning Districts in Robinson Township, subject to the restrictions, qualifications and requirements cited in this Chapter, as enumerated herein below. Provisions of the zoning ordinance and subdivision ordinance concerned with dwelling type, bulk, density and open space shall not be applied when PRD proposals are approved, except when specifically indicated by the provisions contained in this Chapter. Mobile home parks may not be considered as a PRD, and must meet the standards of applicable zoning and subdivision and land development provisions. Where not specifically contained in this Chapter, procedures and administrative requirements for PRDs shall be consistent with Article VII of the Pennsylvania Municipalities Planning Code.

**Section 502 Ownership Requirements**

    A.  The minimum land area for a PRD shall be the following:

        1.  R-1 and R-2 Districts: twenty (20) contiguous acres.

    B.  LI District: ten (10) contiguous acres

    C.  The applicant for a PRD plan approval shall show proof of legal title or an executed binding sales agreement for the subject property.

    D.  The project shall be in single, legal as well as equitable, ownership prior to approval of the final development plan.

**Section 503 Availability of Public Services and Access**

    A.  An adequate supply of water shall be provided to all residential, non-residential, mixed-use, service, and accessory structures in a proposed PRDs. Where a public water supply system of satisfactory quantity, quality, and pressure is available, connection shall be made thereto and its supply shall be used exclusively. A PRD development shall not be permitted where a satisfactory public water supply system is not available.

Where a public supply of water is provided, fire hydrants shall be installed as agreed upon by the Board of Supervisors and the agency responsible for the water supply.

B. An adequate and safe sewerage system shall be provided to all residential, non-residential, mixed-use, service, and accessory structures in a PRD as defined by Township zoning and subdivision and land development ordinances, as well as any other requirements of the federal and state government.

C. The developer shall provide within the PRD a storm drainage system which shall be of sufficient size and design to collect, carry off and dispose of all predicable surface water run-off within the development and shall be so construed as to conform with the statutes, ordinances and regulations of the Commonwealth of Pennsylvania and the Township of Robinson. The adequacy of said facilities shall be determined by the Township Engineer.

D. All PRDs shall be regulated to the local and regional highway systems. The developer must demonstrate to the satisfaction of the Planning Commission, Board of Supervisors, the Township Engineer and appropriate officials of the Pennsylvania Department of Transportation that traffic circulation will not be adversely influenced, that additional traffic hazards will not be created and that public and private road systems are adequate in terms of traffic volume capacity and construction type to accommodate the projected PRD-generated traffic. Street construction in PRDs shall conform to all standards of the Robinson Township Subdivision and Land Development Ordinance and any associated specifications.

## Section 504 Administration

The PRD provisions of this Chapter shall first be administered by the Robinson Township Planning Commission which shall review all applications on the basis of specified standards, conditions, regulations and procedures and shall make recommendations to the Board of Supervisors which shall conduct public hearings and have final authority to approve, modify or disapprove development plans.

## Section 505 Development Standards

505.1 R-1 and R-2 Districts:

A. Permitted Uses:

    1. Land and buildings may be used for the following purposes:

    (a) Residential Uses: Residential uses including detached, semi-detached (duplex), attached (townhouses, quadplexes) or multi-family (e.g., garden apartments, mid-rise apartments) structures, or any combination thereof. In developing a balanced community, the use of a variety of housing types shall be deemed most appropriate in keeping with the intent of this part.

    (b) Non-residential Uses and Mixed-use:

81

      i.   Non-residential uses such as accessory commercial, service, and other non-residential uses may be permitted or required where such uses are scaled primarily to serve the residents of the PRD and the surrounding community. Because of the primarily residential nature of a PRD, only those commercial uses compatible with reasonably associated residential development shall be permitted, but not to exceed fifteen percent (15%) of land area. No industrial uses shall be permitted.

     ii.  Accessory retail dining and service facilities may be permitted by specific approval of the Board of Supervisors.

   iii.  The proposed locations for non-residential locations in a PRD in this Section must be approved by the Board of Supervisors.

   iv.  Mixed-use structures may be permitted by specific approval of the Board of Supervisors.

(c)  Home Occupations: Home occupations pursuant to the zoning ordinance.

(d)  Licensed nursing homes or personal care homes provided that all lot yard height and coverage standards in the applicable district, as well as any special conditions otherwise applicable to such structures under the Township zoning ordinance, can be complied with. Such facilities shall not exceed a ratio of one (1) bed per each dwelling unit.

(e ) An elderly community which has a site area over fifty (50) acres, houses the elderly in individual dwelling units, has open space, recreation and community facilities designed specifically to provide for special needs of the elderly and includes integral facilities for extended care for residents, provided that the health care facilities shall have no more than one (1) bed for every two (2) dwelling units.

  2.  Customary Accessory Uses: Customary accessory uses, such as private garages, parking areas for guests, garden and storage sheds, pet shelters, signs recreation community buildings and uses, churches, schools, etc., may be permitted if appropriate to the overall development of the Township.

  3.  No PRD shall be approved unless it is consistent with the purposes of the regulations as stated in Article 501 of this Section. Each PRD shall be planned as an entity, and such planning shall include a unified site plan, consideration of land uses and usable open spaces, site-related vehicular and pedestrian circulation systems, and preservation of significant natural features. The plan may consider a variety of housing types

B.  Density:

  1.  Residential density shall not exceed eight (8) units per gross acre of land in the R-1 and R-2 District. Buildable acres shall be determined by determining total

acreage less all land within the rights-of-way of planned or exiting public streets or highways, or within the rights-of-way of existing or proposed overhead utility lines, all land in designated floodplain floodway, and all land in designated wetlands or open water, and all land containing slopes greater than twenty-five percent (25%). Buildable acres may be decreased further if the following environmental conditions are present in over sixty percent (60%) of the gross acreage:

(a) Non-floodway floodplain areas.

(b) Lands containing steep slopes of sixteen percent (16%) to twenty-four percent (24%).

2. The Township also reserves the right to reduce density levels in any proposed PRD if it determines that:

(a) There is inconvenient or inadequate vehicular access to the development.

(b) Traffic congestion resulting in level of service ratings of "D," "E," or "F" as determined by PennDOT criteria, or a decrease of two (2) or greater level ratings, or similar conditions as determined by a traffic analysis on adjoining streets will be generated.

(c) An excessive burden will be placed upon the ability of responsible public agencies to provide needed public facilities to serve the proposed development.

C. Lot and Structure Requirements:

1. Lot Size:

(a) There shall be no minimum lot size or lot width for residential structures in a PRD provided the density requirements of Section 505.1 A are met.

2. Every dwelling shall have access to a public street, court, walk or other area dedicated to public use

3. Setback:

(a) Minimum Building Setback on Perimeter: In the R-1 and R-2 Districts where a PRD is authorized, all structures shall be located at least forty (40) feet from the boundary of the PRD site. No accessory structure and no off-street parking shall be located in this required perimeter setback.

(b) Internal Setbacks and Distance between Buildings:

i. The minimum required front yard setback from a public or private street for all dwelling types shall be fifteen (15) feet. If individual lots are not proposed for fee simple ownership, there shall be no other required setback

83

internal to the PRD, provided that where two or more principal residential buildings (regardless of dwelling type) are proposed on the same lot. The minimum distance between the buildings shall be fifteen (15) feet.

4.  In the case of lots proposed for fee simple ownership, all principal structures shall be set back a minimum of fifteen (15) feet from a rear property line. Decks or other structures attached to the principal building may encroach into the rear yard only if the rear yard lot line adjoins common open space. Attached units shall have a zero side yard along common walls. All other side yards shall be a minimum of ten (10) feet.

5.  Maximum Height:  Forty-five (45) feet (not to exceed 4 stories)

6.  Location of Structures: The proposed location and arrangement of structures shall not be detrimental to existing or prospective adjacent structures or to existing or prospective development of the neighborhood.

7.  The site shall be such a character as to avoid danger to health or peril from fire, flood or other hazards.

D.  Open Space: as required by Section 506 A of this article

E.  Parking: as required by Section 506 B of this article

F.  Circulation: as required by Section 506 C of this article

G.  Landscaping: as required by Section 506 D of this article

H.  Signs: as required by Section 506 E of this article

I.  Waste Disposal: as required by Section 506 F of this article

505.2 LI:

A.  Permitted Uses:

1.  Land and buildings may be used for the following purposes:

(a) Residential Uses: Residential uses including detached, semi-detached (duplex), attached (townhouses, quadplexes) or multi-family (e.g., garden apartments, mid-rise apartments) structures, or any combination thereof. In developing a balanced community, the use of a variety of housing types shall be deemed most appropriate in keeping with the intent of this part.

(b) Non-residential Uses and Mixed-use:

i.  Non-residential uses such as accessory commercial, service, and other non-residential uses may be permitted or required where such uses are scaled primarily to serve the residents of the PRD and the surrounding

community. Because of the primarily residential nature of a PRD, only those commercial uses compatible with reasonably associated residential development shall be permitted, but not to exceed twenty-five percent (25%) of the land area. No industrial uses shall be permitted.

    ii.  Accessory retail dining and service facilities may be permitted by specific approval of the Board of Supervisors.

    iii. The proposed locations for the commercial areas must be approved by the Board of Supervisors.

    iv. Mixed-use structures may be permitted by specific approval of the Board of Supervisors.

(c) Home Occupations: Home occupations pursuant to the zoning ordinance.

(d) Customary Accessory Uses: Customary accessory uses, such as private garages, parking areas for guests, garden and storage sheds, pet shelters, signs, recreation community buildings and uses, churches, schools etc., may be permitted if appropriate to the overall development of the Township.

B.  Density:

    1.  The average or overall density for all types of combined residential units shall not exceed eight (8) units per gross acre of land within the LI District. If less than thirty percent (30%) of the gross acres are considered buildable acres, the density shall be reduced to six (6) units per acre in LI. Buildable acres shall be determined by determining total acreage less all lands within the rights-of-way of planned or existing public streets or highways, or within the rights-of-way of existing or proposed overhead utility lines, all land in designated floodplain floodway, all land in designated wetlands or open water, and all land containing slopes greater than twenty-five (25%).

    2.  The Township also reserves the right to reduce density levels in any proposed PRD if it determines that:

(a) There is inconvenient or inadequate vehicular access to the development.

(b) Traffic congestion resulting in level of service ratings of "D," "E," or "F" as determined by PennDOT criteria, or a decrease of two (2) or more greater level ratings, or similar conditions as determined by a traffic analysis on adjoining streets will be generated.

(c) An excessive burden will be placed upon the ability of responsible public agencies to provide needed public facilitates to serve the proposed development.

C.  Lot and Structure Requirements:

1. Lot Size:

(a) There shall be no minimum lot size or lot width for residential attached (townhouses, quadplexes) or multi-family (e.g., garden apartments, mid-rise apartments) structures in a PRD provided the density requirements of Section 505.1 A are met.

(b) The minimum lot area for residential detached and semi-detached (duplex) structures in a PRD shall not be reduced to less than the following minimums:

    i.  Detached: 3,800 square feet.

    ii.  Semi-detached (duplex): 5,775 square feet (2,888 square feet per unit).

(c) Every dwelling shall have access to a public street, court, walk or other area dedicated to public use.

2. Setbacks:

(a) Minimum Building Setback on Perimeter: In the LI District where a PRD is authorized, all structures shall be located at least forty (40) feet from the boundary of the PRD site. No accessory structure and no off-street parking shall be located in this required perimeter setback.

(b) Internal Setbacks and Distance between Buildings:

    i.  The minimum required front yard setback from a public or private street for all dwelling types shall be fifteen (15) feet. If individual lots are not proposed for fee simple ownership, there shall be no other required setback internal to the PRD, provided that where two or more principal residential buildings (regardless of dwelling type) are proposed on the same lot. The minimum distance between the buildings shall be fifteen (15) feet.

    ii.  In the case of lots proposed for fee simple ownership, all principal structures shall be set back a minimum of fifteen (15) feet from a rear property line. Decks or other structures attached to the principal building may encroach into the rear yard only if the rear yard lot line adjoins common open space. Attached units shall have a zero side yard along common walls. All other side yards shall be a minimum of ten (10) feet.

3. Maximum Height: No structure shall exceed a height of six (6) stories, which shall not exceed sixty (60) feet measured from the lowest point of intersection of the structure with the ground to the highest peak of the roof.

4. Location of Structures: The proposed location and arrangement of structures shall not be detrimental to existing or prospective adjacent structures or to existing or prospective development of the neighborhood.

86

    5.  The site shall be of such a character as to avoid danger to health or peril from fire, flood or other hazards.

D.  Open Space: as required by Section 506 A of this article.

E.  Parking: as required by Section 506 B of this article.

F.  Circulation: as required by Section 506 C of this article.

G.  Landscaping: as required by Section 506 D of this article.

H.  Signs: as required by Section 506 E of this article.

I.  Waste Disposal: as required by Section 507 F of this article.

## Section 506 General Requirements for Planned Residential Development

A.  Open Space:

    1.  Area Limitations for Various Uses: Within the PRD, the following percentages of the total gross land area shall be devoted to specified uses indicated herewith:

    (a)  R-1 and R-2:

        i.  A maximum of eighty percent (80%) of gross acreage for residential use. Land devoted to residential use shall be deemed to include those streets, alleys, parking areas, private open spaces and courts which abut and primarily service residences or groups of residences:

            (1)  A maximum of fifteen percent (15%) of this eighty percent (80%) may be used for accessory retail, dining and service facilities and parking associated with these uses.

        ii.  A minimum of twenty percent (20%) of gross acreage for open space uses:

            (1)  Open space shall not include space devoted to streets and parking.

    (b)  LI:

        i.  A maximum of eighty-five percent (85%) of gross acreage for residential use. Land devoted to residential use shall be deemed to include those streets, alleys, parking areas, private open spaces and courts which abut and primarily service residences or groups of residences:

            (1)  A maximum of twenty-five percent (25%) of this eighty-five percent (85%) may be used for accessory retail, dining and service facilities and parking associated with these uses.

ii.  For tracts of twenty (20) acres or less, a minimum of ten percent (10%) of gross acreage shall be set aside for active and passive open space uses:

(1)  Open space shall include space devoted to streets and parking.

iii.  For tracts of twenty (20) acres or larger, a minimum of five percent (5%) of gross acreage shall be set aside for active and passive open space uses:

(1)  Open space shall include space devoted to streets and parking.

2.  Open space uses may be any combination or single use listed below:

(a)  R-1 and R-2:

i.  Timber management and forestry.

ii.  Agriculture.

iii.  Equestrian activities by community residents.

iv.  Golf courses.

v.  Scenic areas and vistas.

vi.  Fishing, hunting, wildlife observation, and similar outdoor recreational pursuits.

vii.  Areas for conservation of unique natural and historic features.

viii.  Developed parklands.

(1)  Parks.

(2)  Parklets.

(3)  In addition to the residential uses permitted in a PRD, recreation facilities designed for the use of the residents of the PRD shall be permitted, including but not limited to, hiking, biking or exercise trails; tennis, paddle tennis, basketball, volleyball or other playing courts; swimming pool and related facilities; community building for meetings and social activities; picnic pavilions; other active and passive recreational uses deemed appropriate to the proposed residents of the PRD by the Board of Supervisors.

ix.  Unless devoted to agricultural or forest uses, these areas must be operated and maintained by a land trust, government, homeowners' association, or similar responsible body to ensure maintenance or property management in perpetuity. If devoted to agriculture or private forestry, means for

appropriate permanent dedication or deed covenants to prevent its development shall be required prior to approval.

(b) LI:

    i.  Timber management and forestry.

    ii.  Golf courses and putting greens.

    iii.  Scenic areas and vistas.

    iv.  Areas for conservation of unique natural and historic features.

    v.  Parks.

    vi.  Parklets

    vii.  In addition to the residential uses permitted in a PRD, recreation facilities designed for the use of the residents of the PRD shall be permitted, including but not limited to, hiking, biking or exercise trails; tennis, paddle tennis, basketball, volleyball or other playing courts, swimming pool and related facilities; community building for meetings and social activities; picnic pavilions; other active and passive recreational uses deemed appropriate to the proposed residents of the PRD by the Board of Supervisors.

3.  Peripheral Open Space:

(a) R-1 and R-2:

    i.  Required setback areas from lot lines and road rights-of-way shall be maintained as permanent open space. This space shall surround the entire PRD. Developer must ensure that the peripheral open space remains undeveloped or utilized for agriculture/forest use in perpetuity. If the lands are to be used as parklands or golf courses, the developer shall submit a plan for a homeowners' association or similar management structure to assure maintenance in perpetuity.  Unless devoted to agriculture, or containing natural vegetation of suitable size, this peripheral open space shall be planted with a buffer yard which shall meet minimum standards as contained in the I – Industrial Section of this Ordinance. The Township may require buffering between agricultural areas and other uses within the PRD.

(b) LI:

    i.  A perimeter buffer shall be required along the outer boundaries of the PRD development tract, but not between adjacent parcels within the

development if certain conditions exist on the adjacent tracts, as specified below:

(1) Perimeter buffer of a minimum of twenty-five (25) feet in width shall be provided where the tract abuts any roadway.

(2) A perimeter buffer of a minimum of twenty-five (25) feet in width shall be provided where the tract abuts an existing tract of agricultural zoned land or where nonresidential/mixed uses within the PRD abut existing residential uses.

(3) A perimeter buffer may be used for agricultural purposes, including wood lots, with the approval of the Board of Supervisors. Perimeter buffers used for agricultural purposes shall be a minimum of one-hundred (100) feet in width from the boundary of the developed area to the property line of the tract and shall provide for appropriate buffering adjacent to the developed area of the property.

(4) A perimeter buffer with a minimum width of twenty (20) feet shall be required where residential uses in the PRD abut existing residential uses on the adjacent tracts.

(5) A perimeter buffer with a minimum width of six (6) feet shall be required between commercial uses on adjacent lots, except where cross-access easements between shared parking exist or are approved as part of the PRD plan.

(6) Unless the perimeter buffer abutting any roadway contains existing mature trees and vegetation, such areas shall be planted with a mixture of predominantly native species trees at a minimum rate of one (1) tree for every forty (40) feet.

4. A PRD shall be approved subject to the submission of a legal instrument or instruments setting forth a plan or manner of permanent care and maintenance of such open spaces, recreational areas and communally owned facilities. No such instrument shall be acceptable until approved by the Township Solicitor as to legal form and effect, and the Board of Supervisors as to suitability for the proposed use of the open areas.

5. In cases where the Township will not be accepting dedications of streets, recreation areas or open spaces to be used for general recreation, the landowner shall provide for an organization or trust for ownership and maintenance.

6. If the common open space is deeded to a homeowners' association or a nonprofit corporation established on a membership basis, the developer shall file a declaration of covenants and restrictions that will govern the associated, to be submitted with the application for the preliminary approval. If there is a homeowners' association under the Uniform Planned Community Act, the

developer must file a declaration of rule and regulations. The provisions shall include but not be limited to the following:

(a) The homeowners' association or nonprofit corporation must be set up before the dwellings are sold.

(b) Membership must be mandatory for each homebuyer and any successive owner.

(c) The open space restrictions must be permanent, not just for a period of years.

(d) The association must be responsible for liability insurance, local taxes, and the maintenance of recreational and other facilities.

(e) Homeowners must pay their pro-rata share of the cost. The assessment levied by the association can become a lien on the property.

(f) The association must be able to adjust the assessment to meet changed needs.

(g) The Township may, at any time and from time to time, accept the dedication of land or any interest therein for public use and maintenance, and the Township may require, as a condition of the approval of a PRD, that land proposed to be set aside for common open space be dedicated or made available to public use.

7. Maintenance by Township

(a) In the event that the organization established to own and maintain open space, or any successor organization, shall at any time after establishment of the PRD fail to maintain the open space in accordance with the development plan, the Township may serve written notice upon such organization or upon the residents of the PRD setting forth the manner in which the organization has failed to maintain the open space in reasonable condition, and said notice shall include a demand that such deficiencies of maintenance be corrected within thirty (30) days thereof, and shall state the date and place of hearing thereon which shall be held within fourteen (14) days of the notice. At such hearing, the Township may modify the terms of the original notice as to the deficiencies and may give an extension of time within which they shall be corrected. If the deficiencies set forth in the original notice or in the modification thereof are not corrected within thirty (30) days or an extension thereof, the Township in order to preserve the taxable values of the properties within the PRD and to prevent the open space from becoming a public nuisance, may enter upon said open space, and maintain the same for a period of one (1) year.

(b) Maintenance by the Township shall not constitute a taking of the open space, nor vest in the public any rights to use the same. Before the expiration of one (1) year, the Township shall, upon its initiative or upon the request of the organization responsible for the maintenance of the open space, call a public hearing upon notice to such organization, or to the residents of the PRD, to be held by the Township Supervisors, at which hearing such organization of the

residents of the PRD shall show cause why such maintenance by the Township shall not, at the option of the Township, continue for a succeeding year. If the Township Supervisors shall determine that such organization is ready and able to maintain said open space in reasonable condition, the Township shall cease to maintain said open space at the end of said year. If the Township Supervisors shall determine that such organization is not ready and able to maintain said common open space during the following year and, subject to a similar hearing and determination, in each year thereafter. The decision of the Township Supervisors shall be subject to appeal to court in the same manner, and within the same time limitation, as is provided for zoning appeals by the Pennsylvania Municipalities Planning Code Act 247 of 1968, as amended.

(c) The cost of such maintenance by the Township shall be assessed ratably against the properties within the PRD that have a right of enjoyment of the open space, and shall become a lien on said properties. The Township at the time of entering upon the open space for the purpose of maintenance shall file a notice of lien in the office of the Prothonotary of the County, upon the properties affected by the lien within the PRD.

B.   Parking:

Parking shall be provided as follows:

(d) Residential dwelling units:

    i.   The minimum off-street parking shall be provided for each dwelling unit type according to the following requirements:

        (1)  Single-family dwelling unit: two (2) spaces

        (2)  Two-family dwelling unit: two (2) spaces per dwelling unit

        (3)  Multi-family dwelling unit:

            i.   Studio units: one and one-half (1.5) spaces

            ii.  One bedroom units: one and one-half (1.5) spaces

            iii. Two or bedroom units: two (2) spaces

    ii.  Townhouse or garden apartment: two (2) spaces per unit

    iii. Mid-rise apartment: one (1) space per unit

(e) Non-residential and Mixed-use Structures:

    i.   The minimum off-street parking shall be provided for each non-residential use according to the standards required in section 407.F.

92

      ii.  The minimum off-street parking in mixed-use structures shall be provided for each portion of the structure dedicated to residential and non-residential according to the standards required listed below:

          (1)  Residential: section 506.B.1.

    8.  Non-residential: section 407.F.

    9.  All parking areas shall be landscaped and paved according to Article VIII, Appendix 1 of the Subdivision and Land Development Ordinance, and visually screened from adjacent structures through the use of planting, grade changes or similar appropriate means approved by the Board of Supervisors.

B.  Circulation:

    1.  Vehicular access within the PRD shall be designed to permit smooth traffic flow with minimum hazard to vehicular or pedestrian traffic.

    2.  Streets in a PRD may be dedicated to public use or may be retained under private ownership and shall conform to Article VIII, Appendix 1 of the Subdivision and Land Development Ordinance.

C.  Landscaping:

    1.  A general landscaping plan shall be required at the time of the original submission to be followed by a detailed landscaping plan prior to final approvals. The detailed plan shall show the spacing, sizes and specific types of landscaping materials.

    2.  Existing trees shall be preserved whenever possible. The location of trees shall be considered when planning the site elements such as open space, buildings, walks, paved areas, playgrounds, parking, circulation systems and finished grade levels.

    3.  A grading plan and an erosion and sedimentation plan shall be provided prior to any construction or site development activity which will minimize excavation, earth moving procedures, and other changes to the landscape in order to ensure preservation and prevent despoliation of the character of the project site.

    4.  All manufactured slopes shall be planted or protected from erosion and shall be of a character to blend with surrounding terrain.

    5.  Layout of parking areas, service areas, entrances, exits, yards, courts and landscaping, and control of signs, lighting, noise or other potentially adverse influences shall be established in a manner which will protect residential character within the PRD and in any adjoining district.

6. Within a PRD, all utilities including telephone, television cable and electrical systems shall be installed underground whenever possible, provided, however, appurtenances to these systems which require on-grade installation must be effectively screened.

D. Signs:

1. All sign internal installations and lighting of signs shall meet the standards for signs established for residential districts by this Ordinance.

2. Plans shall indicate the location, size and character of any sign within the PRD intended to be seen from public ways outside the district.

3. No more than two (2) sign surfaces, each with surface area not exceeding twenty (20) square feet, shall be permitted at any principal entrance to the district.

E. Waste Disposal:

1. Adequate provision shall be provided for garbage and trash removal.

**Section 507 Review Process for Approval**

A. Following conditional use approval by the Township, the developer shall obtain required approvals for PRDs by following a review process which shall consist of a tentative development plan, public hearings and approvals, and a final development plan.

B. The Planning Commission shall review the initial submission and preliminary development plan and make recommendations to the Board of Supervisors. The Board of Supervisors shall hold public hearings and make a decision on the final development plan.

C. Initial Submission:

1. Each applicant shall confer with the Robinson Township Planning Commission at a scheduled monthly meeting.

2. A written statement of planning objectives to be achieved by the developer shall be included in the initial application. The statement shall include a description of the character of the proposed development and the rationale behind the assumptions and choices made by the developer. Every application shall be based on and interpreted in relation to the community development goals and objectives for Robinson Township.

3. No formal requirement for plan or material submission is established for the initial submission. However, the higher the level of data the developer presents, such as sketch plans, land use concepts, density ranges proposed, ancillary use

proposals, site information, existing perimeter conditions, access considerations and utility needs, the more direction he will receive for guidance in preparing an acceptable plan for local approval.

4.  No Final Development Plan shall be considered for formal Planning Commission review until the Preliminary Development Plan has been filed.

D.  Preliminary Development Plan (Application for Tentative Approval):

A preliminary development plan shall be presented in sufficient detail to provide the Township Planning Commission with a major substantive review of the proposed PRD. This step of approval process shall be initiated by, or on behalf of, the developer, through the submission of a formal application for tentative approval of a PRD to the Township Planning Commission. The application shall be submitted no later than fourteen (14) days prior to the regular monthly meeting of the Planning Commission at which the development plan is to be considered. The following documentation shall be submitted in support of the application:

1.  Written Documents:

(a)  The title under which the PRD is to be recorded.

(b)  A legal description of the total site proposed for development including a statement of present and proposed ownership, present and proposed zoning, and the names and addresses of all owners of adjacent property.

(c)  A statement of planning objectives as detailed under 507.C.2.

(d)  A statement of the developer's intentions with regard to the future selling or leasing of all or portions of the PRD, such as land areas, dwelling units, etc.

(e)  Quantitative data for the following: total number and type of dwelling units; parcel size; proposed lot coverage of buildings and structures; approximate gross and net residential densities; total amount of open space, including a separate figure for usable open space; total amount of nonresidential construction; including a separate figure for  commercial or institutional facilities; economic feasibility studies or market analysis where necessary, and other studies as may be designated by the Planning Commission.

(f)  The name and address of the owner of the subdivision or land development, or of his agent, if any, and of the subdivider or developer.

(g)  The name and address of the engineer or surveyor together with his registration number and seal attached.

2.  Site Plan and Supporting Maps: A site plan at a scale no smaller than one (1) inch equals one hundred (100) feet (except where total size of PRD dictates a

95

smaller scale) and any maps necessary to show the major details of the proposed PRD shall contain the following minimum information:

(a) The existing site conditions including contours at a minimum interval of two (2) feet up to ten percent (10%) slope and a minimum interval of five (5) feet for over ten percent (10%) slope, watercourse, floodplains, unique natural features, and forest cover and other natural vegetation considered significant by the Planning Commission and the Township Engineer.

(b) Proposed Lot Lines and Plot Designs: The plot and property lines of the proposed plan to include their courses and distances and the interior angles of their intersections with the boundary lines of adjacent property.

(c) The location and floor area of all existing and proposed buildings, structures and other improvements, including maximum heights, types of dwelling units by code, density per type, and nonresidential structures, including commercial facilities. All structures shall be distinguished and identified on the plan by code. Preliminary evaluations and/or architectural renderings of typical structures and improvements shall be provided. Such drawings shall be sufficient to relay the basic architectural intent of the proposed improvements but should not be encumbered with final detail at this stage.

(d) The location and size in acres or square feet of all areas to be conveyed, dedicated or reserved as common open spaces, public parks, recreational areas, school sites and similar public and semi-public uses. The form of organization proposed to own and maintain the open space.

(e) The existing and proposed circulation system of arterial, collector and local streets including off-street parking areas, service areas, loading areas and major points of access to public rights-of-way, including major points of ingress and egress to the development. Notations of proposed ownership, public or private, should be included where appropriate. Detailed engineering drawings of cross sections and street standards shall be handled in the final development plan stage.

(f) The existing and proposed pedestrian circulation system, including its interrelationship with the vehicular circulation system, including proposed treatments of points of conflict.

(g) The existing and proposed utility systems including sanitary sewers, storm sewers and water, electric, gas and telephone lines.

(h) A general landscape plan indicating the treatment of materials used for private and common open space. The landscape plan should be in general schematic form at this stage. A grading plan is not required at this stage.

(i) Enough information on land areas adjacent to the proposed PRD to indicate the relationships between the proposed development and existing and proposed

adjacent areas, including land uses, zoning classifications, densities, circulation systems, public facilities and unique natural features of the landscape.

(j)  The proposed treatment of the perimeter of the PRD, including materials and techniques used such as screens, fences and walls.

(k)  The substance of any covenants, grants, easements or other restrictions to be imposed upon the use of lands or buildings in the development.

(l)  Any additional information as required by the Planning Commission necessary to evaluate the character and impact of the proposed PRD.

3.  Projected Scheduling of Phases: In the case of development plans which call for development over a period of years, a schedule shall be provided showing the proposed times within which applications for final approval of all sections of the PRD are intended to be filed. This schedule shall be reviewed annually with the Planning Commission by the developer on the anniversary of the tentative approval, until the development is completed and accepted. It shall be the obligation of the developer to request said reviews in writing within the thirty- (30) day period prior to the anniversary date of the tentative approval. The time period between grant of tentative approval and application for final approval shall not be less than ninety (90) days and in the case of developments to be carried out over a period of years, the time between applications for final approval of each part of a plan shall be not less than twelve (12) months.

E.  Public Hearings and Approvals:

1.  Within sixty (60) days following the regular monthly meeting of the Planning Commission at which the application for tentative approval of a PRD is officially reviewed, a public hearing pursuant to public notice on said application shall be held by the Board of Supervisors. The Chairman, or in his absence the Acting Chairman, may administer oaths and compel the attendance of witnesses. All testimony by witnesses at any hearing shall be given under oath and every party of record at a hearing shall have the right to cross-examine adverse witnesses.

2.  A verbatim record of the hearing shall be caused to be made by the governing body whenever such records are requested by any party to the proceedings; the cost of making and transcribing such a record shall be borne by the party requesting it and the expense of copies of such record shall be borne by those who wish to obtain such copies. All exhibits accepted in evidence shall be identified and duly preserved or, if not accepted in evidence, shall be properly identified and the reason for the exclusion clearly noted in the record.

3.  The Board of Supervisors may continue the hearing from time to time, provided, however, that in any event, the public hearing or hearings shall be concluded within sixty (60) days after the date of the first public hearing.

97

4. Approval or disapproval:

(a) The Robinson Township Board of Supervisors, within sixty (60) days following the conclusion of the public hearing, shall, by official written communication to the developer, either:

    i.  Grant tentative approval of the development plan as submitted;

    ii.  Grant tentative approval subject to specified conditions not included in the development plan as submitted; or

    iii.  Deny approval.

(b) Failure to so act within said period shall be deemed to be a grant of tentative approval of the development plan as submitted. In the event, however, the tentative approval is granted subject to conditions, the developer may, within thirty (30) days after receiving a copy of the official written communication of the Board of Supervisors, notify such body of his refusal to accept all said conditions, in which case, the Board of Supervisors shall be deemed to have denied tentative approval of the development plan. In the event the developer does not, within said period, notify the Board of Supervisors of his refusal to accept all said conditions, tentative approval of the development plan will all said conditions shall stand as granted.

(c) The Board of Supervisors in its official written communication to the developer, a copy of which shall be submitted to the Planning Commission, shall indicate not only its decision but also findings of fact resolving:

    i.  The extent to which the development plan is or is not consistent with the Robinson Township Comprehensive Plan;

    ii.  The extent to which the development plan departs from zoning and the subdivision regulations otherwise applicable to the subject property, and the reasons why such departures are or are not deemed to be in the public interest;

    iii.  The purpose, location and amount of the common open space in the development plan and proposals for maintenance and conservation of the common open space;

    iv.  The merits of the physical design including the manner in which the design does or does not make adequate provisions for public service, provide adequate control over vehicular traffic and furthers the amenities of light and air, recreation and visual enjoyment;

    v.  The relationship, beneficial or adverse, of the proposed PRD to the neighborhood in which it is proposed to be established; and

vi. The adequacy of the terms and conditions governing the development intended to protect the interests of the public and the residents of the PRD if such development is carried out over a period of years.

(d) The Secretary of Robinson Township shall certify two (2) copies of the official written communication.  One (1) copy shall be retained by the Board of Supervisors and the other sent to the developer via certified mail.

(e) Tentative approval of a development plan, whether conditional or unqualified, shall not qualify a plat of a PRD for recording nor authorize development or the issuance of any building or construction permits.  Except for the terms specified by a tentative approval, a tentative approval shall not be modified or revoked nor otherwise impaired by action of the municipality pending the applications for final approval provided that the applications for final approval are filed no later than ninety (90) days after the date of tentative approval.

(f) The approval tentative plan shall be submitted to the Washington County Planning Commission for review and comments.

(g) In the event that the development plan is given tentative approval and thereafter, but prior to final approval, the developer shall elect to abandon said development plan and shall so notify the Secretary of Robinson Township in writing, or in the event the developer shall fail to file application or applications for final approval within the required period of time or times, as the case may be, the tentative approval shall be deemed to be revoked and all that portion of the area included in the development plan for which final approval has not been given shall be subject to those local ordinances otherwise applicable thereto.

F.  Final Development Plan:

After the preliminary development plan is approved by the Planning Commission, the developer shall thereafter submit detailed plans for any part or section of the land for which he desires final approval.  An application for final approval shall be submitted to the Secretary of Robinson Township at least twenty (20) days prior to the regular Planning Commission meeting at which the application is to be considered.  The Planning Commission shall review the detailed plans to determine if they comply with this Section and with the overall plan originally submitted by the developer and shall make recommendations to the Board of Supervisors.  No zoning or building permit shall be issued until after approval by the Board of Supervisors of the detailed plans for the section in which the proposed development is located.  Approval of any detailed plans shall lapse unless more that token construction is started in this Section within one (1) year.  No legal or equitable conveyance of land or buildings within the development may be made until the developer has complied with all applicable ordinances.

1. The application shall contain, for the areas for which final approval is sought, all requirements of the proposed plan and the written report necessary to obtain tentative approval, and in addition:

(a) Construction documents for the building of streets, sidewalks, parking areas, sanitary sewer lines, water lines, storm drainage systems, erosion and sedimentation control facilities and recreation;

(b) Letters from the public suppliers of water and sewage disposal stating they will serve the development;

(c) Certificate from either the Pennsylvania Department of Environmental Protection of the Commonwealth of Pennsylvania or its successors or the Washington County Conservation District stating that the erosion and sedimentation control plan has been approved and that a permit has been issued for earthmoving activity by the Department

(d) A certified performance bond, improvement bond, or other security acceptable, to the benefit of the municipality in which the development is located, the amount of bond equal to one hundred and ten percent (110%) of the estimated cost for installation of all public improvements, such amount to be established by the engineer designing the facilities in cooperation with the Township Engineer.  The Township Supervisor may require the posting of financial security to secure the structural integrity of any improvement consistent with standards authorized by the Pennsylvania Municipalities Planning Code;

(e) Any covenants and rights of easement, in the form in which they will be filed as legal documents, affecting developments; and

(f) A written description indication changes made in the tentative plan required to secure tentative approval.

2. In the event the application for final approval has been filed, together with all drawings, specification and other documents in support thereof, and as required by the official written communication of tentative approval, the Board of Supervisors shall, within forty-five (45) days of such filing, grant such development plan final approval.

3. The final development plan shall be deemed in substantial compliance with the preliminary development plan, provided modification by the applicant does not involve a change of any of the following:

(a) Violate any provision of the MPC.

(b) Vary the lot area requirement by more than ten percent (10%) of the amount specified on the approved preliminary development plan.

(c) Increase the floor area proposed for nonresidential use by more than ten percent (10%) of the area specified on the approved preliminary development plan.

(d) Increase the total ground area covered by buildings by more than five percent (5%) of the amount specified on the approved preliminary development plan.

4. Minor changes in the location, proposed site, and height of buildings and structures may be authorized by the Board of Supervisors without additional public hearing if required by engineering or other circumstances not foreseen at the time the preliminary plan was approved and a positive recommendation received from the Planning commission. No change authorized by this subsection may cause any of the following:

(a) A change in the use or character of the development.

(b) An increase in overall coverage of structures

(c) An increase in the intensity of the use.

(d) An increase in the problems of traffic circulation and public utilities.

(e) A reduction in approved open space.

(f) A reduction of off-street parking and loading space.

(g) A reduction in required pavement widths.

5. In the event the development plan as submitted contains variations from the development plan given tentative approval, the Board of Supervisors may refuse to grant final approval and shall, within forth-five (45) days from the filing of the application for final approval, so advise the developer in writing of said refusal setting forth in said notice the reasons why one (1) or more of said variations are not in the public interest.

(a) In the event of such refusal, the developer may either:

  i. Re-file his application for final approval within sixty (60) days without the objectionable variations; or

  ii. File a written request with the Board of Supervisors that it hold a public hearing on this application for final approval.

(b) If the developer wishes to take either such alternate action, he may do so at any time within which he shall be entitled to apply for final approval, or within thirty (30) additional days it the time for applying for final approval shall have already passed at the time when the developer was advised that the development plan was not in substantial compliance. In the event the developer shall fail to take either of these alternate actions within said time, he shall be deemed to

have abandoned the development plan.  Any such public hearing shall be held pursuant to public notice within thirty (30) days after request for the hearing is made by the developer, and the hearing shall be conducted in the manner prescribed in this Section for public hearings on the applications for tentative approval.  Within thirty (30) after the conclusion of the hearing, the Board of Supervisors shall be official written communication either grant final approval to the development plan or deny final approval.  The grant or denial of final approval of the development plan, in cases arising under this Section, shall be in the form and contain the findings required for an application for tentative approval.

6.  A development plan, or any part thereof, which has been given final approval shall be so certified without delay by the Board of Supervisors and shall be filed within fifteen (15) days after the grant of final approval in the office of the Washington County recorder of Deeds before any development plan or part thereof is so recorded, no construction shall commence on the project site. Upon the filing of record of the development plan, the zoning and subdivision regulations otherwise applicable to the land included in such plan shall cease to apply thereto.  Pending completion within a reasonable time of said planned development, or of that part thereof, as the case may be, that has been finally approved, no modifications of the provisions of said development plan, or part thereof, as finally approved, shall be made except with the consent of the developer.  Each structure in the development will require a separate building permit.  Not later that the date on which the  finally approved plan is recorded, the developer shall post with the Township the certified performance bond required by Section D.1.d above.

7.  In the event that a development plan, or a section, thereof, is given final approval and thereafter the developer shall abandon such plan or the section thereof that has been finally approved, and shall so notify the Board of Supervisor in writing; or, in the event the developer shall fail to commence and carry out the planned development within the schedule projected and approved in the application for tentative approval, or such amendment as subsequently mutually agreed to by the developer and the Board of Supervisors, no development or further development shall take place on the property included in the development plan until the property or portion not yet developed in reclassified by enactment of an amendment to this Ordinance, placing it in an appropriate zoning district.

8.  If the sequence of construction of various portions of the development is to occur in stages, then the open space and/or recreational facilities shall be developed, or committed thereto, in proportion to the number of dwelling units intended to be developed during any given stage of construction as approved by the Board of Supervisors.  Furthermore, at no time during the construction of the project shall the number of constructed dwelling units per acre of developed land exceed the overall density per acre established by the approved final development plan.

102

## Section 508 Resale

    A.  A PRD may be resold after final completion of all phases of the final development plan.

    B.  All sections of a sold planned development shall be controlled by the final development plan.

## Section 509 Enforcement and Agreements

    A.  After general construction commences, the Robinson Township Zoning Officer shall review, at least once every six (6) months, all building permits issued and compare them to the overall development phasing program.  If he determines that the rate of construction of residential units, or nonresidential structures substantially differs from the phasing program, he shall so notify the developer and the Board of Supervisors in writing.  Thereafter, the Board of Supervisors may issue such orders to the developer as it sees fit, and upon continued violation of the subsection may suspend the developer from further construction of dwelling units or nonresidential structures until compliance is achieved.

    B.  Before any building permit may be issued in the planned development, all agreements, contracts, deed restrictions and sureties shall be in a form acceptable to the Township, all sureties required shall be provided, and all payments due to the Township or its agents shall be made

    C.  Financial security provided in the form of a performance bond shall be provided by a corporate surety company licensed to do business in the Commonwealth of Pennsylvania, although in specific cases other forms of surety may be found to be acceptable to the Township.

    D.  Financial security for continuing operation and maintenance of  areas, facilities and functions not to be a responsibility of the Township or preferred at general Township expenses may take any form acceptable to the Township, but shall include agreement that if operation and maintenance of such areas, facilities and functions is not continued as set forth in the final plan and report, the Township may, in addition to the other remedies, operate and maintain such areas, facilities and functions in the manner required in the final plan and report, with costs assessed ratably against properties within the development having right of use of such area, facilities and services and such costs shall become a lien on said properties.

    E.  Any decision of the Board of Township Supervisors in granting or denying tentative or final approval of a PRD plan shall be subject to appear to a court in the manner as provided for in the Pennsylvania Municipalities Planning Code, Act 247, as amended.

## Section 510 Fees – Planned Residential Development

The developer shall reimburse Robinson Township for all expenses and disbursements incurred by it in connection with the application, This shall include, but not be limited to, fees and expenses of planners, professional engineers and/or registered surveyors, building inspectors, electrical

engineers, Township and community impact studies, legal expertise, and such professional services as shall be deemed necessary by the Robinson Township Planning Commission and the Board of Supervisors.

ARTICLE 6
DEFINITIONS

## Section 600 Interpretation

For the purpose of this Ordinance, words used in the present tense shall include the future. The singular number shall include the plural and the plural shall include the singular. The masculine shall include the feminine and the neuter. The word "shall" is always mandatory. The word "building" includes "structure" and shall be construed as if followed by the words "or any part thereof." The phrase "used for" includes "arranged for," "person" includes an individual, corporation, partnership, incorporated association, or any other legal entity. The word "includes" or "including" shall not limit the term to the specified example, but is intended to extend its meaning to all other instances of like kind and character. Except as defined within this Ordinance, all words and phrases shall have their normal meanings and usage. Definitions followed by the abbreviation "MPC" are the terms as defined by the Pennsylvania Municipalities Planning Code.

## Section 601 Definitions

ACCESSORY STRUCTURE – A building or structure subordinate and incidental to, and located on the same lot as, a principal building and used for an accessory use.

ACCESSORY USE – A use incidental and subordinate to and located on the same lot occupied by the principal use to which it relates.

AGRICULTURAL SERVICES – Business selling goods or services to a substantially agricultural clientele, including feed mills, seed sales, feed grinding services, and agricultural implement dealers. This category does not include slaughterhouses or dead animal reduction plants.

AGRICULTURE – the science and art of farming, the work of cultivating the soil, producing crops and livestock. Any agricultural use, including farming, dairying, pasturage, aquaculture, horticulture, floriculture, viticulture, horse keeping, animal and poultry husbandry, and forestry (including the harvesting of timber). Agriculture also includes the home sale of fruits, meats, vegetables and similar agricultural produce.

AIRPORT – a place licensed by the Pennsylvania Department of Transportation, Bureau of Aviation, where fixed-wing aircraft land and take off on designated and/or improved runways, including hangars and facilities for refueling and repair and that may include accommodations for passengers.

AISLE – a paved area, of a minimum width specified by this Chapter, which provides direct access to one or two rows of parking spaces and connects those parking spaces with the driveways that provide circulation through a parking area.

ALTERATION – as applied to a building or structure means a change or rearrangement in the structural parts or exit facilities, or an enlargement, whether by extending on a side, front or rear or by increasing in height, or the moving from one location to another.

ALTERATION, STRUCTURAL – any change in the supporting members of a building such as bearing walls, columns, beams, girders or foundations.

ALTERNATIVE FUEL SERVICE STATION – means anyone of the following: a) electric vehicle charging stations; b) fast-filled compressed natural gas (CNG) vehicle refueling station; c) hydrogen vehicle refueling station; and/or d) liquefied petroleum gas (propane) vehicle refueling station.

AMENDMENT – any addition, deletion or revision of the ordinance text or map officially adopted by the Board of Supervisors after public hearings.

APARTMENT – a room or suite of rooms in a multi-family structure, which is designed for use as a single housekeeping unit and which contains a functional kitchen, bath and toilet facilities, permanently installed.

APPLICANT – a landowner or developer, as hereinafter defined, who has filed an application for development including his heirs, successors and assigns.

APPLICATION FOR DEVELOPMENT – every application, whether preliminary, tentative or final, required to be filed and approved prior to start of construction or development including but not limited to an application for a building permit, for the approval of a subdivision plat or plan for the approval of a development plan.

ARTERIAL STREET – a road or street whose primary function is to move traffic through intercity or interstate transit, including any road or street identified as such by the Pennsylvania Department of Transportation map and classification system, or the Robinson Township Comprehensive Plan.

AUTO SALES AND SERVICE – A business engaged in the repair, maintenance and sales of motor vehicles licensed to travel the highways of the Commonwealth.

BANK – any institution that lends money or is engaged in a finance-related business, including but not limited to a bank, savings and loan association, mortgage or finance company or similar institution.

TAVERN – a business that sells alcoholic beverages for consumption on the premises as the principal use and that may offer food for consumption on the premises as an accessory use.

BASEMENT (OR CELLAR) – a portion of a building partly or completely below grade.  It shall be considered a building story if more than fifty percent (50%) of its clear height is above the average level of the adjoining ground.

BED AND BREAKFAST – a dwelling unit or portion thereof, in which short-term lodging rooms, with or without the service of a morning meal only, are provided for compensation and where the operator lives on the premises or in adjacent premises.

105

BILLBOARD – any structure or other outdoor surface used to display lettered, pictorial, sculptured or other matter which directs attention to a product, announcement, commodity or service provided off the premises.

BOARD OF SUPERVISORS – the board of Supervisors of Robinson Township, Washington County, Pennsylvania.

BOAT – see TRAILER (CAMPING AND RECREATIONAL EQUIPMENT)

BOAT TRAILER – see TRAILER (CAMPING AND RECREATIONAL EQUIPMENT)

BOTTLE CLUB – An establishment operated for profit or pecuniary gain, which has a capacity for the assemblage of twenty (20) or more persons and in which alcoholic liquors, alcohol or malt or brewed beverages are not legally sold but where alcoholic liquors, alcohol, or malt or brewed beverages are either provided by the operator or agents or employees of the operator for consumption on the premises or are brought into or kept at the establishment by the patrons or person assembling there for use and consumption.

BUFFER AREA – an arrangement of all season vegetative material of sufficient height and density to conceal from view of property owners in adjoining residential districts the structures and uses on the premises on which the screen or buffer planting is located.

BUILDING – an independent and detached structure having a roof supported by columns or walls, intended for housing, shelter or enclosure of person, animals, or any other property.

BUILDING AREA – the total of areas taken on a horizontal plane at the main grade level of the principal building and all accessory buildings, exclusive of uncovered porches, patios, terraces and steps.

BUILDING HEIGHT – the vertical distance measured from the average elevation of the finish grade.

BUILDING LINE (equivalent to the setback line) – the line of that face of the building nearest the front line of the lot.  This face includes porches, whether enclosed or not, patios and similar construction, but excludes steps.

BUILDING PRINCIPAL – a building in which is conducted the main or principal use of the lot on which said building is situated.

BULK FUEL STORAGE YARD – Any facility where (1) gasoline is stored in bulk for distribution by delivery truck; (2) fuel, including but not limited to kerosene, home heating oil, diesel fuel, gasoline, or propane, is stored in large volume tanks for distribution to retail or wholesale establishments; or (3) the total combined on-site storage of fuel exceeds twenty thousand (20,000) gallons.

BULK REGULATIONS – the combination of controls which may establish the maximum size of a building and its location on the lot.  Components of bulk regulations include:  size and height of building; location of exterior walls with respect to lot lines; building coverage, yard requirements;

106

and amount of lot area provided per dwelling unit.  Their purpose is to assure sufficient light, air and open space and to prevent overcrowding of the land.

BUSINESS SERVICE – Any business activity that renders service to other commercial or industrial enterprises.

CAR WASH – An area of land and/or structure with machine or hand-operated facilities used principally for the cleaning, washing, polishing or waxing of motor vehicles.

CARPORT – a structure to house or protect motor vehicles that is open to the weather for at least 40% of the total area of its sides.

CARTWAY – A portion of a road street or highway intended for vehicular travel.

CEMETERY – Property used for interring of dead persons or domestic pets, including mausoleums, columbariums, crematoriums and family plots on private property

CHURCH – a building or structure or group of buildings or structures that, by design and construction, are primarily intended for conducting organized religious services and associated accessory uses.

CLINIC – an establishment where human patients are examined and treated by doctors, technicians, dentists or similar professional practitioners on an out-patient basis not involving overnight detaining.

CLUB – a building or portion thereof or premises owned or operated for a social, literary, political, educational and/or recreational purpose primarily for the exclusive use of members and their guests.

COMBINE CYCLE GAS TURBINE ELECTRIC GENERATION USING PROCESSED NATURAL GAS – a power plant wherein a gas turbine generator generates electricity and waste heat is used to make steam to generate additional electricity via a steam turbine.

COMMERCIAL (BUSINESS) – engaging in a business, enterprise, activity or other undertaking related to or connected with trade and traffic or commerce in general.

COMMERCIAL RECREATION, INDOOR – A facility that offers various indoor recreational opportunities for its patrons including such games as: pool, billiards, bowling, video games and similar pursuits.

COMMERCIAL RECREATION, INTENSIVE –  A facility which offers various outdoor recreational or spectator opportunities for its patrons including go-cart raceways, auto raceways, motor sports participation or spectator opportunities, outdoor concert performances, outdoor commercial shooting ranges, commercial hunting operations and similar pursuits. This definition does not include shooting ranges owned by or operated by any non-profit conservation organization or sportsman's organization, any noncommercial target shooting conducted private or public land, or any traditional hunting activities carried out with Pennsylvania Game

107

Commission regulations. If differs from outdoor commercial recreation in the intensive level of impacts, such as noise from motorized recreational vehicles or gun fire.

COMMERCIAL RECREATION, OUTDOOR – A facility which offers outdoor recreational opportunities for its patrons including such games as: golf driving ranges, miniature golf, paintball, archery, tennis, team sports such as soccer or baseball, camps and clinics for sport instruction and similar pursuits. Does not include recreation fields accessory to schools, churches, or community based non-profit organization.

COMMON OPEN SPACE – a parcel or parcels of land or an area of water, or a combination of land and water within a development site and designed and intended for the use or enjoyment of residents of a development, not including streets, off-street parking areas and areas set aside for public facilities.

COMMUNICATIONS ANTENNA – Any structure or device used for the purpose of collecting or transmitting, electromagnetic waves, including but not limited to direction antennas (such as panels, microwave dishes) and satellite dishes and omni-directional antennas (such as wind antennas).

COMMUNICATIONS TOWER – a reception and transmission tower intending for transmitting or receiving radio, television, telephone, digital or cellular communications, including all related appurtenances.

CONDITIONAL USE – a use permitted in a particular zoning district pursuant to the provisions in Article VI of the Pennsylvania Municipalities Planning Code, Act 247 as amended and this Chapter

CONSTRUCTION – the construction, reconstruction, renovation, repair, extension, alteration  or relocation of a building or structure, including the placement of mobile homes.

CONTRACTOR'S GARAGE OR STORAGE YARD – The business location is used for ancillary activities, such as storage of construction materials for use on such other sites, and service and repair of the contractor's vehicles and equipment.  The key aspects of this business are that most of the services rendered are completed on a site other than the business location.

CONVENIENCE STORE – A retail store selling food products and household supplies for the convenience of the neighboring population.

CORPORATE OFFICE – An establishment primarily engaged in providing internal office administration services, as opposed to customer service, in a single building or a campus setting.

CORRECTIONAL FACILITY – any public or privately-operated facility housing persons awaiting trial or persons serving a sentence after being found guilty of a criminal offense, including but not limited to jails, prisons and juvenile detention centers.

COVERAGE – The proportion of the lot area covered by buildings and structures, expressed as a percentage.

108

CREMATORIUM – An establishment containing a furnace designed to cremate or reduce to ashes human or animal remains of the deceased.

DAY CARE CENTERS – see DAY CARE SERVICES

DAY CARE SERVICES – an establishment that provides care, protection and supervision for individuals on a regular basis away from their primary residence for less than twenty-four (24) hours a day.

    A.  FAMILY DAY CARE HOME – facilities in which child day care is provided at any one time to children who are not relatives.

    B.  GROUP DAY CARE HOME – facilities in which care is provided for more than six (6) but less than twelve (12) children, at any one time, where the childcare areas are being used as a family residence.

    C.  DAY CARE CENTERS – facilities in which care is provided for children at any time, where the childcare areas are not used as a family residence.

Childcare for less than 4 four children will not be considered as Day Care.

DECISION – final adjudication of any board or other body granted jurisdiction under any land use ordinance or this act to do so, either by reason of the grant of exclusive jurisdiction or by reason of appeals from determinations.  All decisions shall be appealable to the Court of Common Pleas of the county and judicial district wherein the municipality lies.

DETERMINATION – final action by an officer, body or agency charged with the administration of any land use ordinance or applications there under, except the following:

    A.  The Township Board of Supervisors;

    B.  The Zoning Hearing Board; or

    C.  The Planning Commission, only if and to the extent the planning agency is charged with final decision on preliminary or final plans under the Subdivision and Land Development Ordinance or Planned Residential Development provisions.

DEVELOPER – any landowner, agent of such landowner or tenant with the permission of such landowner, who makes or causes to be made a subdivision of land or land development.

DEVELOPMENT – any man-made changes to improved or unimproved real estate, including but not limited to buildings or other structures, the placement of mobile homes, streets, and other paving, utilities, filling, grading, excavation, mining, dredging or drilling operations.

DEVELOPMENT PLAN – the provisions for development, including a Planned Residential Development, a plat of subdivision, all covenants relating to use, location and bulk of buildings and other structures, intensity of use or density of development, streets, ways and parking facilities,

common open space and public facilities.  The phrase "provisions of the development plan" when used in this Ordinance shall mean the written and graphic materials referred to in this definition.

DISPENSARY – A PERSON, including a natural PERSON, corporation, partnership, association, trust or other entity, or any combination thereof, which holds a permit issued by the Pennsylvania Department of Health to dispense medical marijuana. The term does not include a health care medical marijuana organization under Chapter 19.4 of the Medical Marijuana Act.

DUPLEX – see DWELLING.

DWELLING – a building or portion thereof providing complete housekeeping facilities for one family

A.  SINGLE FAMILY – a detached building designed for or occupied exclusively as a residence for one family.

B.  DUPLEX – a detached building designed for or occupied exclusively by two families living independently of each other, with separate entrances.

C.  MULTI OR MULTIPLE FAMILY – a structure containing three (3) or more separate dwelling units for families living independently of each other, but which may provide joint services and/or facilities.

D.  EARTH HOME – a detached single family dwelling unit expressly designed for partial underground construction.

E.  DWELLING, MODULAR– a single family dwelling which is delivered to its site in at least two (2) sections that are set upon a permanent foundation and the sections joined together.  Such dwellings shall be certified as meeting the minimum standards for manufactured housing in Pennsylvania and shall be at least twenty (20') feet in width for the entire length when assembled and shall be attached to all available utilities.

F.  DWELLING, TOWNHOUSE– a multi-family dwelling structure, consisting of at least three (3) single family dwelling units that are attached side by side by unpierced party walls, maximum six (6) units per structure.

G.  DWELLING, ATTACHED – a single family dwelling that is attached to or shares a common vertical wall with one or more other dwellings.

H.  DWELLING, QUADRAPLEX – four (4) attached dwellings in which each unit has at least two open space exposures and shares one or two vertical walls with adjoining units and where no more than two (2) units may lack street frontage.

I.  DWELLING, SEMI-DETACHED – a single family dwelling that is attached to or shares a common vertical with one other dwelling.

J.  DWELLING,  SINGLE-FAMILY  DETACHED – a dwelling unit, including a manufactured home, designed for and occupied by not more than one (1) family and having no roof, wall or floor in common with any other dwelling unit.

K.  GARDEN APARTMENT – one or more two or three-story, multifamily structures, generally built at a gross density of 10 to 15 dwelling units per acre, with each structure containing 8 to 10 dwelling units and including related off-street parking and open space.

L.  MID-RISE APARTMENT – a multifamily residential building of 4 to 8 occupiable stories above grade. The building must have fifty percent (50%) or more residential space.

M.  MIXED-USE STRUCTURE – a building that is developed into a variety of land uses, such as residential and retail. Such uses are designed to complement one another.

DWELLING UNIT – any building or portion thereof that is designed and used exclusively for residential purposes by one family and includes complete kitchen and bathroom facilities for their exclusive use.

DWELLING, QUADRAPLEX – see DWELLING.

DWELLING, SEMI-DETACHED – see DWELLING.

DWELLING, SINGLE-FAMILY DETACHED – see DWELLING.

EARTH HOME – see DWELLING.

EASEMENT – a right-of-way granted across private property generally for public utility lines or for access to other properties beyond, passage over which is guaranteed by the grantor to those using the easement.

EATING AND DRINKING PLACES – An establishment that offers food and beverages for sale and consumption either on or on and off the premises as the principal use and may serve alcoholic beverages for consumption on the premises as an accessory use.

ENVIRONMENTAL ACTS – All statutes enacted by the Commonwealth relating to the protection of the environment or the protection of public health, safety and welfare, that are administered and enforced by the department or by another Commonwealth agency, including an independent agency, and all Federal statutes relating to the protection of the environment, to the extent those statutes regulate oil and gas operations.

EQUIPMENT SALES AND RENTAL – A business involved in the sale, rental, or service of motor vehicles and equipment.

ESSENTIAL SERVICES – the erection, construction, alteration or maintenance by public utilities or municipal departments or commissions of: underground gas, electrical, telephone transmission or distribution systems;  and public water, public sanitary sewer and public storm sewer facilities including wires, mains, drains, sewers, pipes, conduits, cables, fire alarm boxes, traffic signals, hydrants and similar equipment and accessories in connection therewith; including buildings

necessary for the furnishing of adequate services for the public health, safety and general welfare. Essential services do not include communications antenna, communications equipment buildings and communications towers.

ESSENTIAL SERVICES (WHOLESALE OR PRIVATE) - the erection, construction, alteration or maintenance by private utilities or otherwise private entities of: underground or overhead gas, electrical, telephone transmission or distribution systems; water, sanitary sewer or storm sewer facilities including wires, mains, drains, sewers, pipes, conduits, cables, fire alarm boxes, traffic signals, hydrants and similar equipment and accessories in connection therewith: including buildings and structures necessary for the furnishing of adequate services for the public health, safety and general welfare.   Essential Services (Private or Wholesale) do not include communications antenna, communications equipment buildings and communications towers. All applications for Essential Services (Wholesale or Private) are subject to the conditions described in Section 338.

FAMILY – one or more persons who live together in a single housekeeping unit and maintain a common household, as distinguished from a group occupying a boarding house.  A family may consist of a single person or of two (2) or more persons, whether or not related by blood, marriage or adoption.  For purposes of the Chapter, the term "family" shall not include nor shall it be interpreted to include a group care facility or similar functions or activities which provide room or board, or room and board, to one or more persons who are residents by virtue of receiving services, such as health, social rehabilitation, general supervision or similar services or functions or activities, irrespective of whether or not they are provided by governmental agencies, their licensed or certified agents, responsible non-profit social service agencies or corporations, profit oriented organizations or businesses or private individuals.

FAMILY DAY CARE HOME – see DAY CARE CENTER

FARM – a site of 10 acres or more used for the pursuit of agriculture, as defined herein.

FLEA MARKET – An occasional or periodic market held in an open area or structure where groups of individual sellers offer goods for sale to the public.

FLOODPLAIN – the area along a natural watercourse which may from time to time be overflowed by water there from.

FLOODWAY – the channel of a river or other watercourse and the adjacent land areas required to carry and discharge a flood of the one hundred (100) year magnitude

FLOOR AREA – the sum of the gross horizontal areas of the several floors of a building, measured from the exterior faces of exterior walls, or from the centerline of common walls separating buildings.  For determining parking and loading space requirements under this Ordinance, the following areas shall not be included:  cellar storage areas, elevator shafts and stairwells, floor area for mechanical equipment required to service the needs of the building, open terraces, breezeways and open porches.

112

FORESTRY – the management of forests and timberland when practiced in accordance with accepted silvicultural principles, through developing, cultivating, harvesting, transporting and selling trees for commercial purposes, which does not involve any land development.

FUNERAL HOME – A building used for the embalming of the deceased for burial, but not including cremation, and for the display of the deceased and ceremonies connected therewith before burial or cremation.

GARAGE, PRIVATE – an accessory building with area for housing motor driven vehicles, the property of and for the use of the occupants of the lot on which the garage is located.

GARAGE, PUBLIC – any garage other than a private garage as defined herein, available to clients, operated for gain and which is used for storage, repair, rental, lubricating, washing and servicing or equipping of motor vehicles.

GARDEN APARTMENT – see DWELLING.

GAS STATION – An area of land, together with any structure thereon used for the retail sale of motor fuel and lubricants and incidental services.

GOLF COURSE – A recreational facility that has a course, with a minimum of nine regulation-size holes, for playing golf as its principal use and that may have a clubhouse, locker rooms, restaurant, swimming pool, pro shop, facilities for racquet sports, maintenance facilities and similar facilities as accessory uses.  Golf course may be public or private.

GOLF OR COUNTRY CLUB – A recreational facility operated by a public or private entity that has as its principal use a golf course, as defined herein, and that may include one or more of the following accessory uses: a clubhouse and/or restaurant, locker rooms, pro shops, swimming pool and facilities for racquet sports.

GOVERNING BODY – The Board of Supervisors of Robinson Township, Washington County, Pennsylvania.

GROSS FLOOR AREA (GFA) – Means the total area of all floors of a building as measured to the outside surfaces of exterior walls and including halls, stairways, elevator shafts, attached garages, porches, balconies, basements, and useable rooms.

GROUP CARE FACILITY – any residential facility which provides room, board, health care and/or other specialized services to two (2) or more unrelated individuals, including children handicapped and/or elderly.  The individuals must be living together as a single housekeeping unit under twenty-four (24) hour qualified supervision.  This residence may be operated by a governmental agency, a PA-certified agency or a non-profit organization.  Correctional institutions, jails and similar use shall not be included in this definition.

GROUP DAY CARE HOME – see DAY CARE CENTER

GROWER/PROCESSOR – A PERSON, including a natural PERSON, corporation, partnership, association, trust or other entity, or any combination thereof, which holds a permit from the

113

Pennsylvania Department of Health under the Medical Marijuana Act to grow and process medical marijuana. The term does not include a health care medical marijuana organization under Chapter 19.4 of the Medical Marijuana Act.

HALFWAY HOUSE – A transitional residential facility licensed and operated by a government, contractor or social service agency that provides a supervised environment to residents who require psychiatric, correctional or behavioral treatment between periods of institutional and independent living.

HEAVY INDUSTRY – The manufacture, storage, processing, and treatment of materials which are potentially hazardous, or processes which produce significant amounts of smoke, notice, glare, or dust or odor as a primary or secondary effect of the principal use of the land or buildings. Heavy industry characteristically employs equipment such as smokestacks, tanks, distillation or reaction columns, chemical processing equipment, scrubbing towers, pickling equipment and waste-treatment lagoons.  Heavy industry, although conceivably operable without polluting the environment, has the potential to pollute when equipment malfunctions – or human error occurs. Examples of heavy industry are oil refineries, basic steel manufacturing plans (such as foundries, blast furnaces, and stamping mills), industries handling" animal offal or hides, basic cellulose pulp-paper mills and similar fiberboard and plywood production, production of cement and bulk storage, and chemical plants such as petrochemical complexes. An incinerator structure or facility which, including the incinerator, contains five thousand (5,000) square feet or more, whether public or private, is "heavy industry" for purpose of this Ordinance, as in any electric power production plant which is a principal use, whether said power is generated by coal, natural gas, cogeneration or wind energy conversion when determined to be a principle use.

HEIGHT – the height of a building shall be measured from the mean level of the ground at the periphery of a building to a point midway between the highest and lowest points of the roof. Chimneys, spires, towers, tanks and similar projections shall not be included in calculating the height.

HOME OCCUPATION – an occupation, profession or limited commercial activity carried on in a dwelling unit or accessory structure to a dwelling unit which is clearly incidental and secondary to the use of the dwelling unit as a residence and conducted by a member of the family occupying such dwelling unit.

HOSPITAL – the term "hospital" shall include sanitarium, clinic, rest home, nursing home, convalescent home and any place utilized for the diagnosis, treatment or other care of humans which provides for overnight accommodation.

HOTEL OR MOTEL – a building or a group of buildings in which lodging is provided and offered to the general public or to a select group of patrons for compensation.

HYDRAULIC FRACTURING – A stimulation treatment routinely performed on oil and gas wells in low-permeability reservoirs. Specially engineered fluids are pumped at high pressure and rate into the reservoir interval to be treated, causing a vertical fracture to open. The wings of the fracture extend away from the wellbore in opposing directions according to the natural stresses within the formation, such as grains of sand of a particular size, is mixed with the treatment fluid to keep the

114

fracture open when the treatment is complete. Hydraulic fracturing creates high-conductivity communication with a large area of formation and bypasses any damage that may exist in the near-wellbore area.

HYDRO RECOVERY FACILITIES – see WATER RECYCLING/HYDRO RECOVERY FACILITIES

IMPOUNDMENT – a lined depression, excavation or pit used for temporary containment meeting the requirements of 25 Pa. Code § 78.56.  Impoundments may be designated as either fresh water or reuse.

JUNK – any discarded materials or articles including, but not limited to, scrap metal, abandoned or junked motor vehicles or vehicle parts, machinery or machinery parts, papers, glass and related items, containers or partially dismantled structures or parts thereof.  It shall also include a partially dismantled motor vehicle not bearing current registration plates and which is not in the process of on-going and immediate repair.  It shall not include refuse or garbage kept in a proper container for the purpose of prompt disposal.

KENNEL – any structure, pen or area set aside for the breeding, boarding, show, grooming or keeping of dogs, cats or similar domestic animals.  For purposes of this Ordinance, the keeping of five (5) or more such animals for economic gain shall be deemed a commercial kennel.

LANDFILL – a disposal site in which refuse and earth or other suitable cover material, are deposited and compacted in alternative layers of specified depth in accordance with an approved plan.

LANDOWNER – the legal or beneficial owner or owners of land, including the holder of an option or contract to purchase (whether or not such option or contract is subject to any condition), a lessee if he is authorized under the lease to exercise the rights of the landowner or other person having a proprietary interest in the land.

LANDSCAPING SUPPLY AND MATERIALS – A business primarily engaged in processing, selling and distributing indoor or outdoor grown plants and landscaping materials.

LIGHT INDUSTRY – Manufacturing in which there are no significant impact from noise, dust or odor, and impacts are limited to secondary effects related to vehicular traffic, incidental noise, or movement of materials.  Light industries include, but are not limited to: food processing; wood products manufacturing (without chemical treatment); production of machine tools and similar metal working; manufacturing of plastic products; laboratories; testing and research facilities; printing; pharmaceuticals production; and similar facilities for assembling and fabricating.

LIGHT MANUFACTURING the processing, handling or fabrication of materials and products where no processes are involved which will produce noise, vibration, air pollution, fire hazard, noxious emission, traffic or other factors which will disturb or endanger neighboring properties.

LOADING AREA or LOADING SPACE – an off street space or berth on the same lot with a building or contiguous to a group of buildings, for the temporary stopping of commercial vehicles while loading or unloading merchandise or materials and which abuts upon an alley, street or other

115

appropriate means of access, and which is not less than twelve (12) feet wide, forty-five (45) feet in length and fifteen (15) feet in height.

LOT – a designated parcel, tract, or area of land established by a plat or otherwise as permitted by law and to be used, developed or built upon as a unit.

LOT AREA – the area contained within the property lines of the individual parcels of land, excluding space within any street or ultimate right-of-way, but including the area of any easement. Lot area shall be measured to the legal right-of-way line of the street.

LOT COVERAGE – the portion of a lot which is occupied by impervious surfaces, including but not limited to buildings, parking areas and sidewalks.

LOT DEPTH – the average distance between the street right-of-way line and the rear lot line, measured perpendicular or radial to the street right-of-way line.  Lot depth shall be measured to the legal right-of-way line of the street.  In the case of a double frontage lot, such distance shall be measured from each street right-of-way.

LOT FRONTAGE – distance measured along the front lot line.  When a lot fronts on a curved street, the frontage shall be determined by utilizing the arc length.

LOT LINE – a line of record bounding a lot that divides one (1) lot from another lot or from a public or private street or any other public space.

LOT LINE, FRONT – a lot line separating the front of the lot from the street.  On corner lots and double frontage lots, all lot lines which abut a street shall be front lot lines.

LOT LINE, REAR – a lot line which does not intersect a front lot line and is most distant from and most nearly parallel to a front lot line.  Corner lots shall not have a rear lot line.  For the purposes of this Zoning Ordinance, where the side lot lines of an interior lot meet in a point, the rear lot line shall be assumed to be a line not less than ten (10) feet long drawn within the lot between the two side lot lines, which is equidistant to the front lot line.

LOT LINE, SIDE – any lot line which is not a front or rear lot line.

LOT OF RECORD – A lot the area or dimension of which was lawful prior to the adoption or amendment of this Zoning Ordinance, but which fails to conform to the requirements of the zoning district in which it is located by reasons of such adoption or amendment.

LOT WIDTH – in the case of an interior lot, the distance between the side lot lines.  In the case of a corner lot, lot width shall mean the distance between each front lot line and its opposite side lot line.  Such distance shall be measured along a straight line which is at right angles to the axis of a lot.  When a lot abuts on a curved street the width shall be determined by utilizing the arc length.

LOT, CORNER – a lot abutting two (2) or more street rights-of-way at their intersection.

LOT, COVERAGE – that percentage of the lot area covered by the principal and accessory structures.

116

LOT, DOUBLE FRONTAGE – a lot which is not a corner lot and abuts two (2) or more streets, with possible vehicular access to both streets.

LOT, INTERIOR – a lot which is not a corner lot.

LOT, REVERSE FRONTAGE – a lot which is not a corner lot and abuts two (2) or more streets, where vehicular access is permitted solely from one (1) street.

MEDIATION – a voluntary negotiating process in which parties in a dispute mutually select a neutral mediator to assist them in jointly exploring and settling their differences, culminating in a written agreement which the parties themselves create and consider acceptable.

MEDICAL MARIJUANA DISPENSARY – An establishment that that holds a permit issued by the Pennsylvania Department of Health to dispense medical marijuana.

MEDICAL MARIJUANA GROWER/PROCESSOR – A facility that holds a permit issued by the Pennsylvania Department of Health to grow and process medical marijuana.

MID-RISE APARTMENT – see DWELLING.

MINERAL REMOVAL – mineral removal shall include all activity which removes from the surface or beneath the surface of the land some material mineral resource, natural resource or other element of economic value by means of mechanical excavation necessary to separate the desired material from an undesirable one; or to remove the strata or material which overlies or is above the desired material in its natural condition and position.  Open pit mining includes but is not limited to, the excavation necessary to the extraction of sand, gravel, topsoil, limestone, sandstone, coal, clay, shale and iron ore.

MINERALS – any aggregate or mass of mineral matter, whether or not coherent.  The term includes, but is not limited to, limestone and dolomite, sand and gravel, rock and stone, earth, fill, slag, iron ore, zinc ore, vermiculite and clay, anthracite and bituminous coal, coal refuse, peat and crude oil and natural gas.

MIXED-USE STRUCTURE – see DWELLING.

MOBILE HOME – a transportable, single family dwelling intended for permanent occupancy, contained in one unit or in two or more units designed to be joined into one integral unit capable of again being separated for repeated towing, which arrives at a site complete and ready for occupancy except for minor and incidental unpacking and assembly operations and constructed so that it may be used without a permanent foundation.

MOBILE HOME LOT – a parcel of land in a mobile home park, improved with the necessary utility connections and other appurtenances necessary for the erection thereon of a single mobile home.

MOBILE HOME PARK – a parcel or contiguous parcels of land which has been so designated and improved that it contains two (2) or more mobile home lots for the placement thereon of mobile homes.

117

MODULAR DWELLING – see DWELLING.

MORTUARY - A building used for the embalming of the deceased for burial, including cremation, and for the display of the deceased and ceremonies connected therewith before burial or cremation.

MOTORIZED HOME – see TRAILER (CAMPING AND RECREATIONAL EQUIPMENT)

MULTI OR MULTIPLE FAMILY – see DWELLING.

MUNICIPAL ENGINEER – a professional engineer licensed as such in the Commonwealth of Pennsylvania, duly appointed as the engineer for a municipality, planning agency or joint planning commission.

MUNICIPAL FACILITY – Buildings, structures and land uses owned and occupied by Robinson Township or any of its agencies and used to provide services to the residents of the Township. Municipal facilities may include, but not be limited to, Township administrative offices, public works buildings, storage yards, libraries, fire company buildings, senior centers and recreation facilities and buildings.

MUNICIPAL RECREATION – see RECREATION

NATURAL GAS – A fossil fuel consisting of a mixture of hydrocarbon gases, primarily methane, and possibly including ethane, propane, butane, pentane, carbon dioxide, oxygen, nitrogen and hydrogen sulfide and other gas species.  The term includes natural gas from oil fields known as non-associated gas, coal beds, shale beds and other formations. The term does not include coal bed methane.

NATURAL GAS COMPRESSOR STATION – A facility designed and constructed to compress natural gas that originates from an Oil and Gas well or collection of such wells operating as a midstream facility for delivery of Oil and Gas to a transmission pipeline, distribution pipeline, Natural Gas Processing Plant, or underground storage field, including one or more natural gas compressors, associated buildings, pipes, valves, tanks and other equipment.

NATURAL GAS METERING STATION – A facility that provides for an interconnection between natural gas transmission pipelines including equipment for the filtration, measurement, pressure management and control of natural gas flows, communication, access and associated activities, but does not involve any engines or other equipment for the compression (i.e., increasing of pressure) of natural gas.

NATURAL GAS PROCESSING PLANT –  A facility that is not a natural gas compressor station that is designed and constructed to remove materials such as ethane, propane, butane, and other constituents or similar substances from natural gas to allow such natural gas to be of such quality as is required or appropriate for transmission or distribution to commercial markets but not including facilities or equipment that are/is designed and constructed primarily to remove water, water vapor, oil or naturally occurring liquids from natural gas, which includes "Dew Point Control facilities."

118

NEIGHBORHOOD BUSINESS – Small-scale retail enterprises intended to benefit neighborhood residents or tourists. Limited retail businesses are distinguished from other retail businesses by having a smaller size of less than five thousand (5,000) square feet gross floor area and confining all commercial activities indoors. They may not include a sexually oriented business or gasoline sales.

NO IMPACT HOME BASED BUSINESS – A business or commercial activity administered or conducted as an accessory use that is clearly secondary to the use as a residential dwelling and which involves no customer, client or patient traffic. The business or commercial activity must satisfy the following requirements:

A. The business activity shall be compatible with residential use of the property and surrounding residential sues.

B. There shall be no outside appearance of a business use.

C. The business activity may not generate any solid waste or sewage discharge, in volume or type, which is not normally associated with residential use in the neighborhood.

D. The business may not involve any illegal activity.

If the business meets all such requirements, it shall be considered a lawful accessory use to a dwelling.

NONCONFORMING LOT – a lot, the area or dimension of which was lawful prior to the adoption or amendment of this Ordinance, but which fails to conform to the requirements of the zoning district in which it is located by reason of such adoption or amendment.

NONCONFORMING STRUCTURE – a structure or part of a structure manifestly not designed to comply with the applicable use or extent of use provisions in this Zoning Ordinance or amendment heretofore or hereafter enacted, where such structure lawfully existed prior to the enactment of this Ordinance or amendment or prior to the application of this Ordinance or amendment to its location by reason of annexation.  Such nonconforming structures include, but not limited to, nonconforming signs.

NONCONFORMING USE – a use, whether of land or of structure, which does not comply with the applicable use provisions in a zoning ordinance or amendment heretofore or hereafter enacted, where such use was lawfully in existence prior to the enactment of such ordinance or amendment, or prior to the application of such ordinance or amendment to its location by reason of annexation.

NURSING HOME – Any institutional building licensed by the Commonwealth for the in-patient care of persons requiring full-time, intermediate or skilled nursing care within the context of a planned program of care and administrative management and/or nursing care and related medical or other health services, but not requiring hospitalization.

OCCUPANCY PERMIT – a statement, based on an inspection, signed by the Zoning Officer, setting forth either that a building or structure complies with this Zoning Ordinance, or that a building, structure or parcel of land may lawfully be employed for specified use or both.

OFFICIAL MAP – A map adopted by ordinance pursuant to Article IV of the Pennsylvania Municipalities Planning code.

OIL – Hydrocarbons in liquid form at standard temperature of 60 degrees Fahrenheit and pressure 14.7 PSIA, also referred to as petroleum.

OIL AND GAS IMPOUNDMENTS – Water and other fluid storage or impoundment areas used exclusively for oil and gas operations.  This definition does not include temporary water or fluid storage operations of a duration of less than six (6) months.

OIL AND GAS OPERATIONS – The term includes the following:

   A.  Well location assessment, including seismic operations, well site preparation, construction, drilling, hydraulic fracturing and site restoration associated with an oil or gas well of any depth;

   B.  Water and other fluid storage or impoundment areas used exclusively for oil and gas operations;

   C.  Construction, installation, use, maintenance and repair of:

      1.  Oil and gas pipelines;

      2.  Natural gas compressor stations; and

      3.  Natural gas processing plants or facilities performing equivalent functions; and

   D.  Construction, installation, use, maintenance and repair of all equipment directly associated with activities specified in paragraphs (1), (2) and (3), to the extent that:

      1.  The equipment is necessarily located at or immediately adjacent to a well site, impoundment area, oil and gas pipeline, natural gas compressor station or natural gas processing plant; and

      2.  The activities are authorized and permitted under the authority of a Federal or Commonwealth agency.

OIL AND GAS-SUBSURFACE FACILITIES AND ACTIVITIES – Activities performed under the surface of the ground that are part of the operation of oil and gas drilling, as defined herein, located on properties within the unit for a particular drill site, but that are not included in the Well Site, including, but not limited to: horizontal drilling and hydraulic fracturing zones, underground gathering and transmission pipelines and similar underground facilities incidental to Oil and Gas Development.

OIL AND GAS-WELL SITE DEVELOPMENT – The term includes the following: well location assessment, including seismic operations, well site preparation, construction, drilling, temporary water or fluid storage operations of a duration of less than six (6) months, hydraulic fracturing and site restoration associated with an oil and gas well of any depth

120

OPEN SPACE – an area of land or water on a development site in which no structures are permitted and which is set aside for the use and enjoyment of the general public or the owners and tenants of property which adjoins the open space.

PARKING AREA – any public or private area, under or outside of a building or structure, designed and used for parking motor vehicles including parking lots, garages, private driveways and legally designated areas of public streets.

PARKING SPACE – an off street space having a minimum dimension of 9' x 18', whether inside or outside of a structure, for the temporary standing of automobile vehicles to be used exclusively as a parking stall for one (1) automobile.

PERSON – any individual, corporation, association, club, firm or partnership.

PERSONAL CARE HOME – A facility giving geriatric care in a home-like setting and licensed as such by the Commonwealth of Pennsylvania

PERSONAL SERVICES – an establishment primarily engaged in the provision of frequently or recurrently needed services of a personal nature.  Typical uses include, but not limited to, beauty and barber shops, tanning salons, tailors, laundry/dry cleaning drop-off and pick-up stations, licensed massage therapists, health and fitness studios, driving schools, hobby and handicraft instruction.

PICKUP CAMPER – see TRAILER (CAMPING AND RECREATIONAL EQUIPMENT)

PIPELINE – All parts of those physical facilities through which gas, hazardous liquids, fresh water, salt water, or chemicals move in transportation, including but not limited to, pipe, valves and other appurtenance attached to pipe, whether or not laid in public or private easement or public or private right-of-way within the Township, including, but not limited to, gathering lines, production lines, and transmission lines. This definition does not include pipelines associated with franchise utilities.

PLACE OF WORSHIP – A place of religious instruction or public gathering and worship, which may include incidental instruction and charitable activities, but not including a school or day care services, or any form of halfway house.

PLANNED BUSINESS PARK – An area of land to be developed for office and business activities that incorporates open space which may not correspond in lot size, density or lot coverage and required open space to the regulations in any one district created, from time to time, under provisions of the zoning Ordinance.

PLANNED RESIDENTIAL DEVELOPMENT – an area of land, controlled by a landowner, to be developed as a single entity for a number of dwelling units, or combination of residential and nonresidential uses, the development plan for which does not correspond in lot size, bulk, type of dwelling or use, density or intensity, lot coverage and required open space to the regulations established in any one district created, from time to time, under the provisions of a municipal zoning ordinance.

PLANNING COMMISSION – the Planning Commission of Robinson Township, Washington County, Pennsylvania.

POLE TOWER – A communications tower shall be considered one which is of monopod configuration with a single tower structure in contact with the ground, and supported by oblique guy wires.

PRINCIPAL USE – the major or dominant use of a lot.

PRIVATE CLUB – Any establishment, other than a sportsmen's club, operated by a legally chartered organization for social, recreational, educational, fraternal or sororal purposes, which is open only to members and their guests and not to the general public.

PRIVATE RECREATION – see RECREATION

PROFESSIONAL OFFICE – an office or business conducted by an individual or association dealing with medicine, law, accounting, real estate, architecture, engineering, finance or related services.

PROTECTED STRUCTURE – Any occupied residence, commercial business, school, religious institution, or other public building located within 1,000 feet of the surface location of a well that may be impacted by noise, sound, emissions, light, or other negative attributes of drilling operations including, but not limited to, oil and gas development activities as defined herein generated from drilling or hydraulic fracturing activity at a well site.

PUBLIC AND ACCREDITED PRIVATE SCHOOLS – A place of general instruction, publicly funded or recognized by the Pennsylvania Department of Education

PUBLIC GROUNDS – includes:

A. Parks, playgrounds, trails, paths and other recreational areas and other public areas;

B. Sites for schools, sewage treatment, refuse disposal and other publicly owned or operated facilities; and

C. Publicly owned or operated scenic and historic sites.

PUBLIC PARKS AND RECREATION – An enterprise other than a municipal facility, as defined herein, operated by a public entity, available to the general public, whether or not an admission fee is charged, including either indoor or outdoor facilities for the pursuit of sports, recreation or leisure activities, including, but not limited to, parks, playgrounds, playing fields, or batting practice facilities, ice rinks, tennis courts, swimming pools and similar facilities.  Public Parks and Recreation excludes Golf Courses, Golf or Country Clubs, as defined herein.

PUBLIC HEARING – a formal meeting held pursuant to public notice by the Township Board of Supervisors or Planning Commission, intended to inform and obtain public comment, prior to taking action in accordance with this Chapter.

PUBLIC MEETING – a form held pursuant to notice under 65 Pa. C. S. CH 7 (Related to open meetings.)

PUBLIC NOTICE – notice published once each week for two (2) successive weeks in a newspaper of general circulation in the Township.  Such notice shall state the time and place of the hearing and the particular nature of the matter to be considered at the hearing.  The first publication shall not be more than thirty (30) days and the second publication shall not be less than seven (7) days from the date of the hearing.

PUBLIC UTILITY OFFICE – An office for activities conducted by an entity providing pipeline, gas, electrical, telephone, telegraph, water or sewage service.

RECREATIONAL CAMPGROUND – An area or tract of land on which accommodations for temporary occupancy are located or may be placed, including cabins, tents, recreational vehicles, and accessory buildings and structures for the use of campers.

RECREATION – for purposes of this Chapter recreation shall be defined as follows:

  A.  MUNICIPAL RECREATION – developed or undeveloped open spaces and/or structures and facilities which are provided by a governmental body for public use for the purposes of play, amusement or relaxation.  Such uses may include sports facilities, parks, assembly buildings, passive areas, gardens and related amenities.

  B.  PRIVATE RECREATION – developed and undeveloped open spaces and/or structures and facilities which are provided by individuals or private organizations for the use of specified individuals or groups of individuals sharing common relationships or associations for the purpose of play, amusement or relaxation.  Such uses may include sports facilities, parks, assembly buildings, passive areas, gardens and related amenities.

  C.  SHOOTING RANGE – an area designed and improved to encompass shooting stations or firing lines, target areas, berms and baffles and other related components.

REPORT – any letter, review, memorandum, compilation or similar writing made by any body, board, officer or consultant other than a Solicitor to any other body, board, officer or consultant for the purpose of assisting the recipient of such report in the rendering of any decision or determination.  All reports shall be deemed recommendatory and advisory only and shall not be binding upon the recipient, board, officer, body or agency, nor shall any appeal lie therefrom.  Any report used, received or considered by the body, board, officer or agency rendering a determination or decision shall be made available for inspection to the applicant and all other parties to any proceeding upon request and copies thereof shall be provided at cost of reproduction.

RESEARCH AND LABORATORIES – Any establishment which carries on investigation in the natural, physical, computer or social sciences or engineering and development as an extension of such investigation with the objective of creating end products.

RESTAURANT – an establishment where the principal business is the sale of food and beverages in a ready-to-consume state, where there is no service to a customer in an automobile and where the design or principal method of operation consists of one or more of the following:

A. a sit-down restaurant where customers, normally provided with an individual menu, are generally served food and beverages in non-disposable containers by a restaurant employee at the same table or counter at which the food and beverages are consumed; or

B. a cafeteria or cafeteria-type operation where food and beverages generally are served in non-disposable containers and consumed within the restaurant.

RETAIL SALES – the sale on the premises of commodities and/or services directly to consumers, but not including the manufacturing or processing of any products.

RETAIL SALES BUILDING – Establishment engaged in selling goods or merchandise to the general public for personal or household consumption and rendering services incidental to the sale of such goods.

RETIREMENT COMMUNITY – any age-restricted development, which may be in any housing form, including detached and attached dwelling units, apartments and residences, offering private and semi-private rooms.

RIGHT-OF-WAY – land legally dedicated for public purposes, including but not limited to a street, alley or interior walk.

SALVAGE – Any discarded material or article, and shall include, but not be limited to, scrap metal, scrapped or abandoned motor vehicles, machinery, equipment, paper, glass, containers and structures. It shall not include, however, refuse or garbage kept in a proper container for the purpose of prompt disposal. For the purpose of this Ordinance, a proper container shall mean a solid plastic or metal container, with a sealable lid, specifically designed for the storage of waste matter.

SALVAGE YARD – Any place where any junk is stored, disposed of, or accumulated. This definition shall include recycling centers, recycling yards, and salvage businesses and the storage of four (4) vehicles lacking current inspection or registration for a period exceeding ten (10) days. However, it does not include municipal recycling centers where no materials are stored in an exterior environment.

SAWMILL – An operation or facility which has, as its predominant purpose, the sawing or planting of logs or trees into rough slabs.

SCREEN PLANTING – Means an evergreen hedge at least six (6) feet high at time of planting, planted in such a way that it will block a line of sight throughout the year. The screening may consist of either one (1) or multiple rows of bushes or trees and shall be at least four (4) feet wide. It shall be the responsibility of the property owner to maintain a screen planting, replacing trees as needed. The Zoning Officer may require replacement of screening trees.

SCREENING – Screening shall mean a fence, screen planting, or wall provided in such a way that it will block a line of sight.

SELF-SERVICE/STORAGE FACILITY – a building or group of buildings consisting of individual, self-contained units leased or rented for self-service storage of personal property.

SERVICE AND REPAIR BUSINESS – A form of equipment service or repair, may include woodworking enterprises, repair services such as welding, vehicle or machinery repair, and incidental fabrication or retail sales of items.

SERVICE STATION – Buildings and premises where the primary use is the supply and dispensing at retail of motor fuels, lubricants, batteries, tires and motor vehicles.

SETBACK LINE – a line established by this Ordinance generally parallel with and measured from the street, right-of-way; no structure may be located above ground between the street right-of-way and this line except as may be provided under the provisions of this Ordinance.  This line is also referred to as a "building line."

SEXUALLY ORIENTED BUSINESS – The definition for this term and for all uses included under this term shall apply as are provided in Title 68, Part II, Subpart E, Chapter 55, Section 5502 of the Pennsylvania Consolidated Statutes, as amended.  Such definitions in Pennsylvania Statutes are hereby included by reference, including but not limited to, the definitions for "Adult Bookstore," "Adult Entertainment," "Adult Mini-Motion Picture Theater," "Adult Motion Picture Theater," "Sexual Activities," "Specified Anatomical Areas," and "Specified Sexual Activities."

SHOPPING CENTER – A group of commercial establishments planned, constructed and managed as a total entity with customer and employee parking provided on site, provision for goods delivery separated from customer access, aesthetic considerations and protection from the elements.

SHOOTING RANGE – see RECREATION

SHOOTING RANGE FACILITY – a public or private facility, including individual shooting ranges, safety fans or shortfall zones, structures, parking areas and other associated improvements, designed for the purpose of providing a place for the discharge of various types of firearms or the practice of archery.  Does not include incidental target practice areas on private property.

SHOPPING CENTER – A commercial facility developed as a mixture of uses, including retails sales, theaters, personal services and eating and drinking places, but planned, constructed, managed or promoted as an integral whole.

SIGN ADVERTISING – a sign which directs attention to a profession, business, activity, commodity, service or entertainment other than one conducted, sold or offered upon the premises where such sign is located or within the building to which such sign is fixed.

SIGN AREA – the area of a sign on which copy is placed that is contained by a single rectangular box to include all letters or graphics, but not support structures or architectural embellishes.

SIGN CANOPY – a sign painted, stamped perforated, stitched or otherwise applied to a canopy. The applicable size limitations shall be calculated by taking the area enclosed within a rectangle that is needed to completely encompass each letter, number or insignia.

SIGN, ANIMATED – a sign that relies on flashing lights or movement of some element or all of the sign to reinforce its message.

125

SIGN, AWNING – a sign painted on or attached to a fixed or movable framework which is attached directly to a building wall.

SIGN, BANNER – a temporary or permanent decorative sign made of fabric or fabric-like material which may be freely hanging or attached at all corners bearing to insignia of any government, religious, charitable or fraternal organization.

SIGN, BILLBOARD – a sign which directs attention to a business, commodity, service or entertainment conducted, sold or offered at a location other than the premises on which the sign is located.

SIGN, BUSINESS – a sign which directs attention to a profession or business conducted or to a commodity, service, activity or entertainment sold or offered upon the premises where such sign is located or in the building to which such sign is affixed.

SIGN, COMMUNITY DIRECTORY – an accessory bulletin or announcement board describing the public events of a community organization, institution or public facility or describing the names and locations of community businesses.

SIGN, CONSTRUCTION – a sign located on a construction site which identifies the project name and which provides other information pertinent to the project developer(s), contractor(s), consultant(s) and lender(s).

SIGN, DIRECTIONAL – an informational sign indicating direction, entry, exit, loading or service areas, fire lanes, parking and other information incidental to the primary use and not itself advertising that use.

SIGN, ELECTRONIC– A sign or portion thereof that displays electronic images with or without text information, defined by a small number of matrix elements using different combinations within the display area where the message change sequence is accomplished immediately or by means of fade, repixalization or dissolve modes. Electronic signs include computer programmable, microprocessor controlled electronic or digital displays.

SIGN, FACE – the area or display surface used for the message.

SIGN, FREESTANDING – a sign supported on its own structure attached to the ground and not to a building.

SIGN, GROUND / MONUMENT – a sign erected, constructed or maintained directly upon the ground or upon supports placed in the ground.

SIGN, HISTORICAL AND MEMORIAL – plaques, signs, tablets or markers which document or honor historical events, or the historical or memorial significance of persons or buildings.

SIGN, IDENTIFICATION – a sign giving the nature, logo, trademark or other identifying symbol, address or any combination of the name, symbol and address of a building, business, development or establishment on the premises where it is located.

126

SIGN, ILLUMINATED – a sign that is artificially illuminated, either internally, indirectly or externally, by means of electricity or gas.

SIGN, INDIRECTLY ILLUMINATED – a sign which is stationary and constant in intensity and color at all times and which is shielded to concentrate illumination of the sign face.

SIGN, INTERNALLY ILLUMINATED – a sign which is lighted by means of lamps or devices internal to the sign, either behind the face of the sign or is an integral part of the sign structures and advertising effect.

SIGN, MARQUEE – permanent covering over a building's main entrance, attached along one side to a building and with exposed edges capable of receiving a sign.

SIGN, NAME AND ADDRESS – a sign displaying the name and street number of the resident, business or building for each premises, but not to include any commercial activity.

SIGN, OFF-PREMISE – a sign that identifies or communicates a commercial or noncommercial message related to an activity conducted, a service rendered or a commodity sold at a location other than the premises or lot where the sign is located or a belief held by a person or persons living at a location other than on the premises or lot where the sign is located.

SIGN, ON-PREMISE – a sign that identifies or communicates a commercial or non-commercial message related to an activity conducted, a service rendered or a commodity sold on the premises or lot upon which the sign is located or a belief held by a person living on the premises or lot upon which the sign is located.

SIGN, ON-PREMISE INFORMATION – sign regulating on-premises traffic, parking or other functional information.

SIGN, POLITICAL – a sign designated and intended to influence the vote of the electorate on a law, statute, ordinance, amendment, rule, regulation or other measure or on the nomination or election of a candidate for any public office.

SIGN, PORTABLE – any sign not permanently mounted on a building or in the ground, including signs on wheels, even when wheels are removed.

SIGN, PROJECTING – a sign projecting at a ninety (90) degree angle from the face of the building and securely attached to the building.  The applicable size limitations shall be calculated by taking the area of the sign frame.

SIGN, PUBLIC SERVICE – a sign located for the purpose of providing a public service message or directions toward a use not readily visible from a public street.

SIGN, REAL ESTATE – a sign advertising a property for sale, for rent or having been sold or rented and erected by a broker or other person interested in the sale or rental.

SIGN, ROOF – any sign erected and maintained wholly upon and projecting over the roof surface or parapet on any building.

127

SIGN, STRUCTURE – any structure which supports, has supported or is capable of supporting a sign, including decorative cover.

SIGN, TEMPORARY – a sign intended to remain in place for a specific short period of time, at the end of which it must be removed by the person erecting it, including construction signs, garage sale signs, grand opening signs, celebration signs and signs advertising special sales or business promotions.

SIGN, WALL MOUNTED – a sign mounted, attached or painted on a building.

SIGN, WINDOW – a permanent sign painted on or attached to the inside or outside glass of a window or glass -paneled door, including decals or suspended within a window.

SINGLE FAMILY – see DWELLING.

SITE PLAN – The proposed development or improvement plan for any residential, commercial or industrial parcel or property within the Township.  Plans must include the following and any other information requested by the Township:

A plan prepared by a registered surveyor, engineer or architect which contains the following information:

    A.  Name of applicant and land owner;

    B.  Name of development, if any;

    C.  Evidence of preparation by a licensed architect, landscape architect or engineer;

    D.  Graphic and written scale;

    E.  North arrow;

    F.  Dates of preparation and revisions of Site Plan;

    G.  A Site location map;

    H.  All calculations related to Base Site Area, Resource Protection Land, Permitted Site Density for Residential Buildings, Permitted Impervious Service Ratio and Permitted Floor Areas for Non-Residential Uses and all other Site Capacity calculations as required in this Ordinance.

    I.  Drawn on a sheet no less than 24"x36" to no greater than 100' scale upon which is delineated and clearly identified the location ,extent and area in acres, if applicable, of the following:

        1.  Property lines for the Site and adjacent Parcels;

        2.  Resource Protection Land identified by location, area and type;

3.  Site Area' Unrestricted Site Area;

4.  Proposed buffer yards;

5.  Location and dimensions of existing and proposed Public and Private Roads, Streets, Driveways, walks and paths;

6.  Existing and proposed Structures with proposed Density and approximate Height of Structures indicated for each proposed type of Structure and Use;

7.  Proposed location and dimensions of all Yards and Open Spaces;

8.  Existing contours and proposed Grading Plan in compliance with the Township Grading Ordinance, drawn to no greater than 5' contours;

9.  General proposals for the disposition of storm water runoff in compliance with this Ordinance and with the Township Storm water management Ordinance;

10. Proposals for the disposition of sanitary wastes and the provision of water supplies;

11. All applicable area or Uses regulated or mandated by this Ordinance, including but not limited to Off-Street Parking, Off-Street Loading, Exterior Lighting, Signs, and Outdoor Storage.

SOLID WASTE LANDFILLS – Any site licensed by the Pennsylvania Department of Environmental Protection (PA DEP) for the disposal of solid waste, other than hazardous waste, as defined and regulated by federal statute.

SOUND BARRIERS – Any structure that absorbs sound and mitigates noise, including, but not limited to, solid walls, insulation structures and sound absorption walls or structures.

SPECIALIZED ANIMAL RAISING AND CARE – For the purposes of this Ordinance, specialized animal raising and care shall include:

A.  Pens or structures for the raising and care of fur-bearing animals, game birds, exotic animals or similar operations, when the density exceeds one (1) animal units per acre.

B.  Licensed kennels or kennels with five (5) or more canines per acre of greater than six (6) months of age.

C.  The keeping of exotic wildlife as defined and regulated by the Pennsylvania Game Commission. The phrase "exotic wildlife" includes, but is not limited to, all bears, coyotes, lions, tigers, leopards, jaguars, cheetahs, cougars, wolves and any crossbreed of these animals which have similar characteristics in appearance or features. The definition is applicable whether or not the birds or animals were bred or reared in captivity or imported from another state or nation.

For the purposes of this Section, "animal unit" shall be defined as one (1) bovine or equine animals, two (2) swine, four (4) sheep or goats, or fifty (50) birds or small mammals.

SPECIAL EXCEPTION – a use permitted in a particular zoning district pursuant to the provisions of Article VI and IX of the Pennsylvania Municipalities Planning Code, Act 247, as amended.

SPORTSMEN'S CLUB – A nonprofit entity formed for conservation of wildlife or game, and to provide members with opportunities for hunting, fishing or shooting.  Activities limited to pistol range, skeet shoot, trap and skeet, and rim-fire rifles.

STORY – that portion of a building included between the surface of any floor and the surface of the floor next above it or if there is no floor above it, then the space between the floor and the ceiling next above it.

STREET – includes street, avenue, boulevard, road, highway, freeway, parkway, lane, alley, viaduct and any other ways used or intended to be used by vehicular traffic or pedestrians whether public or private.

STREET LINE – the line defining the edge of the legal width of a dedicated street right-of-way.

STRUCTURE – any man-made object having an ascertainable stationary location on or in land or water, whether or not affixed to the land.

SUBDIVISION – the division or redivision of a lot, tract or parcel of land by any means into two (2) or more lots, tracts, parcels or other divisions of land including changes in existing lot lines for the purpose, whether immediate or future, of lease, partition by the court for distribution to heirs or devisees, transfer of ownership or building or lot development; Provided, however, that the subdivision by lease of land for agricultural purposes into parcels of more than ten (10) acres, not involving any new street or easement of access or any residential dwelling, shall be exempted.

SURFACE MINING ACTIVITY – the surface activity of a mineral extraction operation, including sites previously mined and reclaimed.  It shall not include engineering or deep mine activity or other operations which are carried out below the surface of the earth without disturbing vegetation, overburden or soil.

TEMPORARY HOUSING FOR WELL SITE WORKERS – Housing for employees of the oil and gas industry that is occupied on a temporary basis related to the development cycle of the well pad. This development may occur on a single parcel or multiple parcels

TOWNHOUSE DWELLING – see DWELLING.

TOWNSHIP – the Township of Robinson, a Second Class Township in Washington County, Pennsylvania.

TRAILER (CAMPING AND RECREATIONAL EQUIPMENT) – shall include travel trailers, pickup camper, tent trailers, motorized homes and recreational equipment as follows:

A. TRAVEL TRAILER:  a portable structure, including tent trailers, built on a chassis, designed to be towed and used as a temporary dwelling for travel, recreational and vacation purposes and permanently identified as a travel trailer by the manufacturer of the trailer.

B. PICKUP CAMPER:  a structure designed primarily to be mounted on a pickup or other truck chassis with sufficient equipment to render it suitable for use as a temporary dwelling, travel, recreational or vacation purposes.

C. MOTORIZED HOME:  a portable dwelling designed and constructed as an integral part of a self-propelled vehicle.

D. BOAT:  a vessel designed to travel on water,

E. BOAT TRAILER:  a trailer designed to haul a boat as defined above.

TRAVEL TRAILER – see TRAILER (CAMPING AND RECREATIONAL EQUIPMENT)

TRUCK TERMINAL – Land and buildings used as a relay station for the transfer of a load from one vehicle to another or one party to another. The terminal cannot be used for permanent or long-term accessory storage for principal land uses at other locations. The terminal facility may include storage areas for trucks and buildings or areas for the repair of trucks associated with the terminal.

USE – the purpose of the activity for which the land or building thereon is designed, arranged or intended or for which it is occupied or maintained.  The term "permitted use" or its equivalent shall not be deemed to include any nonconforming use.

USE MIXED – the occupancy of a building or of a lot for more than one use, such as:  both a business and a residential use; both an industrial and a residential use; etc.

VARIANCE – relief granted pursuant to the provisions of Articles VI and IX of the Pennsylvania Municipalities Planning Code, Act 247, as amended.

VETERINARY CLINIC – An establishment operated by a veterinary medical doctor(s) certified in the Commonwealth of Pennsylvania for the medical or surgical treatment of domestic, agricultural or zoological animals but excluding the boarding and grooming of animals not subjected to medical or surgical treatment.

WAREHOUSE – an establishment, conducted within an enclosed building that is engaged in the storage of materials, equipment or products that will be distributed to wholesalers or retailers.

WATER RECYCLING/HYDRO RECOVERY FACILITIES – the treatment, cleaning and reuse of water related to oil and gas activity

WELL SITE – The area occupied by all equipment or facilities necessary for or incidental to drilling, production or plugging a well.

WHOLESALE BUSINESS – An establishment engaged in selling merchandise to retailers, institutional, commercial or professional business customers or other wholesalers, rather than to the general public, or acting as a broker for such merchandise sales.

WHOLESALE USE – a business primarily engaged in selling merchandise to retailers, institutional, commercial or professional business customers or other wholesalers, rather than to the general public which includes the warehousing of merchandise and which may include distribution of such merchandise on the site of the principal business.

YARD – a space on the same lot with a principal structure, open, unoccupied and unobstructed by structure, except as may be otherwise provided in this Ordinance:

    A.   YARD – FRONT – a yard extending across the full width of the lot, unoccupied other than by steps, walks, terraces, driveways, lamp posts and similar improvements, the depth of which is the least distance between the front lot line and the building line.

    B.   YARD – REAR – a yard extending across the full width of the lot between the rear of the principal building and the rear lot line, unoccupied other than by steps, walks, terraces, driveways, lamp posts and similar improvements.

    C.   YARD – SIDE – a yard between the principal structure and the side lot line, extending from the front yard or from the front line where no front yard is required, to the rear yard. The width of the required side yard is measured horizontally, at ninety degrees (90°) with the side lot line, from the nearest part of the principal building.

ZONING CERTIFICATE – A document signed by the zoning officer, as required by this Ordinance, which acknowledges that a use, structure, building or lot either complies with or is legally nonconforming to the provisions of this Ordinance or is an authorized variance or modification therefrom.

ZONING HEARING BOARD – the Board assigned the duties of judging various appeals of persons aggrieved by the interpretation of this Chapter and further, assigned to consider the qualifications of special exceptions under the terms and conditions specified in this Chapter.

ZONING MAP – the zoning map or maps which are part of this Chapter, together with all amendments subsequently adopted.

ZONING OFFICER – the individual authorized by the Board of Supervisors to be the administrator of the day to day application of the provisions contained in this Chapter.

ZONING PERMIT – a document signed by the Zoning Officer indicating that the application for permission to construct, alter or add is approved and is approved and in accordance with the requirements and terms of this Chapter.

ARTICLE 7
ADMINISTRATION

**Section 700 Zoning Hearing Board**

A.  Creation of Zoning Hearing Board:

    1.  There is hereby created a Zoning Hearing Board, herein referred to as the "Board," consisting of three (3) residents of the Township and alternates, appointed by the Board of Supervisors pursuant to the Pennsylvania Municipalities Planning Code, as amended.  Said Board shall perform all the duties, and exercise all powers prescribed by said Code and as herein further provided.

B.  Variances:

    1.  Variances are only permitted when approved by the Board in accordance with the criteria set forth in this Ordinance and as required by law, after public hearing pursuant to public notice, and in accordance with the requirements of the Pennsylvania Municipalities Planning Code.

C.  Standards for Variance:

    1.  A variance may be granted where the provisions of the Ordinance inflict unnecessary hardship and all the following findings are made, where relevant, in a given case:

    (a)  That there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the Zoning Code in the neighborhood or district in which the property is located.

    (b)  That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the Zoning Code and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

    (c)  That such unnecessary hardship has not been created by the appellant.

    (d)  That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, not substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(e) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

D.  Conditions:

1.  The Board may approve variances and special exceptions and the Township Supervisors may approve conditional uses subject to reasonable and appropriate conditions.

E.  Special Exceptions:

1.  The Board may issue special exception permits for any of the uses requiring such permits under the terms of this Ordinance.  The Board shall hear and decide requests in accordance with the established standards and criteria; public notice shall be given for such hearings.

2.  In granting special exception permits, the Board shall prescribe the basis upon which the permit was issued and the conditions deemed necessary or desirable for the protection of public interests.  No special exception permits shall be granted by the Board unless it finds that the use for which such permit is sought will not be injurious to the neighborhood, not be inconsistent with the character of the surrounding neighborhood or otherwise detrimental to the public health and welfare, and that the use will not substantially impair an adequate supply of light and air to adjacent properties or overcrowd the land, or create undue concentration of population or substantially increase congestion in the streets, or create hazardous traffic conditions or increase the danger or fire, and that the use will be in harmony with the general purposes of this Ordinance.

3.  Applications for special exceptions may be subject to additional more specific standards and criteria as established in other sections of this Ordinance.

F.  Appeals where the Board has jurisdiction over matters pursuant to the above subsections, the Board shall also hear all appeals which an applicant may elect to bring before it with respect to any other municipal ordinance or requirement pertaining to the same development.  In any such case, the Board shall have no power to pass upon nonbonding issues, but shall take evidence and make a record thereon as provided in this Ordinance.  At the conclusion of the hearing, the Board shall make findings on all relevant issues of fact which shall become part of the record on appeal to court.

G.  Expiration of Variances Special Exceptions and Conditional Uses:

1.  The validity of a variance, or conditional use permit shall not exceed one (1) year from the date of authorization and shall expire if the applicant has failed to obtain other appropriate permits, and commence work or use as planned and approved within one (1) year.

## Section 701 Zoning Officer

A. The Township of Robinson shall appoint or reappoint a Zoning Officer who shall administer and enforce the provisions of this Ordinance, and shall do so in accordance with the provisions of this Ordinance and the Pennsylvania Municipalities Planning Code. The Zoning Officer shall not hold any elective office in the Township. The Township may also appoint one or more assistant zoning officers, as it deems necessary to administer this Ordinance.

B. Duties of the Zoning Officer: The Zoning Officer shall administer this Ordinance in accordance with its literal terms, and shall not have the power to permit any construction or any use or change or use, which does not conform to this Ordinance. The Zoning Officer shall be considered as qualified to perform his/her duties by meeting the qualifications established by the Township. In addition, the Zoning Officer's duties, obligations and responsibilities include the following:

    1. Application for Zoning Certificates:

    (a) The Zoning Officer shall receive applications for Zoning Certificates. Applications conforming to such ordinances shall be approved, and those not conforming to such ordinances shall be denied.

    2. Inspections:

    (a) The Zoning Officer or a duly appointed assistant may examine, or cause to be examined, all structures and/or land for which an application for a Zoning Certificate has been requested. Such inspections may be before, during and after construction and shall be made upon the termination of construction and prior to the issuance of a Zoning Certificate.

    3. Applications, Appeals and Certificates:

    (a) The Zoning Officer may issue or deny such certificates as required by this Ordinance where no other body is involved; shall receive all applications for conditional uses and variances and forward same to the appropriate body. Where a decision is made by another body, the Zoning officer shall issue or deny the certificate as ordered by the applicable Board.

    4. Enforcement:

    (a) The Zoning Officer is authorized to institute civil enforcement proceedings as a means of enforcing this Ordinance and to revoke or refuse permits as authorized.

**Section 702 Zoning Certificates and Sign Permits**

Remodeling or improvement of an existing building or structure which does not alter the basic structure, create additional lot area coverage or change in use of the parcel or building is exempt from this specific requirement in all zoning districts.

A.  Certificate of Zoning:

1.  A Zoning Certificate or Occupancy Permit shall be required prior to the occupancy or use of any vacant land or prior to the occupancy or use of any structure hereafter constructed, reconstructed, moved, altered or enlarged. Zoning Certificates shall be required for a change of use of a structure or land to a different use and changes to a nonconforming use or structure. Occupancy permits shall be required following completion of construction as approved. Said applications shall be on forms as approved by the Township Board of Supervisors and shall be accompanied by a fee as set by the Township. It is the intent of the Ordinance that all appeal processes should follow the Pennsylvania Municipalities Planning Code or other appropriate State law. The filing of appeals and variances shall be within such time limits as specified by the Pennsylvania Municipalities Planning Code. The filing of conditional uses shall follow procedures set forth by the Township Supervisors. The Zoning Certificate shall also be issued upon request to confirm that the use of land or a building within the Township is in compliance with this Ordinance. The Township shall determine the exact form of the Certificates and fees charged.

B.  Sign Permit:

1.  A sign permit shall be required prior to the erection or alteration of any sign, except those signs specifically exempted from this requirement in this Ordinance.

(a) Application for a sign permit shall be made in writing to the Zoning Officer, and shall contain all information necessary for the Zoning Officer to determine whether the proposed sign, or the proposed alterations, conform to all the requirements of this Ordinance.

(b) No sign permit shall be issued except in conformity with the regulations of this Ordinance, except after written order from the Board or the courts.

i.   All applications for sign permits shall be accompanied by plans or diagrams in duplicate and approximately to scale, showing the following:

ii.  Dimensions of lot or building upon which the sign is proposed to be erected.

iii. Exact size, dimensions and location of the said sign on lot or building.

iv.  Any other lawful information that may be required by the Zoning Officer.

136

**Section 703 Violations**

A.  Enforcement Notice:

1.  When it is determined that a violation has occurred to the Township and/or Zoning Officer, the Zoning Officer shall send an enforcement notice.  The enforcement notice shall be sent to the owner of record of the parcel on which the violation has occurred, to any person who has filed a written request to receive enforcement notices regarding the parcel, and any other person requested in writing by the owner of record and the notice will be sent by first class mail certified receipt.  The enforcement notice shall state the following:

(a)  The name of the owner of record and any other person against whom the Township intends to take action.

(b)  The location of the property in violation.

(c)  The specific violation with a description of the requirements, which have not been met, citing in each instance the applicable provisions of the Ordinance.

(d)  The date before which the steps for compliance must be commenced and the date before which the steps must be completed.

(e)  That the recipient of the notice has the right to appeal to the Zoning Hearing Board within a prescribed period of time in accordance with procedures set forth in this Ordinance.

(f)  That failure to comply with the notice within the time specified, unless extended by appeal to the Board, constitutes a violation, with possible sanctions clearly described.

B.  Causes of Action:

1.  In case any building, structure, landscaping or land is, or is proposed to be, erected, constructed, reconstructed, altered, converted, maintained or used in violation of this Ordinance, and any amendment thereto or prior enabling laws, the Township, the Zoning Officer, or any aggrieved owner or tenant of real property who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding to prevent, restrain, correct or abate such building, structure, landscaping or land, or to prevent, in or about such premises, any act, conduct, business or use constituting a violation.  When any such action is instituted by a landowner or tenant, notice of that action shall be served upon the Township at least thirty (30) days prior to the time the action is begun by serving a copy of the complaint on the Board of Supervisors of Robinson Township.  No such action may be maintained until such notice has been given.

C.  Jurisdiction:

    1.  District magistrates shall have initial jurisdiction over proceedings brought under Section 703B.

D.  Enforcement Remedies:

    1.  Any person, partnership or corporation who or which has violated or permitted the violation of the provisions of this Zoning Ordinance and any amendment thereto any prior enabling laws shall, upon being found liable therefore in a civil enforcement proceeding commenced by the Township, pay a judgment of not more than five hundred ($500) dollars plus all court costs, including reasonable attorney fees incurred by the Township as a result thereof.  No judgment shall commence or be imposed, levied or payable until the date of the determination of a violation by the district magistrate.  If the defendant neither pays nor timely appeals the judgment, the Township may enforce the judgment pursuant to the applicable rules of civil procedure.  Each day that a violation continues shall constitute a separate violation, unless the district magistrate determines that there has been a violation further determines that there was a good-faith basis for the person, partnership or corporation violating this Ordinance to have believed that there was no such violation, in which event there shall be deemed to have been only one such violation until the fifth day following the date of the determination of a violation continues shall constitute a separate violation by the district magistrate and thereafter each day that a violation continues shall constitute a separate violation.  All judgments, costs and reasonable attorney fees collected for the violation of zoning ordinances shall be paid over to the Township.  Nothing contained in this Section shall be construed or interpreted to grant any person or entity other than the Township and its Zoning Officer the right to commence any action for enforcement pursuant to this Section.

## Section 704 Amendments

A.  General:

    1.  The Board of Supervisors may introduce and/or consider amendments to this Ordinance and to the Zoning Map, as proposed by a member of the Board of Supervisors, the Planning Commission, or by a petition of a person or persons residing or owning property within the Township.

B.  Petitions:

    1.  Petitions for amendments shall be filed with the Zoning Officer; and the petitioners, upon such filing, shall pay an advertising deposit and a filing fee, in accordance with a fee schedule affixed by the Township.

C. Referral:

    1. Any proposed amendment presented to the Board of Supervisors without written findings and recommendations from the Township Planning Commission and the Washington County Planning Commission shall be referred to these agencies for their review and recommendations prior to the public hearing by the Board of Supervisors. The Board shall not hold a public hearing upon such amendments until required reviews and recommendations are received or the expiration of thirty (30) days from the date that such proposed amendment were submitted to the Township and County Planning Commissions.

D. Action:

    1. Before acting upon a proposed amendment, the Board of Supervisors shall hold a public hearing thereon.  Public notice of such hearing is required and shall contain a brief summary of the proposed amendment and reference to the place where copies of the same be examined, shall be published in accordance with the provisions of the Pennsylvania Municipalities Planning Code.  If the proposed amendment involves a change to the Zoning Map, notice of the public hearing shall be posted at the affected tract in accordance with Section 609 of the Planning Code at least one (1) week prior to the date of the hearing.

E. Curative Amendments:

    1. The Township may institute a Municipal Curative Amendment in accordance with Section 609.2 of the Planning Code.